# EXHIBIT F
# 3 of 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

MRC Receivables Corp.          ) Case No.
S/I/I TO ASSOCIATES            ) Contract
                               )
                               )                    07M1 216521
        Plaintiff,             )
vs.                            ) Amount Claimed $3,325.16
                               ) + attorney fees, interest and costs
JOHN MCDERMOTT                 )
                               ) Return Date:___DEC 27 2007___
                               )
        Defendant(s)           )

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), JOHN MCDERMOTT, alleges and states as follows:

1. At the specific instance and request of the Defendant(s) JOHN MCDERMOTT, MRC Receivables Corp. S/I/I TO ASSOCIATES issued to Defendant(s) a certain charge card account.

2. Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $2,552.97, as set forth in Exhibit "A."

3. Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4. Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment.  Accrued interest as of September 17, 2007 is $772.19.

WHEREFORE, Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, prays judgment be entered in its favor and against the Defendant(s), JOHN MCDERMOTT, in the amount of $3,325.16, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 17, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
          For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
T07152

Form 409 (Illinois & Indiana)

State of _____ )
                              ) ss.
County of _____ )

In _____Court

_____Judicial (Circuit/District)

MRC Receivables Corp.,
                    Plaintiff

Vs.

JOHN MCDERMOTT,
                Defendant

Affidavit

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1.  I am employed by Midland Credit Management, Inc., servicer of this account on behalf of MRC Receivables Corp.. I make the statements herein based upon my personal knowledge. MRC Receivables Corp. is the current owner of, and/or successor to, the obligation sued upon.

2.  That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8509255271, which includes the following information: that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior at making this affidavit; that the attorneys representing plaintiff MRC Receivables Corp. were retained on MRC Receivables Corp. behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to MRC Receivables Corp. the sum of $2,552.97.

3.  That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES account number, 4223980065259083, to the plaintiff.

4.  That the final statement of account reveals that the defendant owed a balance of $3,283.84 on 8/31/2001; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

5. That by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing plaintiff to accelerate the entire balance as due and owing. That plaintiff has made demand of defendant to make payments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant has, in all things, failed or refused to make payments as demanded by plaintiff.

Dated this 7 day of June, 2007.

Monica Sharp

_____
                    Affiant's Signature

State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
...Jan. 31, 2011

_____
Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

## ASSOCIATES NATIONAL BANK (DELAWARE) MASTERCARD* OR VISA* ACCOUNT CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of this Account, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International into U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed and a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law.** This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing statement. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure.

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION. THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

To Start Arbitration: Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

> American Arbitration Association
> 13455 Noel Road
> Two Galleria Tower, Suite 1750
> Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

No Waiver: You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

Cost of Arbitration: If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

Location of Arbitration: Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

Enforcement of Arbitration: After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

YOUR BILLING RIGHTS. KEEP THIS NOTICE FOR FUTURE USE.

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case Of Errors Or Questions About Your Bill*
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn: Customer Research Dept,
P. O. Box 142319, Irving, TX 75014-2319

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights And Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)      You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b)      The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## MESSAGE TO CARDMEMBERS CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the options as follow:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request

Associates National Bank (Delaware)
P.O. Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

MRC Receivables Corp.         ) Case No.
S/I/I TO ASSOCIATES          ) Contract
                                )
      Plaintiff,             )
                                ) Amount Claimed $1,782.63
vs.                            ) + attorney fees, interest and costs
                                )
CLINTON SHEPHERD          ) Return Date: DEC 2 7 2007
                                )
      Defendant(s)          )

*07 M 1    216528*

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), CLINTON SHEPHERD, alleges and states as follows:

1. At the specific instance and request of the Defendant(s) CLINTON SHEPHERD, MRC Receivables Corp. S/I/I TO ASSOCIATES issued to Defendant(s) a certain charge card account.

2. Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $1,372.99, as set forth in Exhibit "A."

3. Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4. Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment. Accrued interest as of September 17, 2007 is $409.64.

WHEREFORE, Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, prays judgment be entered in its favor and against the Defendant(s), CLINTON SHEPHERD, in the amount of $1,782.63, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 17, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
          For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
T07199

Form 409 (Illinois & Indiana)

te of _____)
                          )  ss.
County of _____)

In _____Court

_____Judicial (Circuit/District)

MRC Receivables Corp.,
                    Plaintiff
Vs.                                                      Affidavit

CLINTON SHEPHERD,
                    Defendant

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1.  I am employed by Midland Credit Management, Inc., servicer of this account on behalf of MRC Receivables Corp.. I make the statements herein based upon my personal knowledge.  MRC Receivables Corp. is the current owner of, and/or successor to, the obligation sued upon.

