**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE HERKERT and WINONA | ) | |
| JACKSON, on behalf of plaintiffs and a class, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 08 C 760 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| MRC RECEIVABLES CORPORATION, | ) | |
| MIDLAND FUNDING NCC-2 CORP., | ) | Magistrate Judge Schenkier |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| and ENCORE CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED
CONSOLIDATED COMPLAINT**

Defendants, by and through their undersigned counsel, for their Answer and Affirmative

Defenses to Plaintiffs' First Amended Consolidated Complaint, state as follows:

**INTRODUCTION**

1.      Plaintiffs Winona Jackson and Nicole Herkert bring this action to secure redress
against unlawful collection practices engaged in by defendants Midland Funding NCC-2
Corporation ("NCC2"), MRC Receivables Corporation ("MRC"); Midland Credit Management,
Inc. ("MCM"); and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc.
("Encore").  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C.
§ 1692 et seq. ("FDCPA"), and state law.

**RESPONSE:**          **Defendants admit that Plaintiffs have made allegations in their First**

**Amended Consolidated Complaint (the "Complaint") relating to the FDCPA, but deny any**

**and all liability to Plaintiffs.  In addition, Defendants NCC2, MRC and Encore deny that**

**they are debt collectors, or that they engaged in any debt collection activity with respect to**

**the Plaintiff.**

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods;
conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading

statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. § 1692d, 1692e, 1962f and 1692g.

**RESPONSE:**          **Defendants admit that Plaintiffs have made allegations in their First Amended Consolidated Complaint (the "Complaint") relating to the FDCPA, but deny any and all liability to Plaintiffs.  In addition, Defendants NCC2, MRC and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to the Plaintiff.**

3.      Plaintiffs contend that defendants threaten and bring lawsuits against Illinois residents on time-barred credit card debts.

**RESPONSE:**          **Denied.**

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28. U.S.C. §§ 1331, 1337 and 1367 and 15 U.S.C. § 1692k (FDCPA).

**RESPONSE:**          **Denied as stated.  Defendants admit that this Court has jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1692k.  However, upon information and belief, this court may lack jurisdiction over Plaintiffs' claims against Defendants due to an agreement and/or agreements to arbitrate.**

5.      Venue in this District is proper because defendants' collection activities took place in this District.

**RESPONSE:**          **Denied as stated.  Further answering, defendants NCC2, MRC, and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to Plaintiffs.  Further answering, Defendants state that arbitration may be the more appropriate venue in which to bring this action as Defendants may possess certain rights to move this action to arbitration based upon contracts entered into by Plaintiffs.**

## PARTIES

### Plaintiffs

6.    Plaintiff Winona Jackson resides in the Northern District of Illinois.

**RESPONSE:        Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.**

7.    Plaintiff Nicole Herkert resides in the Northern District of Illinois.

**RESPONSE:        Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.**

### MRC Receivables Corporation

8.    Defendant MRC Receivables Corporation ("MRC") is a Delaware corporation. Its principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123.  Its address for services of process is Corporation Service Company, 2711 Centreville Road, Suite 400, Wilmington, DE 19808.

**RESPONSE:        Admitted.**

9.    Defendant MRC is in the business of taking title to charged-off debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

**RESPONSE:        Defendants admit that MRC is in the business of buying charged-off debts, but deny the remaining allegations contained in paragraph 9.**

10.    Defendant MRC has been the plaintiff in more than 1,000 collection actions against Illinois residents.

**RESPONSE:        Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

11.    Defendant MRC is a "debt collector" as defined in the FDCPA.

**RESPONSE:**        **Defendants admit that MRC may be considered a debt collector, as defined by the FDCPA, for some purposes.  Further answering, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that MRC was acting as a debt collector as defined by the FDCPA, with respect to Plaintiffs and, therefore, neither admit nor deny the same.  Further answering, Defendants deny the remaining allegations contained in the paragraph and any allegation that is contrary to the foregoing.**

12.    Defendant MRC transacts business in Illinois.

**RESPONSE:**        **Denied.**

### Midland Funding NCC-2 Corporation

13.    Defendant Midland Funding NCC-2 Corporation ("NCC") is a Delaware corporation.  It's principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123.  Its address for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**RESPONSE:**        **Admitted.**

