# EXHIBIT 5

Cedeno v. Fieldstone Mortgage Co.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Paola CEDENO and Alejandro Noboa, Plaintiff,
v.
FIELDSTONE MORTGAGE COMPANY and, VISION HOME MORTGAGE CORPORATION, Defendant.
**No. 01 C 5110.**

July 19, 2002.

Mortgagors brought action against mortgage broker and mortgagee, alleging that mortgagee's payment of yield spread premium to broker, in addition to 1% origination fee paid to broker by mortgagors, violated 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans. Mortgagors moved for class certification. Defendants moved for partial judgment on the pleadings. The District Court, Guzman, J., held that: (1) mortgagors satisfied prerequisites for class certification; but (2) District Court's obligation to examine each mortgagor's case to determine whether fee charged was reasonable was not a process amenable to a class action; and (3) defendants were not entitled to judgment on the pleadings.

Motions denied.

West Headnotes

**[1] Federal Civil Procedure 170A 182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Mortgagors established numerosity requirement for class certification of their action against mortgage broker and mortgagee, alleging violation of 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans, where mortgagee stated that it had processed 2,778 FHA wholesale loans in which both a 1% origination fee and yield spread premium were paid to broker. Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A 182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Mortgagee's standard business conduct in paying mortgage broker a yield spread premium even though mortgagors already paid 1% origination fee to broker established common nucleus of operative fact and common question of law among members of proposed class of mortgagors, as would satisfy commonality requirement for class certification of mortgagors' action against broker and mortgagee, alleging violation of 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A 182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Mortgagors' complaint alleging that mortgagee's standard business conduct in paying mortgage broker a yield spread premium even though mortgagors already paid 1% origination fee to broker arose from same practice or course of conduct that gave rise to claims of other class members and that their claims were based on same legal theory satisfied typicality requirement for class certification of their action against broker and mortgagee, alleging violation of 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A 182.5**

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers,
Borrowers, and Debtors. Most Cited Cases
Mortgagors established their adequacy to represent class of mortgagors in action against mortgage broker and mortgagee, alleging violation of 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans, despite issues of whether mortgagors failed to fulfill their mortgage obligations and whether a mortgagor would remain in the United States during litigation, where such issues would affect only calculation of damages and would not be so consuming as to take focus from merits of the case. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞182.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers,
Borrowers, and Debtors. Most Cited Cases
Mortgagors' action against mortgage broker and mortgagee, alleging that mortgagee's payment of yield spread premium to broker, in addition to 1% origination fee paid to broker by mortgagors, violated 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans, was not amenable to a class action, where District Court was required to examine each individual case to determine if each mortgagor was charged unfairly; whether reasonable fee was charged depended on several factors that could not be determined on a class wide basis. 24 C.F.R. § 3500.14; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ☞1061**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(L) Judgment on the Pleadings
         170AVII(L)2 Particular Cases
            170Ak1061 k. In General. Most Cited
Cases
Mortgage broker and mortgagee were not entitled to judgment on the pleadings in mortgagors' action

alleging they violated 1% cap on broker fees on Federal Housing Administration (FHA) mortgage loans, since mortgagors stated a legitimate claim for excessive settlement charges. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

MEMORANDUM OPINION AND ORDER

GUZMAN.
**\*1** Plaintiffs Paola Cedeno and Alejandro Noboa seek class certification to proceed in a suit against Fieldstone Mortgage Company ("Fieldstone") and Vision Home Mortgage Corporation ("Vision") for alleged violations of a 1% cap on broker fees imposed by HUD/FHA. Plaintiffs allege that Fieldstone and Vision have engaged in a uniform business practice of collecting and receiving excessive closing costs on FHA mortgage loans.

Pending is plaintiffs' Renewed Motion for Class Certification as to Count II (Violation of Real Estate Settlement Procedures Act, 12 U.S.C. 2601-2617 ("RESPA")) and Count IV (Violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA")) of their complaint. Defendants have filed a Motion for Partial Judgment on the Pleadings for Counts II and IV. For the reasons provided in this Memorandum Opinion and Order, both motions are denied.

