# EXHIBIT 13

Case 1:08-cv-00760    Document 64-14    Filed 08/29/2008    Page 2 of 10



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

Page 1

**H**Kondratick v. Beneficial Consumer Discount Co.
E.D.Pa.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Andrew S. KONDRATICK, Sr. and Melissa A.
Kondratick, h/w, individually and on behalf of Others
Similarly Situated, Plaintiffs,
v.
BENEFICIAL CONSUMER DISCOUNT COMPANY,
d/b/a Beneficial Mortgage Company of Pennsylvania, et al., Defendants.
No. Civ.A. 04-4895.

Feb. 8, 2006.

Stuart A. Eisenberg, McCullough & Eisenberg PC, Warminster, PA, for Plaintiffs.
Louis W. Schack, Reed Smith LLP, Andrew M. Schwartz, Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, for Defendants.

*MEMORANDUM*

KELLY, J.
**\*1** Before this Court is Plaintiffs' Motion for Class Certification. Plaintiffs Andrew S. Kondratick, Sr. and Melissa A. Kondratick (collectively "the Kondraticks") have brought claims against Defendants Beneficial Consumer Discount Company, d/b/a Beneficial Mortgage Company of Pennsylvania ("Beneficial") and Household Finance Corporation, n/k/a HSBC Finance Corporation (collectively, "Beneficial Defendants"), and against Defendants Chromulak & Associates, LLC, Cathy Ann Chromulak, Heather Troxel, Susan Schultz, Scott Crawford, and Michelle Smith (collectively, "Attorney Defendants" or "Counsel for Beneficial"). Plaintiffs' claims are based on breach of contract, alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692*etseq.* ("FDCPA"), and alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1*etseq.* ("UTPCPL"). For the reasons stated below, the Kondraticks' Motion for Class Certification will be denied.

I. *BACKGROUND*

The Kondraticks obtained a home equity line of credit from Beneficial in the amount of $25,000.00 (the "Line of Credit"). The Kondraticks signed a Home Equity Credit Line Revolving Loan Agreement (the "Note") evidencing the Line of Credit. The Line of Credit was secured by a mortgage (the "Mortgage") on real property located at 43 East Main Street, Lansdale, Pennsylvania (the "Property"). The Mortgage was signed by the owner of the home, Andrew Kondratick, who obtained title to the Property from his father. The Mortgage securing the Line of Credit was a second mortgage on the Property. Option One Mortgage Company ("Option One") held a first mortgage lien on the Property as security for a loan it made to the Kondraticks prior to June 27, 2001.

The Kondraticks withdrew the full principal amount ($25,000.00) provided for under the Line of Credit and used the funds to pay off a truck loan and help pay various bills. Initially, the Kondraticks were timely with their monthly payments. However, by August 31, 2002, they had fallen behind in their monthly payment obligations and by October 17, 2002, they fell behind by four payments.

On August 31, 2002, Beneficial sent a letter to the Kondraticks advising them of their delinquency and requesting that they contact Beneficial if payment could not be made. Even though the Kondraticks were not sending payments, Beneficial continued to send them monthly mortgage statements. The October 17, 2002 monthly mortgage statement advised the Kondraticks that their Line of Credit had been suspended due to their failure to make two or more payments when due.

On October 24, 2002, Beneficial sent another letter to the Kondraticks advising them that their account was past due and alerting them that they had not responded to Beneficial's recent request for payment. This letter also stated that Beneficial intended to take legal action to recover the balance due, unless the past due amount was received within ten days of the date of the letter. After this correspondence, Beneficial referred the Kondratick matter to Chromulak & Associates, LLC (successor in interest to Mollica & Murray) to collect the amount claimed to be due and owing by the Kondraticks to Beneficial.[FN1] At this point, the Line of Credit represented by the Note and Mortgage was cancelled.

FN1. Mollica & Murray was dismissed from this

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

action by a Stipulation of Voluntary Dismissal.

**\*2** On November 12, 2002, Mollica & Murray (predecessor in interest to Chromulak & Associates) sent a "debt validation" letter to the Kondraticks advising them that "[l]egal proceedings may be filed against you thirty days from the date of this notice if this matter is not resolved during this time."(Beneficial Defs.' Mot. Summ. J., Ex. G). This letter included a "Notice to Consumer Debtor" in accordance with the Fair Debt Collection Practices Act, 15 U.S.C § 1692g, which stated the following:

*NOTICE TO CONSUMER DEBTOR*

TO:  Andrew S. Kondratick, Sr.