2.  That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8509355305, which includes the following information:  that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior to making this affidavit; that the attorneys representing plaintiff MRC Receivables Corp. were retained on MRC Receivables Corp.  behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to MRC Receivables Corp. the sum of $1,372.99.

3.  That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES account number, 4223980180035434, to the plaintiff.

4. That the final statement of account reveals that the defendant owed a balance of $1,760.48 on 9/30/2001; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

Form 409 (Illinois & Indiana)

That by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing plaintiff to accelerate the entire balance as due and owing.  That plaintiff has made demand of defendant to make payments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant has, in all things, failed or refused to make payments as demanded by plaintiff.

Dated this 7 day of June, 2007.

Monica Sharp

_____
                Affiant's Signature

State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

## ASSOCIATES NATIONAL BANK (DELAWARE) MASTERCARD° OR VISA° ACCOUNT CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of this Account, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their

ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International into U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards, and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed or a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law.** This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing cycle. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure.

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION. THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

To Start Arbitration: Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

No Waiver: Your and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

Cost of Arbitration: If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

Location of Arbitration:  Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

Enforcement of Arbitration: After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

YOUR BILLING RIGHTS.  KEEP THIS NOTICE FOR FUTURE USE.

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

Notify Us In Case Of Errors Or Questions About Your Bill If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn:  Customer Research Dept,
P. O. Box 142319, Irving, TX 75014-2319

Write to us as soon as possible.  We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong.  To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

Your Rights And Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then.  Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent.  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit.  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount.  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount.  In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent.  However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill.  And, we must tell you the name of anyone we reported you to.  We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Special Rule for Credit Card Purchases
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### MESSAGE TO CARDMEMBERS
### CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the options as follow:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request

Associates National Bank (Delaware)
P.O. Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| MRC Receivables Corp.<br>S/I/I TO ASSOCIATES BANK | ) Case No.<br>) Contract    **07 M1 216901**<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Amount Claimed $6,519.18<br>) + attorney fees, interest and costs |
| SUSAN BOND | )<br>) Return Date: **JAN 0 3 2008** |
| | ) |
| Defendant(s) | ) |

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES BANK, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), SUSAN BOND, alleges and states as follows:

1. At the specific instance and request of the Defendant(s) SUSAN BOND, MRC Receivables Corp. S/I/I TO ASSOCIATES BANK issued to Defendant(s) a certain charge card account.

2. Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $4,545.80, as set forth in Exhibit "A."

3. Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4. Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment. Accrued interest as of September 4, 2007 is $1,973.38.

WHEREFORE, Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES BANK, prays judgment be entered in its favor and against the Defendant(s), SUSAN BOND , in the amount of $6,519.18, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 4, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
T07051

<u>Form 409 (Illinois & Indiana)</u>

State of _____ )                    In _____Court
                         ) ss.
County of _____ )                    _____Judicial (Circuit/District)


MRC Receivables Corp.,
                    Plaintiff

Vs.                                            Affidavit

SUSAN BOND,
                    Defendant

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1.  I am employed by Midland Credit Management, Inc., servicer of this account on behalf of MRC Receivables Corp.. I make the statements herein based upon my personal knowledge. MRC Receivables Corp. is the current owner of, and/or successor to, the obligation sued upon.

2.  That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8500084394, which includes the following information:  that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior to making this affidavit; that the attorneys representing plaintiff MRC Receivables Corp. were retained on MRC Receivables Corp. behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to MRC Receivables Corp. the sum of $4,545.80.

3.  That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES BANK account number, 4227610040176591, to the plaintiff.

4.  That the final statement of account reveals that the defendant owed a balance of $6,453.75 on 12/31/1998; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

Form 409 (Illinois & Indiana)

5. That by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing plaintiff to accelerate the entire balance as due and owing. That plaintiff has made demand of defendant to make payments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant has, in all things, failed or refused to make payments as demanded by plaintiff.

Dated this 7 day of June, 2007.

Monica Sharp

_____
                Affiant's Signature

State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

_____
Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

### ASSOCIATES NATIONAL BANK (DELAWARE) MASTERCARD* OR VISA* ACCOUNT CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of this Account, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International into U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion fee.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed and a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law.** This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing statement. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure.