14.    Defendant NCC [sic] is in the business of taking title to charged-off debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

**RESPONSE:**        **Defendants admit that NCC2 is in the business of buying charged-off debts, but deny the remaining allegations contained in paragraph 14.**

15.    Defendant NCC [sic] has been the plaintiff in more than 1,000 collection actions against Illinois residents.

**RESPONSE:**        **Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

16.    Defendant NCC [sic] is a "debt collector" as defined in the FDCPA.

**RESPONSE:        Defendants admit that NCC2 may be considered a debt collector, as**

**defined by the FDCPA, for some purposes. Further answering, Defendants are without**

**knowledge or information sufficient to form a belief as to the truth of the allegation that**

**NCC2 was acting as a debt collector as defined by the FDCPA, with respect to Plaintiffs**

**and, therefore, neither admit nor deny the same. Further answering, Defendants deny the**

**remaining allegations contained in the paragraph and any allegation that is contrary to the**

**foregoing.**

17.    Defendant NCC transacts business in Illinois.

**RESPONSE:        Denied.**

### Midland Credit Management

18.    Defendant MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123. MCM transacts business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

**RESPONSE:        Defendants admit that MCM is a Kansas corporation with its**

**principal offices in San Diego, California. MCM denies that it does business in Illinois,**

**except and exclusively through interstate commerce. Further answering, Defendants deny**

**that MCM has an office in Illinois.**

19.    Defendant MCM is a collection agency and collects the charged-off debts held in the names of NCC and other subsidiaries of Encore (described below).

**RESPONSE:        Defendants admit that Defendant MCM may be considered a debt**

**collector under the FDCPA, for some purposes. Defendants deny that Defendant MCM is a**

**"collection agency." Defendants lack knowledge or information sufficient to form a belief**

**as to the truth of the allegation that Defendant MCM acted as a debt collector with respect**

to Plaintiffs, because they are without knowledge or information sufficient to form a belief

as to the purpose of Plaintiffs' debts.

20.     Defendant MCM is a "debt collector" as defined in the FDCPA.

**RESPONSE:**          **Defendants admit that Defendant MCM may be considered a debt**

**collector under the FDCPA, for some purposes.  Defendants lack knowledge or information**

**sufficient to form a belief as to the truth of the allegation that Defendant MCM acted as a**

**debt collector with respect to Plaintiffs, because they are without knowledge or information**

**sufficient to form a belief as to the purpose of Plaintiffs' debts.**

### Encore

21.     MCM, NCC and MRC are under common ownership.  Both [sic] are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**RESPONSE:**          **Defendants admit the allegations in this paragraph.**

22.     Encore describes itself as "a leading accounts receivable management firm" and a "purchaser and manager of charged-off consumer receivables portfolios." (Form 8-K filed by Encore with the SEC on March 3, 2005).

**RESPONSE:**          **Defendants admit solely that Plaintiffs purport to cite to a portion of a**

**Form 8-K filed by Encore with the SEC.**

23.     On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios."  (Form 8-K filed by Encore with the SEC on March 10, 2005).

**RESPONSE:**          **Defendants admit solely that Plaintiffs purport to cite to a portion of a**

**Form 8-K filed by Encore with the SEC.**

24.     Encore "acquires its receivable portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts."  (Form 10-K filed by Encore with the SEC for the year ending December 31, 2006, original p. E).  By "deep discount" is meant 3.0 to 3.36% of face value.  (*Id.,* original p. 28).

**RESPONSE:**    **Defendants admit solely that Plaintiffs purport to cite a portion of the**

**Form 10-K filed by Encore with the SEC for the year ending December 31, 2006.**

**Defendants deny the remaining allegations in paragraph 24.**

25.    Encore states that it is responsible for developing collection strategies.  Thus, on march 3, 2005, Encore stated to public investors that:

> Our fourth quarter performance capped a very strong year for Encore, as we generated record levels of collections, revenues, and earnings per share….We were able to achieve this strong growth despite scaling back on our purchasing of new portfolios throughout much of 2004 in response to less attractive pricing in the marketplace.  Total purchases during 2004 were $103.4 million compared to $89.8 million in 2003.  We continue to effectively develop alternative collection channels, such as legal and agency outsourcing, which increase our ability to penetrate our portfolios further….