BACKGROUND

In support of their motion, plaintiffs assert the following facts which are taken as true. Alejandro Noboa contacted Vision Home Mortgage Corporation, seeking their services in procuring a mortgage loan to purchase a home. On July 12, 2000 Alejandro Noboa and Paula Cedeno (Noboa's sister-in-law) obtained a mortgage loan in the amount of $112,472.00 at 9% on a HiUD/FHA-insured mortgage loan. Amended Complaint ¶ 7. In addition to the 1% origination fee paid to Vision directly by the plaintiffs, Vision was paid a 3.88% yield spread premium by Fieldstone.

Plaintiffs allege that the yield spread premium is a payment by a lender to the borrower's mortgage broker that represents compensation for unnecessarily increasing the borrower's interest rate. The lender establishes a base or "par" interest rate at which it will make or purchase a loan from a class of borrowers, and informs the mortgage brokers of the

Not Reported in F.Supp.2d                                                                   Page 3
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

"par" rate by means of "rate sheets" faxed or e-mailed to the brokers on a regular basis. The formula for paying the "yield spread premium" is also in the rate sheets. If the broker induces the borrower to sign loan papers at a higher rate, the lender pays a "yield spread premium" linked to the increase in the rate. Pls.' Ren. Mot. Class Cert. at ¶ 5. Plaintiffs argue that where yield spread premiums are paid, the negative impact on the mortgagee is substantial.

DISCUSSION

I. Plaintiff's Renewed Motion for Class Certification

A. Prerequisites to Class Certification Under Rule 23(a)

Plaintiff seeks to certify two separate classes (designated as A and B); one for claims against Fieldstone, and another for claims regarding Vision. In order to certify a class, the plaintiff must meet the following four prerequisites in regard to each claim: 1) class is too numerous to join; 2) common questions of law or fact; 3) claims or defenses of representative parties are typical of those of the class members, and 4) the representative parties will fairly and adequately represent the class. Fed.R.Civ.P. 23(a).

Once the prerequisites of Rule 23(a) are satisfied, the plaintiffs must also meet one of the requirements of Rule 23(b). Plaintiffs in this case have moved to certify Class A and Class B under Rule 23(b)(3) which requires that "the court [find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). A failure in any one of the requirements of Rule 23 results in a denial of class certification. General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The burden of demonstrating that the case satisfies Rule 23's requirements falls on the party seeking certification. Patterson v. General Motors Corp., 631 F.2d 476, 480 (7th Cir.1980). Whether the class representatives have satisfied their burden is within the discretion of the court. Liberies v. County of Cook, 709 F.2d 1122, 1127 (7th Cir.1983).

*2 Defendants urge the court to examine the merits of Plaintiffs' claims in evaluating Plaintiffs' Renewed Motion for Class Certification. Generally, when determining if certification is appropriate, the ultimate merits of the case are not examined. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir.1981). However, a determination of whether the case is well-suited to be tried as a class action generally depends on factors "enmeshed in the factual and legal issues comprising the plaintiffs' cause of action." Police Ass'n v. City of Chicago, 7 F.3d 584, 599 (7th Cir.1993) (quoting General Tel. Co., 457 U.S. at 160). The court assumes that the Plaintiffs' complaint has merit, but will consider the factual and legal issues underlying the plaintiffs' cause of action to determine the propriety of a class action in this case.

Because plaintiffs claim that ICFA was violated through the payment of broker compensation in excess of a 1% cap, the issue of whether the defendants engaged in unfair and deceptive practices in violation of ICFA is directly tied to their RESPA claim. The parties make no claim or class specific arguments regarding the requirements of Rule 23(a), therefore, the court's discussion of class certification applies to both Claim II and Claim IV.

1. Rule 23(a)(1) Numerosity

[1] Rule 23(a)( 1) requires that "the class is so numerous that joinder of all parties is impracticable." Fed.R.Civ.P. 23(a)(1). Although there is no magic number for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1). Ste inbrecher v. Oswego Police Officer Dickey, 138 F.Supp.2d 1103 (N.D.Ill.2001)(citing Ringswald v. County of DuPage, 196 F.R.D. 509, 512 (N.D.Ill.2000)). Defendant Fieldstone has stated that for the years 2000 and 2001, Fieldstone processed 2,778 FHA wholesale loans in which both a 1% origination fee and a yield spread premium were paid to the broker. (Pls.' Ren. Mot. Class. Cert. Ex. A) (Defs.' Resp. Interrogatory # 7). Defendant Vision has stipulated Rule 23(a)'s numerousity requirement as to Class B. (Pls.' Ren. Mot. Class. Cert. Ex. B). Therefore plaintiffs have satisfied the numerousity requirement of Rule 23(a).