43 Main Street

Lansdale, PA 19446

IN ACCORDANCE WITH THE FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U .S.C.S. SECTION 1692g YOU ARE HEREBY NOTIFIED AS FOLLOWS:

(1) AMOUNT OF DEBT:  $27,864.78

(2) NAME OF CREDITOR:  Beneficial Consumer Discount Company d/b/a/ Beneficial Mortgage Company of Pennsylvania

(3) UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY THE DEBT COLLECTOR ATTORNEY.

(4) IN THE EVENT THAT YOU NOTIFY THE DEBT COLLECTOR ATTORNEY IN WRITING WITHIN THE THIRTY (30) DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, THE DEBT COLLECTOR ATTORNEY WILL OBTAIN AND MAIL TO YOU A VERIFICATION OF THE DEBT OR A COPY OF THE JUDGMENT AGAINST YOU.

(5) UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30) DAY PERIOD, THE DEBT COLLECTOR ATTORNEY WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

DATED: November 12, 2002

(*Id.*). The Kondraticks did not contact Beneficial's counsel in response to the November 12, 2002 letter.

On December 18, 2002, Beneficial's counsel, Chromulak & Associates, initiated a lawsuit in the Court of Common Pleas of Montgomery County, Pennsylvania, seeking money damages for the Kondratick's default ("State Action").[FN2] In September 2002, the Kondraticks contacted the Pennsylvania Housing Finance Agency ("PHFA") and applied for a loan under the Homeowner's Emergency Mortgage Assistance Program ("HEMAP") to pay for both the Option One first mortgage and their Line of Credit with Beneficial. In November 2002, PHFA approved the HEMAP loan for the Kondraticks. On January 10, 2003, a Beneficial representative signed a Reinstatement Agreement with PHFA. The Reinstatement Agreement explained that Andrew Kondratick had been approved for a mortgage assistance loan, and stated that the "loan will reinstate the mortgage to a current status, including reasonable attorneys fees and costs."(Beneficial Defs.' Mot. Summ. J., Ex. I). The Reinstatement Agreement further provided that:

> FN2. At the same time in which the Kondraticks began missing their monthly payments with Beneficial, they also fell behind on their monthly mortgage payments with Option One, the first mortgagee. Option One initiated foreclosure proceedings against the Kondraticks.

A. Upon payment of the sum of money [the delinquency amount] set forth above, you agree to satisfy all

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760   Document 64-14   Filed 08/29/2008   Page 4 of 10

Not Reported in F.Supp.2d                                                                                            Page 3
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

delinquent principal, interest, late charges, real estate taxes, escrow AND total escrow shortage, legal fees and costs owed by the Borrower. You will reinstate the Borrower's account to a current status.

**\*3** B. Upon payment of such sums, all pending legal action arising out of the delinquency of the Borrower will be discontinued.

(*Id.*).

While the Reinstatement Agreement is dated January 10, 2003, the PHFA did not make payment on behalf of the Kondraticks to Beneficial until April 8, 2003. The payment by PHFA apparently brought the loan current as of April 8, 2003. On March 17, 2003, prior to payment by PHFA and subsequent to the signing of the Reinstatement Agreement, Counsel for Beneficial filed a Praecipe for Judgment in the State Action. On that same day, the Court of Common Pleas of Montgomery County entered a default judgment in the amount of $27,715.40 in favor of Beneficial. On May 29, 2003, after receiving the payment, Counsel for Beneficial sent the PHFA a letter stating, in part, that "[a]s long as the monthly payments are made, Beneficial will take no further collection action against Mr. and Mrs. Kondratick."(Beneficial Defs. Mot. Summ. J., Ex. L).

After the payment in April 2003, the Kondraticks became delinquent for a second time in 2004. On July 9, 2004, as a result of the second delinquency, Counsel for Beneficial filed and served a Writ of Execution on the default judgment with the Kondratick's credit union and received a payment of $526.00. The Writ of Attachment was discontinued by Beneficial on August 9, 2004.