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION. THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

> American Arbitration Association
> 13455 Noel Road
> Two Galleria Tower, Suite 1750
> Dallas, TX 75240-6636.

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

## YOUR BILLING RIGHTS.    KEEP THIS NOTICE FOR FUTURE USE.

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case Of Errors Or Questions About Your Bill.* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn: Customer Research Dept,
P. O. Box 142319, Irving, TX 75014-2319.

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights And Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## MESSAGE TO CARDMEMBERS
## CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the options as follow:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request

Associates National Bank (Delaware)
P.O Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

Funding NCC-2 Co ) Case No.    **07 M1  216908**
ASSOCIATES ) Contract
) 
Plaintiff, ) 
) Amount Claimed $1,529.00
) + attorney fees, interest and costs
TIFFANY ARNOLD ) 
) Return Date: **JAN 0 3 2008**
) 
Defendant(s) ) 

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, Midland Funding NCC-2 Co S/I/I TO ASSOCIATES, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), TIFFANY ARNOLD, alleges and states as follows:

1. At the specific instance and request of the Defendant(s) TIFFANY ARNOLD, Midland Funding NCC-2 Co S/I/I TO ASSOCIATES issued to Defendant(s) a certain charge card account.

2. Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $1,142.56, as set forth in Exhibit "A."

3. Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4. Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment. Accrued interest as of September 4, 2007 is $386.44.

WHEREFORE, Plaintiff, Midland Funding NCC-2 Co S/I/I TO ASSOCIATES, prays judgment be entered in its favor and against the Defendant(s), TIFFANY ARNOLD, in the amount of $1,529.00, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 4, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
T07039

Form 409 (Illinois & Indiana)

of _____ )
                      ) ss.
unty of _____ )

In _____Court

_____Judicial (Circuit/District)

Midland Funding NCC-2 Corp,
                      Plaintiff

Vs.                                              Affidavit

TIFFANY ARNOLD,
                      Defendant

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1.  I am employed by Midland Credit Management, Inc., servicer of this account on behalf of Midland Funding NCC-2 Corp.  I make the statements herein based upon my personal knowledge.  Midland Funding NCC-2 Corp is the current owner of, and/or successor to, the obligation sued upon.

2.  That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8510544851, which includes the following information:  that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior to making this affidavit; that the attorneys representing plaintiff Midland Funding NCC-2 Corp were retained on Midland Funding NCC-2 Corp  behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to Midland Funding NCC-2 Corp the sum of $1,142.56.

3. That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES account number, 4223980159277181, to the plaintiff.

4. That the final statement of account reveals that the defendant owed a balance of $1,512.53 on 11/30/2000; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

Form 409 (Illinois & Indiana)

at by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing ntiff to accelerate the entire balance as due and owing. That plaintiff has made demand of defendant to make yments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant as, in all things, failed or refused to make payments as demanded by plaintiff.

Dated this 7 day of June, 2007.

Monica Sharp

_Monica Sharp_

Affiant's Signature

State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

_Kristen L. George_
Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

## ASSOCIATES NATIONAL BANK (DELAWARE) MASTERCARD* OR VISA* ACCOUNT CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of this Account, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International into U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed and a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law. This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.**

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, and add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing statement. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure.

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION. THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**YOUR BILLING RIGHTS.   KEEP THIS NOTICE FOR FUTURE USE.**

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case Of Errors Or Questions About Your Bill.* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn:   Customer Research Dept.
P. O. Box 142319, Irving, TX 75014-2319

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights And Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b)     The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## MESSAGE TO CARDMEMBERS CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the options as follow:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request.

Associates National Bank (Delaware)
P.O. Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

...ceivables Corp.
...O ASSOCIATES ) Case No.
) Contract **07M1 218069**
)
Plaintiff, )
) Amount Claimed $1,110.47
) + attorney fees, interest and costs
TAKIA BROWN ) **JAN 03 2008**
) Return Date:_____
)
Defendant(s) )

CERTIFIED MAIL

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), TAKIA BROWN, alleges and states as follows:

1. At the specific instance and request of the Defendant(s) TAKIA BROWN, MRC Receivables Corp. S/I/I TO ASSOCIATES issued to Defendant(s) a certain charge card account.

2. Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $863.67, as set forth in Exhibit "A."

3. Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4. Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment. Accrued interest as of September 10, 2007 is $246.80.

WHEREFORE, Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, prays judgment be entered in its favor and against the Defendant(s), TAKIA BROWN, in the amount of $1,110.47, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 10, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
T07062

Form 409 (Illinois & Indiana)

_____ e of _____ )

_____ )  ss.

_ounty of _____ )

In _____Court

_____Judicial (Circuit/District)

MRC Receivables Corp.,
                    Plaintiff

Vs.

TAKIA BROWN,
                    Defendant

Affidavit

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1. I am employed by Midland Credit Management, Inc., servicer of this account on behalf of MRC Receivables Corp.. I make the statements herein based upon my personal knowledge. MRC Receivables Corp. is the current owner of, and/or successor to, the obligation sued upon.

2. That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8509363397, which includes the following information: that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior to making this affidavit; that the attorneys representing plaintiff MRC Receivables Corp. were retained on MRC Receivables Corp. behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to MRC Receivables Corp. the sum of $863.67.

3. That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES account number, 4223980183693270, to the plaintiff.

4. That the final statement of account reveals that the defendant owed a balance of $1,097.31 on 12/24/2001; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

Form 409 (Illinois & Indiana)

That by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing plaintiff to accelerate the entire balance as due and owing. That plaintiff has made demand of defendant to make payments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant has, in all things, failed or refused to make payments as demanded by plaintiff.

Dated this 7 day of June, 2007.

Monica Sharp

_____
Affiant's Signature

State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

_____
Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

## ASSOCIATES NATIONAL BANK (DELAWARE) MASTERCARD* OR VISA* ACCOUNT CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of the Card, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their

ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International in U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards, and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed and a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a chance, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law. This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.**

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing statement. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure.

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION.** THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY. Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**YOUR BILLING RIGHTS. KEEP THIS NOTICE FOR FUTURE USE.**

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn: Customer Research Dept,
P. O. Box 142319, Irving, TX 75014-2319

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights And Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)    You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b)    The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## MESSAGE TO CARDMEMBERS
## CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the options as follow:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request.

Associates National Bank (Delaware)
P.O Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| C Receivables Corp. | ) | Case No. |
| I/I TO ASSOCIATES | ) | Contract |
| | ) | |
| Plaintiff, | ) | |
| | ) | Amount Claimed $1,491.97 |
| vs. | ) | + attorney fees, interest and costs |
| | ) | |
| TOYA BROWN | ) | Return Date: **JAN 03 2008** |
| | ) | |
| Defendant(s) | ) | |

Case No. **07 M1 218070**

CERTIFIED MAIL

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), TOYA BROWN, alleges and states as follows:

1. At the specific instance and request of the Defendant(s) TOYA BROWN, MRC Receivables Corp. S/I/I TO ASSOCIATES issued to Defendant(s) a certain charge card account.

2. Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $1,124.56, as set forth in Exhibit "A."

3. Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4. Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment. Accrued interest as of September 10, 2007 is $367.41.

WHEREFORE, Plaintiff, MRC Receivables Corp. S/I/I TO ASSOCIATES, prays judgment be entered in its favor and against the Defendant(s), TOYA BROWN, in the amount of $1,491.97, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 10, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
T07059

Form 409 (Illinois & Indiana)

State of _____ )
                          ) ss.
County of _____ )

In _____ Court

_____ Judicial (Circuit/District)

MRC Receivables Corp.,
                    Plaintiff                                    Affidavit

Vs.

TOYA BROWN,
                    Defendant

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1.  I am employed by Midland Credit Management, Inc., servicer of this account on behalf of MRC Receivables Corp.. I make the statements herein based upon my personal knowledge. MRC Receivables Corp. is the current owner of, and/or successor to, the obligation sued upon.

2.  That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8509347404, which includes the following information:  that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior to making this affidavit; that the attorneys representing plaintiff MRC Receivables Corp. were retained on MRC Receivables Corp. behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to MRC Receivables Corp. the sum of $1,124.56.

3.  That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES account number, 4223980154187112, to the plaintiff.

4.  That the final statement of account reveals that the defendant owed a balance of $1,474.76 on 2/28/2001; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

Form 409 (Illinois & Indiana)

. That by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing plaintiff to accelerate the entire balance as due and owing. That plaintiff has made demand of defendant to make payments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant has, in all things, failed or refused to make payments as demanded by plaintiff.