The statement was made by Carl C. Gregory, III, the-Vice Chairman and CEO of Encore Capital Group, Inc. (Form 8-K filed by Encore with the SEC on March 3, 2005).

**RESPONSE:**    **Defendants admit solely that Plaintiffs purport to cite to a portion of a**

**Form 8-K filed by Encore.**

26.    Encore is also responsible for raising money to purchase the charged-off debts.

**RESPONSE:**    **Denied as stated.  Encore admits only that it does obtain funds, some**

**of which  are ultimately used to purchase charged-off debts.**

27.    Encore has various subsidiaries, such as NCC [sic], take title to the debts it

purchases.

**RESPONSE:**    **Denied as stated.  Encore does not take title to debt that NCC2**

**purchases.**

28.    On March 3, 2005, Encore CEO Gregory stated in an earnings conference call:

> It's notable that we achieved this strong growth despite scaling back on our purchases of new portfolios for the better part of 2004, because of a less attractive pricing environment.  As we have mentioned many times, one of our competitive advantages is our varied business model that makes use of several different collection channels.  During the fourth quarter we continue to see increased production out of our legal channel and our contingent agency outsourcing channel, which was developed earlier in

2004.  For the full year, our collections through alternative channels, with the exception of the sales channel, more than doubled.

Turning to the purchasing market, our purchases for the firs three quarters of the year were relatively modest, because of what we deemed to be a lack of opportunities that met our high standards.  The market continues to be highly competitive, and it's looking like it could remain that way for quite a while.  Accordingly, we have adjusted our strategy to reflect the current environment.  We determined that we should not bypass profitable opportunities simply because they could not generate the high level of returns we have typically demanded, there are sufficient opportunities to purchase portfolios that can be nicely profitable for the Company.  And in the current environment, it's in our best interest to acquire these portfolios rather than waiting for prices to come down.

With that being said, we invested $46.1 million in new portfolios in the fourth quarter, at an average purchase price of 3.86 percent of face value.  Almost all of these purchases were credit card portfolios and that's where we found the most attractive opportunities in the fourth quarter.  These purchases were made with our former credit facility that expired at the end of the year.  We were able to modify the terms of that credit facility that expired at the end of the year.  We were able to modify the terms of that credit facility during the fourth quarter, to put a ceiling on the total interest that we will have to pay on these portfolios.  The lower interest expense associated with these portfolios will help offset the higher prices, and the resulting lower collection multiples and enable these portfolios to still generate nice profits for the Company.

**<u>RESPONSE:</u>        Defendants admit that the Plaintiffs purport to cite to certain statements attributed to Encore CEO Gregory on a March 3, 2005 earnings conference call.  Defendants deny that the allegations contained in paragraph 28 represent a true and correct version of the statements made by Encore CEO Gregory.**

29.    On August 3, 2004, Encore CEO Gregory stated in another earnings call:

We believe our business model is especially well-suited to this changing environment.  Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.

The keystone to everything we do is customer-level analytics – understanding the individual customer and his changing ability to pay.  Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay.  We are always asking the same question – can this particular customer pay us all or some of what he owes now?  By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off.  In this process, a score is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.

The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectibility score of each customer. In other words, to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.

We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance transfer, external legal, and our recently developed agency outsourcing strategy.

**RESPONSE:**        **Defendants admit the Plaintiffs purport to cite to certain statements attributed to Encore CEO Gregory on an August 3, 2004 conference call. Defendants deny that the allegations contained in paragraph 29 represent a true and correct version of the statements made by Encore CEO Gregory.**

30.    Encore's involvement in the collection process is such as to make it a "debt collector" as defined in the FDCPA.

**RESPONSE:**        **Denied.**

31.    All of the defendants herein are under common control as well as ownership, with common or overlapping officers and directors. For example, J. Brandon Black is president and CEO of MCM, CEO of Encore and president of MRC.

**RESPONSE:**        **Denied as stated.  Defendants admit that J. Brandon Black is president and CEO of MCM, CEO of Encore, and president of MRC.  Further answering, the Defendants do not have identical directors and officers.**

## FACTS RELATING TO PLAINTIFF JACKSON

32.    On or about November 28, 2007, suit was filed in the name of MRC against plaintiff Jackson in the Circuit Court of Cook County, case 07 M1 218190, seeking to collect a supposed credit card debt incurred for personal, family or household purposes.