2. Rule 23(a)(2) Common Questions of Law

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

The second requirement of Rule 23(a) is that "there are questions of law or fact common to the class."Fed.R.Civ.P. 23(a)(2). The commonality requirement is met where there is a common nucleus of operative fact.*Rosario V. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). A common nucleus of operative fact is generally found in instances where "the defendants have engaged in standardized conduct towards members of the proposed class."*Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998).

[2] Fieldstone has stated that during 2000 and 2001 it processed 2,778 FHA loans reflecting both a 1% loan origination fee and a yield spread premium. (Resp.Interrogatory # 7). Thus, the payment to mortgage brokers of both a loan origination fee and a yield spread premium appears to be Fieldstone's standard business conduct (at least in regard to this class of mortgagors) and provides a common nucleus of operative fact among the members of the proposed Class A.

**3** While Vision has not provided a specific number of mortgages which resulted in the collection of both a 1% origination fee and a yield spread premium, it has stated that "there are sufficient persons that fall within the criteria of the putative class defined in the Plaintiffs' Amended Complaint."(Pls.' Ren. Mot. Class Cert. Ex. B.) Plaintiffs Amended Complaint defines Class B as all persons who paid a mortgage broker fee of 1% or more of the principal and in connection with whose loan, Vision received a yield spread premium. We therefore find that Vision's admission is sufficient to demonstrate that there exists a group of individuals, as a result of whose mortgage transactions, Vision collected both a 1% loan origination fee and a yield spread premium.

Defendants have not argued that the terms of Cedeno and Noboa's mortgage or the method in which fees were collected was in any way atypical from their standard business conduct. Furthermore, there exists a common issue of law in this case of whether the FHA prohibits total broker compensation in excess of 1% or whether the 1% cap applies only to payments made directly by the mortgagee. Because plaintiffs have shown that the proposed classes have common questions of fact and law, Rule 23(a)(2)'s requirement of commonality is satisfied.

3. *Rule 23(a)(3) Typicality*

"[T]he claims or defenses of the representative parties are typical of the claims or defenses of the class."Fed.R.Civ.P. 23(a)(3)."A plaintiffs claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."*De la Fuente v. Stokely-Van Camp. Inc.,* 713 F.2d 225, 232 (7th Cir.1983). However, a plaintiffs claims are not typical if "proving them does not necessarily prove all the proposed class members' claims"*Ploog v. Homeside Lending, Inc.,* No. 00 C 6391, 2001 WL 1155288 (N.D.Ill. Sept.28, 2001)*(citing Calkins v. Fidelity Bond and Mortgage Co.,* No.94 C 5971, 1998 WL 719560 (N.D.Ill. Oct.8, 1998))."Certification under Rule 23(b)(3) is improper where liability determinations are both individual and fact intensive."*Hicky v. Great Western Mortgage Corp.,* No. 94 C 3638, 1995 WL 121534,*4 (N.D.Ill. Mar.17, 1995).

[3] Defendants argue "Plaintiffs claims are only typical of those of other potential class members in that they involve plaintiffs baseless aggregation of two unrelated fees."Def. Resp. to Pl. Mot. Class Cert. at 10. The Court finds that Plaintiffs complaint arises from the same "practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."Thus, Plaintiffs have satisfied this prong of the test for class certification.

4. *Rule 23(a)(4) Fair and Adequate Representation*

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."Fed.R.Civ.P. 23(a)(4). Adequacy of representation has three elements (1) The chosen class representative cannot have antagonistic or conflicting claims with other members of the class, (2) the named representative must have sufficient interest in the outcome to ensure vigorous advocacy, and (3) counsel for the named plaintiff must be competent, qualified, and generally able to conduct the proposed litigation seriously. *Anderson v. New Dimension Financial Services,* 2001 WL 883700 *5 (N.D.Ill.2001) (*Citing, Gammon v. GC Servs. Ltd Partnership,* 162 F.R.D. 313, 317 (1995)). Plaintiffs' counsel has provided the Court

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                 Page 5
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

with a summary of the attorneys qualifications and experience. (Pls.' Ren. Mot. Class Cert., Ex. D)

**\*4** [4] Defendants allege that Cedeno and Noboa are inadequate class representatives because they have failed to fulfill their mortgage obligations and because Cedeno may not remain in the United States. The Court has reviewed the deposition cited by defendants and finds that Cedeno expressed no immediate intentions of returning to Ecuador. Cedeno responded "yeah" to a vague question of whether she would like to return to Ecuador (whether this would be a vacation, a permanent move or at retirement age was not clarified) but gave no indication that she would be leaving the country any time during this litigation( Cedeno Dep. at 35).