Following the execution of the Writ and the garnishment of funds from the Kondraticks' credit union account, Counsel for Beneficial received a letter dated July 21, 2004 from PHFA. In the letter, PHFA argued that the Reinstatement Agreement required Beneficial to vacate the March 17, 2003 default judgment when PHFA made payment to Beneficial on April 8, 2003. PHFA argued that the Reinstatement Agreement "clearly states that upon payment of the arrearages by PHFA to Beneficial *'all pending legal actions arising out of the delinquency of the Borrower will be discontinued.'*" (Pl.'s Resp. Mot. Summ. J., Ex. O) (emphasis in original). PHFA further asserted:

[i]t is our position that once we bought the debt current

Beneficial should have stricken the judgment filed to No. 02-26989. If that had occurred your office would not have been able to execute on the judgment, but would have had to start over with a new action. That is precisely the reason that the provision is in the Reinstatement Agreement.

(*Id.*). In light of the aforementioned, PHFA requested that Beneficial have the judgment stricken.

Counsel for Beneficial disagreed. By letter dated August 2, 2004, counsel for Beneficial responded to PHFA's letter by stating:

because judgment was entered against the Kondraticks prior to the execution of the reinstatement agreement, Beneficial was under no obligation to satisfy or vacate the same. All that was required was to cease any collection activity. By my letter dated May 29, 2003 ..., Beneficial expressed its agreement to not take any further legal action against the Kondraticks provided they maintain regular payments on this account. Beneficial never agreed to vacate or satisfy its judgment.

**\*4** (*Id.,* Ex. P). Counsel for Beneficial went on to state that, after the Kondraticks' second delinquency, "Beneficial decided to have a Writ of Execution issued against them in this matter. Further, because of this delinquency, Beneficial intends to keep its judgment against the Kondraticks and continue its collection actions in this matter."(*Id.*). The Kondraticks filed their Class Action Complaint in this action on October 19, 2004, and filed a First Amended Class Action Complaint on January 14, 2005. This Court ordered discovery on the Kondraticks' individual claims.

At the close of discovery for the Kondraticks' individual claims, Beneficial Defendants and Attorney Defendants filed Motions for Summary Judgment. On September 21, 2005, this Court granted summary judgment in favor of the Beneficial Defendants and the Attorney Defendants on all of the Kondraticks' claims except for those claims that rely on the Reinstatement Agreement. This Court found that the discontinuance provision of the Reinstatement Agreement is ambiguous. *Kondratick v. Beneficial Consumer Discount Company, et al.,* No. Civ. A. 04-4895, 2005 WL 2314042, \*8 (E.D.Pa. Sept.21, 2005). The discontinuance provision states that "[u]pon payment of such sums, all pending legal action arising out of the delinquency of Borrower will be discontinued."*Id.* Issues arising out of whether the default judgment against

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760    Document 64-14    Filed 08/29/2008    Page 5 of 10

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

the Kondraticks was a pending legal action that Beneficial should have discontinued survived summary judgment and will be decided by the finders of fact. Thereafter, on October 5, 2005, this Court ordered that it would reserve its decision on the appropriateness of class discovery until it had an opportunity to review the Kondraticks' Motion for Class Certification.

II. *STANDARD FOR CLASS CERTIFICATION*

Issues of class certification are governed by Federal Rule of Civil Procedure 23. "To obtain class certification, plaintiffs must satisfy all of the requirements of Rule 23(a) and come within one provision of Rule 23(b)."*Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 624 (3d Cir.1996). The burden is on the plaintiffs to show that they represent a class. *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1973); *Harrison v. Simon,* 91 F.R.D. 423, 429 (E.D.Pa.1981)."[P]laintiffs must set forth sufficient factual information to enable the Court to reasonably permit the action to continue as a class action under Rule 23."*Id.,Delgado v. McTighe,* 91 F.R.D. 76, 78 (E.D.Pa.1981).

Under Rule 23(a), plaintiffs may sue as representative parties on behalf of a class only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**\*5** Fed.R.Civ.P. (23)(a). These requirements are more generally known as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition to satisfying the Rule 23(a) prerequisites, the plaintiffs must also satisfy one of the subsections of Rule 23(b). Here, the Kondraticks seek certification pursuant to Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."Fed.R.Civ.P. (23)(b)(2).