Dated this 7 day of June, 2007.

Monica Sharp


_____
Affiant's Signature

State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

### ASSOCIATES NATIONAL BANK (DELAWARE) MASTERCARD* OR VISA* ACCOUNT CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of this Account, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International into U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed and a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms of this Agreement to your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. You will have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law. This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.**

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing statement. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure.

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION. THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636.

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**YOUR BILLING RIGHTS. KEEP THIS NOTICE FOR FUTURE USE.**

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case Of Errors Or Questions About Your Bill* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn: Customer Research Dept,
P. O. Box 142319, Irving, TX 75014-2319

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights And Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b)     The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## MESSAGE TO CARDMEMBERS
## CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family.   In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing.  Your options are one or both of the options as follow:

Option 1  ·  We will not share information about you with any non-affiliate party.

Option 2  ·  We will not share information about you with our affiliates.

We respect your privacy.  If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request.

Associates National Bank (Delaware)
P. O. Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| Midland Funding NCC-2 Co<br>S/I/I TO ASSOCIATES<br><br>　　　Plaintiff,<br><br>vs.<br><br>TISHA BROWN<br><br>　　　Defendant(s) | ) Case No. **07M1 218071**<br>) Contract<br>)<br>)<br>) Amount Claimed $1,648.32<br>) + attorney fees, interest and costs<br>)<br>) Return Date: **JAN 03 2008**<br>)　　　　　　　**CERTIFIED MAIL**<br>)<br>) |

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, Midland Funding NCC-2 Co S/I/I TO ASSOCIATES, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), TISHA BROWN, alleges and states as follows:

1.  At the specific instance and request of the Defendant(s) TISHA BROWN, Midland Funding NCC-2 Co S/I/I TO ASSOCIATES issued to Defendant(s) a certain charge card account.

2.  Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $1,242.41, as set forth in Exhibit "A."

3.  Demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

4.  Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in the cardmember agreement, if attached, together with accruing interest, pursuant to the same agreement, at the rate of 5%, until the date of judgment.  Accrued interest as of September 10, 2007 is $405.91.

WHEREFORE, Plaintiff, Midland Funding NCC-2 Co S/I/I TO ASSOCIATES, prays judgment be entered in its favor and against the Defendant(s), TISHA BROWN, in the amount of $1,648.32, plus attorney fees of $350.00, or whatever amount the court awards, together with accrued interest from September 10, 2007 to the entry of judgment, and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
　　　　　For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
T07060

Form 409 (Illinois & Indiana)

State of _____ )
                           )  ss.
County of _____ )

In _____Court

_____Judicial (Circuit/District)

Midland Funding NCC-2 Corp,
                    Plaintiff

Vs.                                              Affidavit

TISHA BROWN,
                    Defendant

After first being sworn upon oath, Monica Sharp, deposes and states as follows:

1. I am employed by Midland Credit Management, Inc., servicer of this account on behalf of Midland Funding NCC-2 Corp. I make the statements herein based upon my personal knowledge. Midland Funding NCC-2 Corp is the current owner of, and/or successor to, the obligation sued upon.

2. That by virtue of such relationship and my employment with Midland Credit Management, Inc., I have personal knowledge of relevant financial information concerning Midland Credit Management, Inc.'s account number 8510531373, which includes the following information: that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty(30) days prior to making this affidavit; that the attorneys representing plaintiff Midland Funding NCC-2 Corp were retained on Midland Funding NCC-2 Corp behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to Midland Funding NCC-2 Corp the sum of $1,242.41.

3. That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASSOCIATES account number, 4223980155024819, to the plaintiff.

4. That the final statement of account reveals that the defendant owed a balance of $1,629.44 on 2/28/2001; and that such balance will continue to earn interest at a rate of 5% as an annual percentage rate calculated as required by the Federal Truth In Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment. I affirm that the final statement of account is true and correct.

Form 409 (Illinois & Indiana)

5. That by virtue of the foregoing, the defendant is delinquent in payments due and owing on the account, allowing plaintiff to accelerate the entire balance as due and owing.  That plaintiff has made demand of defendant to make payments on the account, and that plaintiff has made demand for the entire balance due and owing, but defendant has, in all things, failed or refused to make payments as demanded by plaintiff.


Dated this 7 day of June, 2007.