**RESPONSE: Defendants admit that suit was filed in the name of MRC against Jackson seeking to collect credit card debt. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remainder of this allegation and therefore deny same.**

33.    Attached to the complaint was a purported affidavit ("Form 409") from an employee of MCM, "server [sic] of this account on behalf of MRC Receivables Corp."

**RESPONSE:          Admitted.**

34.    On information and belief, MCM directed or caused the filing of the lawsuit.

**RESPONSE:          Denied as stated. The lawsuit was filed by Adler & Associates, on behalf of MRC.**

35.    The complaint did not have attached to it any contract signed by the putative debtor.

**RESPONSE:          Denied as stated. The Complaint and the exhibits attached thereto speak for themselves.**

36.    The complaint did have attached to it a supposed unsigned "cardmember agreement" which stated that "we may change the terms of this Agreement from time to time" by notice, without a signature being required.

**RESPONSE:          Denied as stated. The Complaint and the exhibits attached thereto speak for themselves.**

37.    The "cardmember agreement" stated that it was governed by Delaware law. Delaware law authorizes a credit card issuer to change the terms from time to time by notice, without a signature being required, unless the cardmember agreement disclaims this right.  5 Del. C. § 952.

**RESPONSE:**        **Denied as stated.  The Complaint and the exhibits attached thereto speak for themselves.**

38.    The complaint and attached documents are attached hereto as Appendix A.

**RESPONSE:**        **Denied as stated.  The complaint and the exhibits attached thereto speak for themselves.**

39.    The "Form 409" affidavit gave a delinquency date, which was more than five years prior to the filing of the action.

**RESPONSE:**        **Denied as stated.  The complaint and the exhibits attached thereto speak for themselves.**

40.    Defendants maintain computerized records of payments on purchased accounts.

**RESPONSE:**        **Denied as stated.  By way of further answer, MCM is the only Defendant that maintains computerized records which contain some information on purchased accounts.**

41.    The computerized records relating to the account that was the subject of Appendix A did not show any payment within five years prior to the filing of the action.

**RESPONSE:**        **Denied as stated.  MCM's records did not show a payment by Plaintiff within five years of the filing of the action by Adler & Associates.**

42.    Plaintiff Jackson appeared and defended the action.

**RESPONSE:**        **Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

43.    On January 17, 2008, MRC nonsuited it.

**RESPONSE:**        **Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

## FACTS RELATING TO PLAINTIFF HERKERT

44.     On or about November 28, 2007, suit was filed in the name of NCC [sic] against plaintiff Herkert in the circuit Court of Cook County, case 07 M1 218178, seeking to collect a supposed credit card debt incurred for personal, family or household purposes.

**RESPONSE:        Defendants admit that suit was filed in the name of NCC2 against**

**Herkert seeking to collect credit card debt.  Defendants lack information or knowledge**

**sufficient to form a belief as to the truth of the remainder of this allegation and therefore**

**deny same.**

45.     Attached to the complaint was a purported affidavit ("Form 409") from an employee of MCM, "server [sic] of this account on behalf of Midland Funding NCC-2 Corp."

**RESPONSE:        Admitted.**

46.     On information and belief, MCM directed or caused the filing of the lawsuit.

**RESPONSE:        Denied as stated.  The lawsuit was filed by Adler & Associates, on**

**behalf of NCC2.**

47.     The complaint did not have attached to it any contract signed by the putative debtor.

**RESPONSE:        Denied as stated.  The complaint and the exhibits attached thereto**

**speak for themselves.**

48.     The complaint did have attached to it a supposed unsigned "cardmember agreement" (identical to that attached to the complaint against Jackson) which stated that "we may change the terms of this Agreement from time to time" by notice, without a signature being required.

**RESPONSE:        Denied as stated.  The complaint and the exhibits attached thereto**

**speak for themselves.**

49.     The "cardmember agreement" stated that it was governed by Delaware law. Delaware law authorizes a credit card issuer to change the terms from time to time by notice, without a signature being required, unless the cardmember agreement disclaims this right.  5 Del. C. § 952.