Assuming that damages in this case would be calculated, in part, upon anticipated elevated interest payments made to Defendant Fieldstone Mortgage Company, plaintiffs' failure to make mortgage payments would affect those damages. However, whether mortgage payments have been fulfilled, does not affect the legality of the settlement charges paid to the defendants (which is the alleged violation). In order to defeat adequacy, the specific defense must be "unique, arguable and likely to usurp a significant portion of the litigant's time and energy."*Anderson, 2001 WL 883700 at \*4* (Quoting *McNichols v. Loeb Rhoades & Co., 97 F.R.D. 331, 334 (N.D.Ill.1982).* Defenses that are unique to a named plaintiff are relevant to the inquiry into whether the plaintiffs claims are typical but are not necessarily dispositive of the issue. *Anderson, 2001 WL 883700 at \*7;See Gaspar v. Linvatec Corp., 167 F.R.D. 51, 58 (N.D.Ill.1996).* In this case the court finds that this issue, which would affect only the calculation of damages, will not be so consuming as to take the focus from the merits of the case. *Id* at \*5 (internal omissions omitted). Thus, the Court finds that Plaintiffs satisfy the requirement of adequacy.

**B. Class Certification Under Rule 23(b)**

[5] In addition to the requirements of Rule 23(a), the plaintiffs must meet one of the requirements of Rule 23(b). Fed.R.Civ.P. 23(b); *Retired Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir.1993).* Plaintiffs have moved to certify the class under Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to the members of

the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."Fed.R.Civ.P. 23(b)(3). The matters pertinent to the court's consideration in determining whether Rule 23(b)(3) is satisfied include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced or against members of the class; (C) the desireability or undesireability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Id.

**\*5** Plaintiffs moving for certification under Rule 23(b)(3) must show that they are seeking to remedy a common legal grievance. *Doe v. Guardian Life Ins. Co. ofAm., 145 F.R.D. 466, 475 (N.D.Ill.1992).* Plaintiffs must also show that class action is the superior method for adjudication of the case.Fed.R.Civ.P. 23(b)(3). It is not necessary for the common issues to be dispositive of the entire litigation. *Doe, 145 F.R.D. at 475;Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D.Ill.1986).*"But individual defenses that may be asserted against the named plaintiff preclude a finding of typicality only where such issues are likely to usurp a significant portion of the named plaintiffs time or become a focus of the litigation such that the class is likely to suffer. *J.H Cohn & Co. v. American Appraisal Associates, Inc., 628 F.2d 994, 998-99 (7th Cir.1980).*

Section 8 of RESPA prohibits the payment of kickbacks or referral fees for settlement services. 12 U.S.C. § 2607(a). However, Class certification is inappropriate where the court is required to determine whether or not a kickback had occurred on a class wide basis. *See Taylor v. Flagstar Bank, FSB 181 F.R.D. 509, 523 (M.D.Ala.1988); Colon v. Ohio Savings Bank, 1999 WL 965593,* \*6 (N.D.Ill. Oct.15, 1999). Section 8(c) provides that "the payment to any person of a bona fide salary or compensation or other payment for good or facilities actually furnished or for services actually provided" is not prohibited. 12 U.S.C. § 2607(c).