III. *DISCUSSION*

The Kondraticks seek class certification of two sub-classes of Pennsylvania residents. These sub-classes are:

| | |
|---|---|
| Sub-Class I: | All persons in Pennsylvania who are or have been borrowers from |
| | Household of loans collateralized with real property situate in |
| | Pennsylvania, evidenced by mortgages, and for whose benefit |
| | Household has entered into Reinstatement Agreements with |
| | Pennsylvania Housing Finance Agency to which Household has |
| | failed to conform and comply.[3] |
| Sub-Class II: | All persons who are members of Sub-Class I for whose benefit |
| | Household has entered into Reinstatement Agreements with |
| | Pennsylvania Housing Finance Agency to which Household has |
| | been or was represented by Attorney Defendants in the legal |
| | actions which were required to have discontinued and whose |

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760   Document 64-14   Filed 08/29/2008   Page 6 of 10

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

> accounts were to have been marked as "current," and were not so
>
> discontinued and/or marked "current."

FN3. All of the Kondraticks' references to Household in the definitions of Sub-Class I and Sub-Class II encompass all of the Beneficial Defendants.

The underlying class claims are that: (1) Beneficial violated the terms of the Reinstatement Agreement, and (2) Beneficial and the Attorney Defendants violated the FDCPA and the UTPCPL. The Kondraticks' claim that these two sub-classes consist of approximately 260 Pennsylvania mortgage customers of Beneficial who were delinquent on their mortgage payments and became third party beneficiaries of Reinstatement Agreements between Beneficial and PHFA.

With respect to the breach of contract claim, the Kondraticks contend that Beneficial violated the Reinstatement Agreements because after PHFA's payment of the Kondraticks' and the proposed class members' delinquencies, Beneficial did not bring their accounts into a current status and it did not discontinue any pending legal actions arising out of their delinquencies. With respect to the FDCPA and UTPCPL claims, the Kondraticks contend that Beneficial's failures, and the Attorney Defendants' participation in the collection efforts of legal judgments against the Kondraticks or the proposed class members, violated FDCPA and UTPCPL. Based on these claims, the Kondraticks seek injunctive relief requiring Beneficial to mark their account and the accounts of the proposed class members "current" and to discontinue any pending legal action against the Kondraticks or against the proposed class members. They also seek restitution of the sums charged, taken, seized, or garnished from the Kondraticks or from proposed class members to pay for legal judgments that should have been discontinued pursuant to the Reinstatement Agreements.

**\*6** The following discussion will explain why the Kondraticks' Motion for Class Certification is denied. First, it will address and refute the Beneficial Defendant's argument that the Kondraticks lack standing to bring this class action. Second, it will address the Kondraticks' UTPCPL claim and why it cannot be certified for class treatment. Lastly, it will show that neither Sub-Class I nor Sub-Class II meet the requirements for class certification.

A. *Standing*

The Beneficial Defendants argue that the Kondraticks lack standing because the Kondraticks' account was properly marked "current" upon the PHFA's payment of their delinquency. "In addition to the requirements expressly enumerated in Rule 23, class actions are also subject to more generally applicable rules such as those governing standing and mootness." *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 135 (3d Cir.2000). For standing, a plaintiff is required to show a personalized, redressable injury. *Id.* If a plaintiff lacks standing to assert claims on his or her own behalf, that plaintiff would also lack standing to assert similar claims on behalf of a class. *Id.*

Here, one of the Kondraticks' purported injuries is that Beneficial violated the Reinstatement Agreement by failing to mark their account "current." The Beneficial Defendants argue, on the other hand, that there was no injury because it did mark the account "current" once the delinquency was paid by PHFA pursuant to the Reinstatement Agreement. To support this argument, Beneficial cites to the deposition testimony of a Beneficial corporate designee who testified that not only was the Kondraticks' account marked "current," but it was company policy to mark the accounts "current" once a delinquency payment was made. (Beneficial Defendant's Mem. of Law, at 16-17 (quoting deposition testimony)). Thus, according to Beneficial, the Kondraticks lack the personalized, redressable injury required for standing.