Monica Sharp


_Monica Sharp_
_____
Affiant's Signature




State of Minnesota
County of Stearns
Subscribed and sworn to (or affirmed) before me on this 07 day of June 2007
by Monica Sharp personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
(SEAL)

KRISTEN L. GEORGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

_____
Notary Public for the State of Minnesota

Arthur B. Adler & Associates, Ltd.

## ASSOCIATES NATIONAL BANK (DELAWARE)
## MASTERCARD* OR VISA* ACCOUNT CARDMEMBER
## AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (if the Account is a joint account, "you" and "your" refer to both Cardmembers); "we", "us", and "our" refer to Associates National Bank (Delaware); "Card" means the MasterCard or Visa card or cards issued by us to you; "Account" means the MasterCard or Visa account issued by us to you; "ATMs" means automated teller machines.

**Scope of Agreement.** This Agreement and the Pricing and Fee Disclosure govern your Account and use of the Card we have issued to you. If the Account is a joint account, each of you will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement. We will pay MasterCard or Visa member merchants for goods and services you obtain by use of this Account, and we may make other loans (cash advances) to you on terms explained in this Agreement.

**Acceptance of Agreement.** The use of your Account or Card(s) by you or anyone who you authorize or permit to use your Account or Card(s) means you accept this Agreement.

**Means to Access Account.** You may obtain a loan from Associates National Bank (Delaware) under your Account with your Card or a convenience check as follows: by purchasing goods or services with your Card or your Account number; by obtaining a cash advance from a financial institution including us, an ATM, by use of a convenience check; or, by incurring charges authorized by this Agreement. We are not responsible for any merchant's or other institution's refusal to honor the Card or convenience check.

**Credit Limits.** We will advise you of the credit limit on your Account. A portion of your credit limit, called the cash advance limit, will be available for cash advances. We may increase or decrease the credit limit or cash advance limit at any time. The cash advance limit will be shown on your monthly statement.

**Convenience Checks.** Upon request and from time to time, we may send you convenience checks for use in borrowing under the Agreement. All convenience checks you use will be treated as cash advances under this Agreement unless we advise you otherwise. You may not use the convenience checks to make payments on any Associates National Bank (Delaware) account or an account with any of our affiliates. You understand that if you use a convenience check to make a purchase and you have a dispute with that purchase, the dispute is not covered by the Billing Rights Summary below. You understand that the convenience checks will not be returned to you.

**ATMs.** You may use the Card to obtain cash advances through certain ATMs. You will be given a Personal Identification Number (PIN) which must be used in order to obtain an ATM cash advance. Some limitations on ATM cash advances may apply, such as limitations on dollar amount, number, or currency denominations. You agree that charges imposed by third parties for use of their ATM facilities will be added to your Account balance as a cash advance.

**Purchases Treated as Cash Advances.** We consider certain transactions to be the equivalent of cash advances, and we reserve the right to treat them as cash advances under this Agreement. Those transactions include using the Card or Account to purchase wire transfer money orders, money orders that are not issued by a financial institution or are not in U.S. currency, travelers checks, casino gaming chips, lottery tickets, off-track betting, wagers at race tracks, and tax payments.

**Additional Cardholders, Authorized Users, and Others using your Account.** You may authorize others to use your Account. At your request, we may issue additional Cards to you. One additional Card may be issued with the individual name of an authorized user embossed. All other additional Cards must be issued in your name. You promise to pay for all purchases and cash advances made by anyone you authorize to use your Account with or without a Card, whether or not you notify us that he or she will be using the Account and whether or not he or she exceeds any limits imposed by you on his or her use of the Card. If another person has use of your Account and you want to end that person's privilege, you must notify us by writing to us, by calling us, or in person. In order to avoid unauthorized use, you should recover any cards in that person's possession.

**Foreign Exchange.** If you make a purchase or an advance in foreign currency, it will be converted by Visa International or MasterCard International into U.S. dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, those regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. MasterCard International will use the Conversion Procedures published from time to time to its members and effective at the time the transaction is processed. Currently, those Conversion Procedures provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate, increased by 1%. In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become a subject of bankruptcy or insolvency proceedings, do not comply with any of the terms of this Agreement, or if you provided false information to obtain this Account. If you are in default, we may declare all amounts you owe to be immediately due and payable. Also, we may prohibit any further transactions on your Account, cancel the Cards,and revoke any privileges attaching to the Cards. You agree to surrender all Cards to us or our designee upon demand. If you

default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Collection.** You agree that if you do not pay your Account, you will accept calls from us regarding the collection of the Account. You understand that the calls could be automatically dialed and a recorded message may be played. You agree that such calls will not be unsolicited calls for purposes of state or federal law.