**RESPONSE:**          **Denied as stated.  The complaint and the exhibits attached thereto speak for themselves.**

50.    The complaint and attached documents are attached hereto as <u>Appendix A.</u>

**RESPONSE:**          **Denied as stated.  The complaint and the exhibits attached thereto speak for themselves.**

51.    The "Form 409" affidavit gave a delinquency date, which was more than five years prior to the filing of the action.

**RESPONSE:**          **Denied as stated.  The complaint and the exhibits attached thereto speak for themselves.**

52.    Defendants maintain computerized records of payments on purchased accounts.

**RESPONSE:**          **Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

53.    The computerized records relating to the account that was the subject of <u>Appendix A</u> did not show any payment within five years prior to the filing of the action.

**RESPONSE:**          **Denied as stated.  MCM's records did not show a payment by Plaintiff within five years of the filing of the action by Adler & Associates.**

54.    Plaintiff Herkert appeared and defended the action.

**RESPONSE:**          **Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

55.    On January 17, 2008, NCC nonsuited it.

**RESPONSE:**          **Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

## **FACTS – GENERAL**

56.    The alleged debt that was the subject of <u>Appendix A</u> was no longer enforceable through legal action as a result of the expiration of the five-year statute of limitations, 735 ILCS

5/13-205. *Parkis v. Arrow Financial Services*, 07 C 410, 2008 U.S. Dist. LEXIS 1212 (N.D. Ill., Jan. 8, 2008); *Weniger v. Arrow Financial Services*, 03 C 6213, 2004 U.S. Dist. LEXIS 23172 (N.D. Ill., Nov. 18, 2004); *Nicolai v. Mason,* 118 Ill. App. 3d300; 454 N.E.2d 1049 (5th Dist. 1983).

**RESPONSE:**          **Denied.**

57.    It is the policy and practice of defendants to file suit or cause suit to be filed against Illinois residents on alleged credit card debts where the date of delinquency and the date of last payment, according to defendants' records, are both more than five years prior to filing.

**RESPONSE:**          **Denied.**

58.    It is the policy and practice of defendants to file suit or cause suit to be filed against Illinois residents on alleged credit card debts where the complaint does not have attached to it a written contract bearing the signature of the putative debtor.  On information and belief, based on examination of multiple files, in no or virtually no case do defendants attach a signed contract.

**RESPONSE:**          **Denied.**

59.    It is the policy and practice of defendants to file suit or cause suit to be filed against Illinois residents on alleged credit card debts where the contract terms may be altered by Notice without a signature by the putative debtor.

**RESPONSE:**          **Denied.**

60.    Under Illinois law, if a complaint does not have a signed contract attached to it, it is presumptively subject to the five-year statute of limitations for contracts no wholly in writing. *Barnes v. Peoples Gas Light & Coke Co.,* 103 Ill.App.2d 425, 428, 243 N.E.2d 855 (1st Dist. 1968); *O.K. Electric Co. v. Fernandes,* 111 Ill.App.3d 466, 444 N.E.2d 264, 266-67 (2nd Dist.1982).

**RESPONSE:**          **The allegations of paragraph 60 set forth conclusions of law to which**

**no response is required.  To the extent that a response is deemed required, the allegations**

**are denied.**

61.    Under Illinois law, if a purported contract may be altered by notice without a signature, with either failure to object or continued dealings constituting acceptance of the new terms, it is subject tot the five-year statute of limitations for contracts not wholly in writing.  *Toth v. Mansell,* 207 Ill.App. 3d 665, 669, 566 N.E.2d 730, 733 (1st Dist. 1990); *Classified Ventures, Inc. v. Wrenchead, Inc.,* 06 C 2373, 2006 U.S. Dist. LEXIS 77359 (N.D. Ill., Oct. 11, 2006).

**RESPONSE:        The allegations of paragraph 61 set forth conclusions of law to which**

**no response is required.  To the extent that a response is deemed required, the allegations**

**are denied.**

62.    Notwithstanding this, it is the policy and practice of defendants to file suit or
cause suit to be filed against Illinois residents on alleged credit card debts (a) where there is no
signed contract, or the purported contract is subject to change by notice, and (b) the date of
delinquency or last payment in defendants' records are both more than five years prior to the
filing of suit.