Plaintiffs cite *Bjustrom v. Trust One Mortgage, 178*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                      Page 6
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

F.Supp.2d 1183 (W.D.Wash.2001), in which the district court certified a class of plaintiffs who alleged that the yield spread premium paid to a broker was determined by the interest rate of the loan, and that the combination of the yield spread premium and the origination fee exceed a 1% cap imposed by HUD. The Bjustrom court stated, "This Court granted class certification to review the 1% fee cap issue."*BJustrom, 178 F.Supp.2d at 1186*. This statement indicates that class certification was granted in order to discuss the merits of defendants' motion to dismiss, which was granted. The *BJustrom* court considered three questions: (1) whether a 1% "origination fee" is a cap on broker compensation, (2) whether yield spread premiums equal to or exceeding the 1% cap violate HUD regulations, and (3) whether yield spread premiums violate RESPA. Id

The *Bjustrom* court concluded that mortgage brokers may collect fees beyond the 1% origination fee from the borrower including, recording fees and taxes, credit reports, surveys, title examination, as well as other reasonable fees, charges for discounts and interest. *Id.* at 1189.*Vargas v. Universal Mortgage Corp.* agreed, stating "[t]he directive puts an upper limit on 'origination fee[s]' which are paid by the borrower to the broker; it says nothing about YSP's which are paid by the lender."*Vargas v. Universal Mortgage Corp.,* 2001 WL 1545874 *3 (N.D.Ill.2001)(Citing, Bjustrom, 178 F.Supp.2d at 1189).* In addition, the Policy Statement makes clear that FTIJD does not consider payments of yield spread premiums by lenders to mortgage brokers to be illegal per *se. See* 64 Fed.Reg. 10080, 10084.*The court found that yield spread premiums are not compensation for specific expenses." Yield spread premiums may be paid by lenders to mortgage brokers in addition to a 1% origination fee charged to borrowers, subject to RESPA regulations requiring that all payments be in exchange for goods or services.

**\*6** The U.S. Department of Housing and Urban Development (HUD) in RESPA Policy Statement 1999-1, stated that payments of yield spread premiums by lenders to mortgage brokers are not per se illegal and that courts may make *individualized* inquiries into whether payments are related to the receipt of goods or services. Rules and Regulations: Department of Housing and Urban Development, 24 C.F.R. § 3500, 66 FR 53052, 53053.When a person

in a position to refer settlement service business...receives a payment for providing additional settlement services as part of a real estate transaction, such payment must be for services that are actual, necessary and distinct from the primary services provided by such person." 24 C.F .R. 3500.14. "The payment of a commission or portion of the... premium.., or receipt of a portion of the payment.., where no substantial services are being performed.., is a violation of Section 8 of RESPA. It makes no difference whether the payment comes from [the settlement service provider] or the purchaser. The amount of the payment must bear a reasonable relationship to the services rendered."66 FR 53058. So, while yield spread premiums are not per se a violation of RE SPA, payments for which no services or goods were received are illegal.

HUD requires a two-part test to determine if compensation paid is permissible as reimbursement for goods or services provided. Bjustrom, 178 F.Supp.2d at 1195. The first step is passed if some goods or services are provided. *Id* The second prong of the test is to compare the value of the goods or services to determine whether the compensation is reasonably related to the compensation paid. *Id* RESPA Statement of Policy 2001, at 13. HUD rejects the examination of whether the yield spread premium is paid for specific services, stating "[T]he amount of the [premium] payment is not, under the HUD test, scrutinized separately and apart from total broker compensation."*Bjustrom, at 1186; RESPA Statement of Policy 2001, at 4. Yield spread premiums by lenders to mortgage brokers are not per se illegal, but yield spread premiums are to be examined through an individualized determination of whether total compensation is reasonably related to services provided. *Anderson, 2001 WL 883700, at *7*.

"If the payment of a thing of value bears no relationship to the goods or services provided, then the excess is not for services or goods actually performed or provided."24 C.F.R. 3500.14(g)(2). Whether an individualized mortgage broker provided services to an individual borrower requires a transaction specific inquiry. *Empalmado v. First Franklin Financial Corp.,* 2001 WL 1155081 *3 (N.D.Ill.2001); Golan, 1999 WL 965593, at *5*.

Whether or not each individual plaintiff was charged a reasonable fee may depend on several factors and