The Kondraticks, however, have standing because the garnishment of funds from their credit union account constitutes a personalized, redressable injury. Beneficial's standing argument focused solely on the current status issue and completely ignored the garnishment of their funds. The garnishment is an injury that resulted from the Beneficial Defendants' and the Attorney Defendants' interpretation of "pending legal action" in the discontinuance provision of the Reinstatement Agreement. As decided in the previous summary judgment order, issues relating to the Reinstatement Agreement were held to involve genuine issues of material fact that precluded summary judgment. *Kondratick,* 2005 WL 2314042 at \*8. The fact finder's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760    Document 64-14    Filed 08/29/2008    Page 7 of 10

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

Page 6

determination of whether or not the meaning of "pending legal action" encompasses the default judgment against the Kondraticks will determine whether Beneficial should have discontinued the default judgment and thus, whether it should have garnished the funds from the Kondraticks' credit union account to pay for that default judgment. Therefore, the Kondraticks have standing because they have a personalized, redressable injury due to the fact that funds were garnished from their credit union account.

B. *Claims based on UTPCPL*

**\*7** The Kondraticks' unfair trade practices claim under UTPCPL cannot be certified for class treatment because UTPCPL claims require an individualized examination of reliance, causation, and damages. To maintain a private right of action under the UTPCPL, a plaintiff must establish the common law fraud elements of reliance, causation, and damages. *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (Pa.2004); *Weinberg v. Sun Co., Inc.,* 565 Pa. 612, 777 A.2d 442, 446 (Pa.2001); *Toy v. Metropolitan Life Insurance Co.,* 863 A.2d 1, 10-11 (Pa.Super.2005); *Debbs v. Chrysler Corp.,* 810 A.2d 137, 156 (Pa.Super.2002). The underlying foundation of the UTPCPL is fraud prevention and "nothing in [its] legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation."*Id.* (quoting *Weinberg,* 777 A.2d at 446).

Because reliance, causation, and damages need to be proven for each class member, this Court would have to make individualized inquiries into each class members' case. Questions of fact applicable to each individual class member would be numerous and diverse and would overshadow any common issues of fact or law. *Weinberg,* 777 A.2d at 446. UTPCPL claims are not amenable to class treatment because of this need for an individualized inquiry into the proof of reliance, causation, and damages for each class member. *Debbs,* 810 A.2d at 157-58. Thus, the Kondraticks' UTPCPL claim cannot be included in their class action.

C. *Sub-Class I*

Sub-Class I encompasses those people with breach of contract claims against the Beneficial Defendants arising out of the Reinstatement Agreements. Sub-Class I consists of all Pennsylvania residents who obtained a mortgage from Beneficial and after becoming delinquent on that mortgage, Beneficial entered into a Reinstatement Agreement with PHFA to bring those people out of delinquency. Based on an affidavit of Lori S. Toia, a Manager of Loan Processing at PHFA, the Kondraticks allege that Sub-Class I consists of approximately 260 persons, such as themselves, who are third party beneficiaries of these Reinstatement Agreements between Beneficial and PHFA. (Lori S. Toia, Affidavit, at 1).

Prior to analyzing the Rule 23 prerequisites, this Court must determine if a class actually exists. *Sanneman v. Chrysler Corp.,* 191 F.R.D. 441, 445 (E.D.Pa.2000). The plaintiffs must "define the class in a way that enables the court to determine whether a particular individual is a class member."*Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D.Pa.1995). To determine if an individual is a class member, a court must be able to do so by reference to the class definition and without inquiry into any sort of fact-finding on the merits of the case. *See**Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating that court may not conduct preliminary inquiry into merits of case in order to determine whether it may be maintained as class action). If determining class membership requires a mini-hearing on the merits of each class member's case, the proposed class definition and class action are untenable. *Sanneman,* 191 F.R.D. at 446;*Forman,* 164 F.R.D. at 403.

**\*8** For example, in *Forman,* the purported class of "all residents and businesses who have received unsolicited facsimile advertisements" was not certified. *Id.* The central issue of liability in *Forman* was whether the defendants sent unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act. *Id.* at 402.To determine what residents or businesses fell within this class, the court would have had to address the central issue of the case of whether unsolicited facsimile advertisements were sent to them. *Id.* at 403.Because this inquiry to determine class membership would require a mini-hearing on the merits of each proposed class members' case, the class definition was held untenable. *Id.*

Here, determining who falls within Sub-Class I would require a mini-hearing on the merits of each proposed class members' case against Beneficial. The fact that the Kondraticks have evidentiary support that approximately 260 persons benefitted from the Reinstatement Agreements is not enough. They provide no indication that Beneficial had pending legal actions against any of these other people and there is no indication that anyone other than the Kondraticks suffered any harm because of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760    Document 64-14    Filed 08/29/2008    Page 8 of 10

Not Reported in F.Supp.2d                                                                                                Page 7
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

Beneficial's interpretation of the Reinstatement Agreement's discontinuance clause.