**Billing Statement Disputes.** You agree to accept the monthly statements that we mail you as being correct unless you notify us in writing of alleged errors within the time prescribed by law. Your rights to dispute billing errors are set forth following this Agreement. If you have notified us that an amount is in dispute in accordance with the procedures that follow this Agreement, you need not pay that amount until the dispute is resolved. However, you must pay at least the required Minimum Payment Due.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under the section of this Agreement entitled "Default", if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. Following this Agreement is an explanation of your rights to dispute billing errors. We will have no responsibility for merchandise or services purchased with this Card.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in the section of this Agreement entitled "Default, we have the right to revoke the privilege attaching to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases or cash advances at any time for any reason. Upon termination you agree to immediately surrender all Cards (which you will cut in half) and unused convenience checks to us.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by you or operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures on the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law. This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.**

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept late payments, partial payments or checks and money orders marked as being payment in full without losing any rights under this Agreement.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand that and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. You agree to provide us with a notice of any change of your address at least 10 days prior to the change.

**Other Services.** You understand that from time to time third parties may offer additional Account features, services, and enhancements. You understand that we are not liable for these features, services, and enhancements and they are the sole responsibility of third parties. You will hold us harmless from any claims, actions, or damages resulting from your use of any of these features, enhancements, or services when permitted by applicable law.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use will not exceed $50. You may telephone us to report the loss, theft, or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may release information in our records regarding you and your Account: in order to comply with any properly served subpoena or similar request issued by any state or federal agency or court; to share our credit experiences on your account with credit reporting agencies and other creditors who we reasonably believe are doing business with you; to provide information about you and your account to any of our subsidiaries or affiliates; to provide our customer lists (which may include information about you and your Account) to third parties; and, to provide Account information to any third party who we reasonably believe is conducting an inquiry in accordance with the Federal Fair Credit Reporting Act. (See Message to Cardmembers Concerning Privacy)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account or update, renewal, or extension of the Account. Upon your request, we will advise you if we obtained a credit report and we will give you the credit bureau's name and address. You understand that a negative credit report reflected on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank, P. O. Box 15686, Wilmington, DE, 19850-5686.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered to be modified to conform with that applicable law.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of your Account each day, including accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits, or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on the billing statement, new purchases will not be included in the Daily Balance for purchases.

**Payments.** You agree to pay us any amounts borrowed under this Agreement by you or an authorized user. Each month that there is an outstanding balance of $2.00 or more on your Account, on a date we select, we will send you a monthly statement as of the closing date of your billing cycle. Purchases, cash advances, payments and adjustments made since the closing date on your previous statement will appear on your billing statement. You must pay at least the Minimum Payment Due by the Due Date shown on the statement. The Minimum Payment Due is stated on your Pricing and Fee Disclosure

Any past due amounts you owe and any amounts that exceed your credit limit may be included in the Minimum Payment Due.

Payments shall be made by check or money order in U.S. currency denominations. If you pay by check, the check must be drawn on funds in the U.S. Payments must be sent to our payment address shown on the billing statement. Payments received by 2:00 p.m. will be credited to your Account on the date received. Payments received after 2:00 p.m. will be credited to your Account on the next business day.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner that we determine. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**ARBITRATION. THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees, our affiliate companies, and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or us bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the

entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

> American Arbitration Association
> 13455 Noel Road
> Two Galleria Tower, Suite 1750
> Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA at 1-800-426-8792, or log on to their web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

**YOUR BILLING RIGHTS. KEEP THIS NOTICE FOR FUTURE USE.**

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case Of Errors Or Questions About Your Bill* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at:

Associates Credit Card Services, Inc., Attn:    Customer Research Dept,
P. O. Box 142319, Irving, TX 75014-2319

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights And Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as a delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If you don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to

correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and,

(b)     The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## MESSAGE TO CARDMEMBERS
## CONCERNING PRIVACY

To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility and to deliver offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the options as follow:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share your information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any Associates credit card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request

Associates National Bank (Delaware)
P. O. Box 15686
Wilmington, DE 19850-5686

This Cardmember Agreement, as well as the Pricing and Fee Disclosure, govern your Account and use of the card we have issued to you.