**RESPONSE:        Denied.**

63.    On information and belief, MCM directs or causes the filing of all such lawsuits,
regardless of the fact that the plaintiff is MRC or NCC or another Encore subsidiary.

**RESPONSE:        Denied.**

64.    About 150 cases per month are filed in the name of MRC in Cook County, Illinois

alone, with more cases in other counties.

**RESPONSE:        Defendants lack information or knowledge sufficient to form a belief**

**as to the truth of these allegations.**

65.    About 1,000 cases per month are filed in the name of NCC in Cook County,
Illinois alone, with more cases in other counties.

**RESPONSE:        Defendants lack information or knowledge sufficient to form a belief**

**as to the truth of these allegations.**

66.    Other cases are filed in the name of MCM (over 1,000 during 2007 in Cook
County, Illinois alone).

**RESPONSE:        Defendants lack information or knowledge sufficient to form a belief**

**as to the truth of these allegations.**

67.    On information and belief, Encore purchases the time-barred debts, transfers them
to NCC and other subsidiaries for the purpose of suit, and funds such activities.

**RESPONSE:        Denied.**

68.     All other things being equal, Encore pays less for an older debt than for a more recent debt.

**RESPONSE:         Denied as stated.  Encore does not purchase debt.**

69.     Encore thus directly benefits from the conduct complained of herein, in that time-barred debts are cheaper than recent debts.

**RESPONSE:         Denied.**

70.     On information and belief, NCC and other Encore subsidiaries that hold title to debts have no employees, with all functions being performed by persons who are officers or employees of MCM.

**RESPONSE:         Denied as stated.  Defendants admit only that NCC2, MRC, and**

**Encore have no employees.**

71.     Defendants have acted in concert to commit the violations complained of herein.

**RESPONSE:         Denied.**

## CLASS ALLEGATIONS

72.     Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

**RESPONSE:         Defendants admit that the Plaintiffs purport to bring their claims as a**

**class action, but deny the propriety of a class action.**

73.     Class A, which pertains only to Count I, consists of (a) all natural persons (b) sued in the name of NCC2 (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**RESPONSE:         Defendants admit that Plaintiffs have defined the putative class as**

**above, but deny the propriety of a class action.**

74.    <u>Class B,</u> which pertains only to Count II consists of (a) all natural persons (b) sued in the  name of MRC (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**<u>RESPONSE:</u>        Defendants admit that Plaintiffs have defined the putative class as above, but deny the propriety of a class action.**

75.    <u>Class C,</u> which pertains only to Count III consists of (a) all natural persons (b) sued in the name of MCM (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**<u>RESPONSE:</u>        Defendants admit that Plaintiffs have defined the putative class as above, but deny the propriety of a class action.**

76.    For each class, the class members are so numerous that joinder is impracticable.

**<u>RESPONSE:</u>        Denied.**

77.    On information and belief, for each class, there are more than 50 natural persons whom one or more of the defendants sued or caused to be sued in an Illinois court on an alleged credit card debt, where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and the suit was filed

on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**RESPONSE:**        **Denied.**

78.    For each class, there are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.  The predominant common questions are:

       a.    Whether defendants have a practice of filing lawsuits against Illinois residents on credit card debts that are more than 5 years old and as to which no written contract exists.

       b.    Whether such practice violates the FDCPA.

       c.    Whether such practice violates the Illinois Collection Agency Act

**RESPONSE:**        **Denied.**

79.    For each class, the plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

**RESPONSE:**        **Denied.**

80.    For each class, the plaintiff will fairly and adequately represent the interests of the class members.  Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

**RESPONSE:**        **Denied.**

81.    For each class, a class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.  Many debtors may not realize that their rights are violated.

**RESPONSE:**        **Denied.**

## COUNT I - FDCPA

82.     Plaintiff Herkert incorporates paragraphs 1-81 by reference.

**RESPONSE:          Defendants incorporate their responses to Paragraphs 1-81.**

83.     This claim is against NCC2, MCM and Encore.

**RESPONSE:          Defendants admit that Plaintiffs purport to bring this claim against NCC2, MCM, and Encore.**

84.     It is both a deceptive practice and an unfair practice, in violation of the FDCPA, 15 U.S.C. §§1692e and 1692f, to file or threaten legal action on time-barred debts. *Kimber v. Federal Financial Corp.,* 668 F. Supp. 1480 (M.D. Ala. 1987).