Not Reported in F.Supp.2d                                                                        Page 7
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

cannot be determined on a class wide basis. *See, e.g., Sicinski v. Reliance Funding Corp.,* 82 F.R.D. 730 (S.D.N.Y.1979); *Hinton v. First American Mortgage,* 1998 WL 111668, *5 (N.D.Ill.1998).* Under this two-prong test, HUD emphasizes that: "This analysis requires careful consideration of fees paid in relation to price structures and practices in similar transactions and in similar markets."RESPA Statement of Policy 2001, at 11-12. "[T]otal compensation should be scrutinized to assure that it is reasonably related to goods facilities or services furnished or performed to determine whether total compensation is legal under RESPA. Total compensation to a broker includes direct origination and other fees paid by the borrower, indirect fees, including those that are derived from the interest rate paid by the borrower, or a combination of some or all..."Clearly trying to eliminate the possibility of class actions in RESPA cases, HUD states that "it is necessary to look at each transaction individually, including examining all of the goods or facilities provided or services performed by the broker in the transaction."*Bjustrom, 178 F.Supp.2d at 1194;* RESPA Statement of Policy 2001, at 11-12. Because the court must examine each individual case to determine if each plaintiff was charged unfairly, this process is not amenable to a class action.[FN1]

> FN1.*See Empalmado v. First Franklin Financial Corp.,* 2001 WL 1155081 *7 (N.D.Ill.2001); *Sims v. First Franklin Financial Corp. .,* 2001 WL 1155271 (N.D.Ill.2001); *Golanv. Ohio Say. Bank,* 1999 WL 965593 (N.D.Ill.1999); *Buckley v. Firstar Home Mortgage,* (N.D.Ill.1998); *Vargas., 2001 WL 1545874;Hinton,* 1998 WL 111668.

## II. Defendant's Motion for Partial Judgment on the Pleadings

**\*7** [6] Plaintiffs allege that they "were overcharged for real estate settlement services" in violation of RESPA. Complaint, ¶ 33. Plaintiffs also allege that defendants failed to disclose "that the 1% FHA restriction was being evaded" in violation of the ICFA. Complaint ¶¶ *55-56.*In considering a motion under Rule 12(c), the court will accept all well plead allegations in the complaint as true and will draw all reasonable inferences in favor of the plaintiff. *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir.2000).* Judgment on the pleadings is appropriate only if it appears beyond doubt that plaintiff can prove no set of facts that would entitle them to relief.*Steinbrecher, 138 F.Supp.2d at 1107.*

While yield spread premiums are not *per se* illegal, neither are they *per se* legal. "All fees will be scrutinized as part of total compensation to determine that total compensation is reasonably related to the goods or facilities actually furnished or services actually performed."66 FR 53052, at 53054.Thus, RESPA requires that there be a rational relationship between fees charged and the services or goods rendered to the borrower. *Vargas,* 2001 WL 1545874 at *3~ The "total compensation" must be "commensurate with that amount normally charged for similar services, goods, or facilities."*Empalmado,* 2001 WL 1155081, at *3, 64 Fed.Reg. at 10086.As discussed above, HUD established a test for legality of yield spread premiums.

> In transactions where lenders make payments to mortgage brokers, HUD does not consider such payments (i.e., yield spread premiums or any other class of named payments) to be illegal per se. HUD does not view the name of the payment as the appropriate issue under RESPA. HUD's position that lender payments to mortgage brokers are not illegal per se does not imply, however that yield spread premiums are legal in individual cases or classes or transactions. The fees in cases and classes of transactions are illegal if they violate the prohibitions of Section 8 of RESPA. In determining whether a payment from a lender to a mortgage broker is permissible under Section 8 of RESPA, the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid. The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal. The second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed."

66 FR 53052, at 53054.

Thus, while such case by case analysis is not suitable to a class action suit, plaintiffs are not left without

remedy. "RESPA allows for an award of treble damages and attorneys' fees and costs."*Vargas, 2001 WL 1545874, at \*3;Colon, 1999 WL 965593, at \*6*. "Moreover, a declaratory judgment finding that [defendant's] policy violated § 8 may deter the practice and bring relief to others besides the individual plaintiffs."

**\*8** Defendants have not made clear how plaintiffs have failed to state a legitimate claim for settlement charges in excess of that permitted by RESPA. Therefore the Court finds that Plaintiffs may assert claims on their own behalf. Discovery will reveal whether the extent of goods or facilities furnished with respect to the compensation paid was warranted.

<div align="center">CONCLUSION</div>

For the forgoing reasons, and because the Court finds that an inquiry into these claims require individualized inquiry, the Court denies plaintiffs motion for class certification (# 34), and Defendants' motion to dismiss Count II and Count IV(# 36) are denied.

SO ORDERED.

N.D.Ill.,2002.
Cedeno v. Fieldstone Mortgage Co.
Not Reported in F.Supp.2d, 2002 WL 1592759 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.