Therefore, for each of the approximately 260 proposed class members, a mini-hearing would have to be conducted to determine the factual scenario of each proposed class members' case and to determine if Beneficial "failed to conform and comply" with the Reinstatement Agreement with respect to each of their own specific situations. This mini-hearing on whether Beneficial "failed to conform and comply" with the Reinstatement Agreement would be addressing the very core issue of the claim against Beneficial: whether they breached the Reinstatement Agreement. Therefore, this class definition is unworkable because class membership cannot be determined without the court conducting a mini-hearing on the merits.

Moreover, Sub-Class I does not meet the requirements of Rule 23(a) either. With respect to the numerosity prerequisite, the Kondraticks must show that the purported class is so numerous that joinder is impractical. Fed.R.Civ.P. (23)(a)(1). Mere speculation as to the number of parties that might be in the class is insufficient. Harrison, 91 F.R.D. at 431;C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1762 (3d.2005). Speculation, however, is all that is available to this Court to determine if these 260 people belong in Sub-Class I. As stated above, the Kondraticks neither provide any evidence nor allege that any of these 260 people experienced a similar set of circumstances that give rise to a cause of action against Beneficial. All that they can show is that these people are other beneficiaries of Reinstatement Agreements. Thus, the Kondraticks failed to set forth the sufficient factual information required to meet their burden of showing numerosity. *See*Harrison, 91 F.R.D. at 429 (stating that while plaintiffs do not have to establish case on merits for class certification, they have to set forth sufficient factual information for court to make determination). It is important to note that the only way to determine if any of these approximately 260 persons are truly in Sub-Class I would be to analyze the merits of each class member's case, which, as stated above, is inappropriate.

**\*9** With respect to the commonality prerequisite, the Kondraticks must show that there are common questions of law or fact amongst the class members. Fed.R.Civ.P. (23)(a)(2). If they show that there is a common nucleus of operative facts, they have met their burden for proving commonality. Thomas v. SmithKline, 201 F.R.D. 386, 392 (E.D.Pa.2001); Forman, 164 F.R.D. at 403. However, because the resolution of common issues about the Reinstatement Agreement depend on individualized factual determinations that could be different for each proposed class member, this Court cannot find commonality. *Seeid.*("[C]ourts have been unwilling to find commonality where the resolution of common issues depends on factual determinations that will be different for each class plaintiff.").

With respect to the typicality and adequacy of representation prerequisites, it is impossible to say that the Kondraticks' claims are typical of the class or that they can fairly and adequately represent the class' interests. The Kondraticks' claims are not typical because they are unique and different from those of the proposed class. They involve more than a simple alleged failure to mark an account "current" and to discontinue pending legal action. Rather, they involve the garnishment of the Kondraticks' funds by Beneficial after they defaulted a second time. As stated above, the Kondraticks do not show or allege anywhere that Beneficial pursued and obtained legal judgments and/or garnished bank account funds from any of the approximately 260 other people who are beneficiaries of Reinstatement Agreements. The Kondraticks seem to be the only people with such a claim. This makes their claims unique and not typical of the class. Moreover, because their claims are unique from that of the class, their interests in the litigation are different than those of the class. Thus, they cannot fairly and adequately represent the proposed class.

Because the prerequisites of Rule 23(a) have not been satisfied, there is no need to address whether Sub-Class I comes within any of the Rule 23(b) subsections. *See*Holmes v. Pension Plan of Bethlehem Steel Corp., No. Civ. A. 98-CV-1241, 1999 WL 554591 (E.D.Pa. June 30, 1999)(stating that because Rule 23(a) requirements are not met, court does not need to consider Rule 23(b)). Therefore, in conclusion, Sub-Class I cannot be certified for class treatment.

D. *Sub-Class II*

The Kondraticks defined Sub-Class II to address the UTPCPL and FDCPA claims arising out of the collection efforts of the Attorney Defendants on behalf of the Beneficial Defendants. They argue that "[t]he Attorney Defendants, who have participated as counsel in collection efforts and legal actions against borrowers on behalf of [the Beneficial Defendants], facilitate[d]

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760    Document 64-14    Filed 08/29/2008    Page 9 of 10

Not Reported in F.Supp.2d                                                                                                                  Page 8
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

[Beneficial's] wrongful behavior by not acting to discontinue the pending legal actions after [Beneficial] has been paid to bring the accounts to a current status."(Kondraticks' Mem. of Law, at 4.)