**RESPONSE:          The allegations of paragraph 84 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state interpretations of FDCPA Sections 1692e and 1692f, which speak for themselves and otherwise deny any implication that Defendants violated the FDCPA.**

85.     Defendants regularly file or cause the filing of lawsuits against Illinois residents on time-barred credit card debts.

**RESPONSE:          Denied.**

86.     During 2007, defendants filed over 10 cases per month against Illinois residents on alleged credit card debts (a) where there is no signed contract, or the purported contract is subject to change by notice, and (b) the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit.

**RESPONSE:          Denied.**

87.     The Midland organization has previously been sued for engaging in this practice, and continued it with notice of its illegality. *Sadler v. Midland Credit Management, Inc. et al.,* 06 C 5045 (N.D. Ill.).

**RESPONSE:**          **Defendants admit only that MCM, Encore, and MRC were sued in the above-named case.  The case remains pending and deny the remaining allegations as untrue.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants for:

        a.      Statutory damages;

        b.      Actual damages;

        c.      Attorney's fees, litigation expenses and costs of suit;

        d.      Such other or further relief as the Court deems proper.

## COUNT II

### FDCPA CLAIM BASED ON LAWSUIT FILED BY MRC AGAINST PLAINTIFF JACKSON

88.      Plaintiff Jackson incorporates paragraphs 1-81 [sic] by reference.

**RESPONSE:**          **Defendants incorporate their responses to paragraphs 1-87.**

89.      This claim is against MRC, MCM and Encore.

**RESPONSE:**          **Defendants admit that Plaintiffs purport to bringing this claim against NCC2, MCM, and Encore.**

90.      It is both a deceptive practice and an unfair practice, in violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f, to file or threaten legal action on time-barred debts.  *Kimber v. Federal Financial Corp.,* 688 F. Supp. 1489 (M.D. Ala. 1987).

**RESPONSE:**          **The allegations of paragraph 90 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, the allegations are denied.**

91.    Defendants regularly file or cause the filing of lawsuits against Illinois residents on time-barred credit card debts.

**RESPONSE:**        **Denied.**

92.    During 2007, defendants filed over 10 cases per month against Illinois residents on alleged credit card debts (a) where there is no signed contract, or the purported contract is subject to change by notice, and (b) the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit.

**RESPONSE:**        **Denied.**

93.    The Midland organization has previously been sued for engaging in this practice, and continued it with notice of its illegality.  *Sadler v. Midland Credit Management, Inc. et al.,* 06 C 5045 (N.D. Ill.).

**RESPONSE:**        **Defendants admit only that MCM, Encore, and MRC were sued in the above-named case.  The case remains pending and otherwise deny the remaining allegations.**

WHEREFORE, plaintiff Jackson requests that the Court enter judgment in favor of plaintiff and the class members and against defendants for:

        h.    Statutory damages;

        i.    Actual damages;

        j.    Attorney's fees, litigation expenses and costs of suit;

        k.    Such other or further relief as the Court deems proper.

### COUNT III – ILLINOIS COLLECTION AGENCY ACT AGAINST MCM

94.    Plaintiffs Herkert and Jackson incorporates paragraphs 1-81 [sic] by reference.

**RESPONSE:**        **Defendants incorporate their responses to paragraphs 1-93.**

95.    This claim is against MCM only.

**RESPONSE:**          **Defendants admit that Plaintiffs purport to only bringing this claim**

**against MCM.**


96.    MCM is a licensee under the Illinois Collection Agency Act, 225 ILCS 425/1 et

seq.

**RESPONSE:**          **The allegation of paragraph 96 sets forth conclusions of law to which**

**no response is required.  To the extent that a response is required, Defendants admit that**

**MCM holds an Illinois license.**

97.    Defendant MCM violated the following provisions of 225 ILCS 425/9 by filing or
causing the filing of time-barred lawsuits:

> **. . . (20) Attempting or threatening to enforce a right or remedy with knowledge or
> reason to know that the right or remedy does not exist.**

**RESPONSE:**          **The allegation of paragraph 97 sets forth conclusions of law to which**

**no response is required.  To the extent that a response is required, Defendants deny the**

**allegations as untrue.**

98.    A private right of action exists for violation of the ICAA.  *Sherman v. Field
Clinic,* 74 Ill. App. 3d21, 392 N.E.2d 165 (1st Dist. 1979).