**\*10** Sub-Class II cannot be certified for the same reason as Sub-Class I: a mini-hearing on the merits of each proposed class members' case would have to be held to determine Sub-Class II membership. The Kondraticks only state that there are approximately 260 people who benefitted from Reinstatement Agreements. This information alone is not enough to assume that any or all of these 260 people belong in Sub-Class II with the Kondraticks. Thus, this Court would have to determine who else had a legal action brought against them by Beneficial and who else had their funds garnished by the Attorney Defendants for collection of a legal judgment against them even after the PHFA's payment pursuant to the Reinstatement Agreement. By analyzing whether the other proposed class members experienced collection efforts due to the Beneficial Defendants' and the Attorney Defendants' interpretation of the discontinuance clause, this Court would be addressing the central issues of their FDCPA claims. Thus, because mini-hearings on the merits are required here to determine class membership, this class definition is untenable and cannot be certified. See Sanneman, 191 F.R.D. at 446; Forman, 164 F.R.D. at 403.

Furthermore, the need for mini-hearings prevents the Kondraticks from establishing the Rule 23(a) prerequisites. Because mini-hearings are the only way to determine class membership, they would also be the only way to determine numerosity. Commonality cannot be shown because the resolution of common issues about the collection efforts depend on individualized factual determinations that could be different for each proposed class member. See Forman, 164 F.R.D. at 403. Lastly, mini-hearings on the merits would be the only way to determine if the Kondraticks' claims are typical and whether they can adequately represent the class' interests because the mini-hearings would be the only way to determine if the proposed class members had experienced a similar set of circumstances as the Kondraticks. Therefore, Sub-Class II fails to satisfy the prerequisites of Rule 23(a) and no further analysis is needed to deem that this class cannot be certified.<sup>FN4</sup>

> FN4. The Attorney Defendants also allege that the Kondraticks brought their Motion for Class Certification in bad faith. Therefore, pursuant to 15 U.S.C. § 1692k(a)(3), they requested that they be awarded reasonable attorney's fees and costs incurred in responding to this motion. 15 U.S.C. § 1692k(a)(3) states that:
>
> [o]n a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.
>
> This provision should be construed narrowly so as not to discourage private litigation under the FDCPA. Ayres v. Nat'l Credit Mgt. Corp., Civ. A. No. 90-5535, 1991 WL 274695 (E.D.Pa. Dec.17, 1991)."The limited purpose of this provision is to discourage malicious and harassing lawsuits by consumers." Id.
>
> Here, there is also no indication that the Kondraticks maliciously brought this motion for the purpose of harassing the Attorney Defendants. The Kondraticks have an individual action against the Attorney Defendants that survived summary judgment and they believed that there are approximately 260 other persons who could have possibly been affected similarly to them by Attorney Defendants' actions as counsel for Beneficial. While this evidence is insufficient to establish class certification, it does not follow that this motion was brought in bad faith.

IV. *CONCLUSION*

Because class membership of Sub-Class I and Sub-Class II cannot be determined without conducting a mini-hearing on the merits of each proposed class members' case, Sub-Class I and Sub-Class II cannot be certified for class treatment. Thus, the Kondraticks' have failed to establish that Sub-Class I and Sub-Class II meet the prerequisites of Rule 23 and their Motion for Class Certification is denied.

An appropriate Order follows.

*ORDER*

AND NOW, this 8th day of February, 2006, upon

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-00760   Document 64-14   Filed 08/29/2008   Page 10 of 10

Not Reported in F.Supp.2d                                                                                              Page 9
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

consideration of the Motion for Class Certification by Plaintiffs Andrew S. Kondratick, Sr. and Melissa A. Kondratick ("Kondraticks"), individually and on behalf of others similarly situated, and the Responses and Replies thereto, it is hereby ORDERED that the Motion for Class Certification by the Kondraticks (Doc. No. 54) is DENIED.

E.D.Pa.,2006.
Kondratick v. Beneficial Consumer Discount Co.
Not Reported in F.Supp.2d, 2006 WL 305399 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.