**RESPONSE:**          **The allegation of paragraph 98 sets forth conclusions of law to which**

**no response is required.  To the extent that a response is required, Defendants respond that**

**the ICAA speaks for itself and otherwise deny that MCM violated the ICAA.**

99.    Plaintiff and each member of the class was damaged as a result.

**RESPONSE:**        **The allegation of paragraph 99 sets forth conclusions of law to which no response is required.  To the extent that a response is required, Defendants deny the allegations as untrue.**

WHEREFORE, plaintiff [sic] requests that the Court grant the following relief in favor of plaintiff and the class members and against defendant MCM:

    a.        Compensatory and punitive damages;

    b.        Costs;

    c.        Such other and further as is appropriate.

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiffs and for such other relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Further answering the First Amended Consolidated Class Action Complaint, and as additional defenses thereto, Defendants incorporate by reference the foregoing answers and affirmative defenses as though fully set forth herein, without assuming the burden of proof where such burden is otherwise on Plaintiffs as a matter of applicable substantive procedural law, and further allege as follows:

## FIRST DEFENSE

1.        MCM is not liable for a violation of the FDCPA because any violation, which MCM denies occurred, was not intentional and would have resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

## SECOND DEFENSE

2.    Plaintiffs fail to state a cause of action under the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, *et seq.*, because Defendants MCM, MRC, NCC2, and Encore did not engage in any debt collection activities and are not debt collectors as defined by the FDCPA.

## THIRD DEFENSE

3.    Assuming Defendants MRC, NCC2, and Encore's alleged acts or omissions violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* and said Defendants are found to be debt collectors as defined by the Act, all of which said Defendants deny, any violation of the Act was not intentional and resulted from a *bona fide* error under 15 U.S.C. § 1692k(c).

## FOURTH DEFENSE

4.    Upon information and belief, this Court lacks jurisdiction over Plaintiffs' claims, because the parties have entered into a valid and enforceable argument to arbitrate.  Thus, arbitration is also the more appropriate venue for Plaintiffs' claims to be brought, because Defendants may possess certain arbitration rights based upon contracts entered into by one or more of the Plaintiffs.

## FIFTH DEFENSE

5.    Plaintiffs have waived their rights to proceed on a class action basis against the Defendants due to contracts entered into by one more of the Plaintiffs.

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiffs on all claims asserted by Plaintiffs and for such other relief as the Court deems just and proper.

Dated:  May 13, 2008                    Respectfully submitted,

                                        **MIDLAND CREDIT MANAGEMENT, INC.;**
                                        **MRC RECEIVABLES CORPORATION,**
                                        **MIDLAND FUNDING NCC-2, AND ENCORE**
                                        **CAPITAL GROUP, INC.**

                                        By: s/ Theodore W. Seitz
                                            Richard E. Gottlieb (rgottlieb@dykema.com)
                                            James W. McConkey (jmcconkey@dykema.com)
                                            Theodore W. Seitz (tseitz@dykema.com)
                                            Renee Zipprich (rzipprich@dykema.com)
                                            Dykema Gossett, PLLC
                                            10 South Wacker Drive, Suite 2300
                                            Chicago, Illinois 60606
                                            Phone: 312-876-1700
                                            Fax:    312-627-2302

## CERTIFICATE OF SERVICE

I hereby certify that on **May 13, 2008,** I electronically filed the foregoing **Defendants'**

**Answer and Affirmative Defenses to First Amended Consolidated Class Action Complaint**

with the Clerk of the Court using the ECF system, which sent notification to the following:

> Daniel A. Edelman (courtecl@edcombs.com)
> Cathleen M. Combs (ccombs@edcombs.com)
> James O. Latturner (jlatturner@edcombs.com)
> Cassandra P. Miller (cmiller@edcombs.com)

> s/ Irina V. Frye

LAN01\186928.2
ID\TWS