**FILED**

**AUGUST 29, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE HERKERT and WINONA JACKSON, on behalf of plaintiffs and a class, | ) ) ) | |
| Plaintiffs, | ) ) | No. 08 C 760 |
| v. | ) ) | Judge Ruben Castillo |
| MRC RECEIVABLES CORPORATION, MIDLAND FUNDING NCC-2 CORP., MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC., | ) ) ) ) ) | Magistrate Judge Schenkier |
| Defendants. | ) | |

**DEFENDANTS' [UNREDACTED] OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Richard E. Gottlieb
James W. McConkey
Theodore W. Seitz
Renee L. Zipprich
**Dykema Gossett PLLC**
10 South Wacker Drive, Suite 2300
Chicago, IL 60606-7509
Telephone: (312) 876-1700

Attorneys for Defendants

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

RELEVANT FACTS .................................................................................................................. 2

STANDARD ................................................................................................................................ 4

ARGUMENT ............................................................................................................................... 5

I.      NONE OF THE THREE CLASSES ARE CERTIFIABLE BECAUSE NONE
        OF THE THREE CLASSES ARE ASCERTAINABLE. ......................................... 6

II.     CLASS C CANNOT BE CERTIFIED BECAUSE NEITHER PLAINTIFF IS A
        MEMBER OF CLASS C. ................................................................................................ 11

III.    PLAINTIFFS CANNOT SATISFY RULE 23'S REQUIREMENTS. ................... 12

        A.      Plaintiffs Have Failed to Establish Numerosity. ................................... 12

        B.      Plaintiffs Fail to Satisfy Fed. R. Civ. P. 23(a)(3) or (4). ...................... 13

                1.      Plaintiffs' claims are subject to unique defenses. ..................... 14

                2.      Plaintiffs' admissions in their depositions show that they are not
                        adequate class representatives. ................................................... 15

                3.      Plaintiffs' suit is driven by their lawyers. ................................ 16

        C.      Individual Issues of Fact and Law Preclude Certification under Rule
                23(b)(3). .......................................................................................................... 18

                1.      Individual questions predominate as to whether individuals are
                        members of the class and can recover under the FDCPA. ....... 19

                2.      Plaintiffs cannot satisfy predominance because they have not
                        challenged an undisputed, standardized policy. ...................... 22

                3.      Because actual damages, statutory damages, and attorneys' fees
                        are awarded to successful FDCPA litigants, there is no financial
                        bar to individual actions and a class action is not the superior
                        method of adjudication. ............................................................... 24

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
　　521 U.S. 591 (1997) ................................................................................................................... 18

*Boatmen's Bank of Mt. Vernon v. Dowell,*
　　208 Ill. App. 3d 994, 567 N.E.2d 739 (5th Dist. 1991) ............................................................ 20

*Cedeno v. Fieldstone Mortg. Co.,*
　　No. No. 01 C 5110, 2002 WL 1592759 (N.D. Ill. July 19, 2002) ...................................... 4, 18

*Chambers v. Am. Trans Air, Inc.,*
　　17 F.3d 998 (7th Cir. 1994) ................................................................................................ 5, 12

*Chatham v. Sears, Roebuck & Co.,*
　　No. MDL-1703, 2007 U.S. Dist. LEXIS 89349 (N.D. Ill. Dec. 4, 2007) ................................ 18

*Cobb v. Monarch Fin. Corp.,*
　　913 F. Supp. 1164 (N.D. Ill. 1995) ......................................................................................... 14

*Davis v. World Credit Fund I, LLC,*
　　543 F. Supp. 2d 953 (N.D. Ill. 2008) ...................................................................................... 20

*Foreman v. PRA III, LLC,*
　　No. 05 C 3372, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. Mar. 5, 2007) ......................... 13, 18

*Forman v. Data Transfer, Inc.,*
　　164 F.R.D. 400 (E.D. Pa. 1995) ............................................................................................. 24

*Garber v. Harris Trust & Sav. Bank,*
　　104 Ill. App. 3d 675, 432 N.E.2d 1309 (1st Dist. 1982) .................................................... 15, 21

*Gray-Mapp v. Sherman,*
　　100 F. Supp. 2d 810 (N.D. Ill. 1999) ...................................................................................... 13

*Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri,*
　　No. 00 C 4511, 2001 U.S. Dist. LEXIS 20012 (N.D. Ill. Nov. 30, 2001) ................................ 21

*Helfand v. Cenco,*
　　80 F.R.D. 1 (N.D. Ill. 1977) .................................................................................................... 14

*Hyderi v. Wash. Mut. Bank, FA,*
　　235 F.R.D. 390 (N.D. Ill. 2006) ................................................................................... 19, 22, 25

*Illinois ex rel. Bowman v. Home Fed. Sav. & Loan Ass'n,*
　　521 F.2d 704 (7th Cir. 1975) ............................................................................................... 5, 12

*In re CBC Cos., Inc. Collection Letter Litig.*,
   181 F.R.D. 380 (N.D. Ill. 1998) ...................................................................................... 14

*In re Gen. Motors Corp. Engine Interchange Litig.*,
   594 F.2d 1106 (7th Cir. 1979) ...................................................................................... 14

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
   No. C 06-2069 SBA, 2008 WL 413749 (N.D. Cal. Feb. 13, 2008) ..............................4, 7, 9

*Iosello v. Lawrence*,
   No. 03 C 987, 2005 WL 2007147 (N.D. Ill, Aug. 18, 2005) ..........................................13

*J.H. Cohn & Co. v. Am. Appraisal Assocs.*,
   628 F.2d 994 (7th Cir. 1980) ...................................................................................... 14

*Jenkins v. Mercantile Mortg. Co.*,
   231 F. Supp. 2d 737 (N.D. Ill. 2002) ............................................................................13

*Jones v. CBE Group, Inc.*,
   215 F.R.D. 558 (D. Minn. 2003) ...............................................................................15, 16

*Kondratick v. Beneficial Consumer Disc. Co.*,
   No. Civ.A. 04-4895, 2006 WL 305399 (E.D. Pa. Feb. 8, 2006) ................................13, 24

*Lee v. Javitch, Block & Rathbone, LLP*,
   522 F. Supp. 2d 945 (S.D. Ohio 2007) ..........................................................................23

*Marcial v. Coronet Ins. Co.*,
   880 F.2d 954 (7th Cir. 1989) ...................................................................................... 12

*Oshana v. Coca-Cola Co.*,
   225 F.R.D. 575 (N.D. Ill. 2005), *aff'd* 472 F.3d 506 (7th Cir. 2006) ..........................4, 5, 12

*Parkis v. Arrow Fin. Servs.*,
   No. 07 C 410, 2008 U.S. Dist. LEXIS 1212, 2008 WL 94798 (N.D. Ill. Jan. 8, 2008) ................9, 10

*Pastor v. State Farm Mut. Ins. Co.*,
   No. 05 C 1459, 2005 WL 2453900 (N.D. Ill. Sept. 30, 2005) ......................................... 4

*Ramirez v. Palisades Collection, LLC*,
   No. 07 C 3840, 2007 WL 4335293 (N.D. Ill. Dec. 5, 2007) ........................................10, 11

*Ramirez v. Palisades Collection, LLC*, No. 07 C 3840, 2007 WL 4335293, (N.D. Ill. Dec. 5, 2007) ....................................................................................................................10

*Ramirez v. Palisades Collection, LLC*, No. 07 C 3840, 2008 WL 2512679, (N.D. Ill. June 23, 2008) ....................................................................................................................11

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ........................................................................................ 4

*Richburg v. Palisades Collection LLC,*
    247 F.R.D. 457 (E.D. Pa. 2008)..................................................................................................20, 21

*Sanders v. Jackson,*
    209 F.3d 998 (7th Cir. 2000)....................................................................................................... 18

*St. Francis Med. Ctr. v. Vernon,*
    217 Ill. App. 3d 287 (5th Dist. 1991)...........................................................................................9, 20

*Thompson v. Spinelli,*
    No. 04-8224, 2005 WL 2483376 (N.D. Ill. Oct. 5, 2005)......................................................24

*Wahl v. Midland Credit Mgmt.,*
    243 F.R.D. 291 (N.D. Ill. 2007) ..................................................................................... 14, 22, 23

*Williams v. Balcor Pension Investors,*
    150 F.R.D. 109 (N.D. Ill. 1993) ................................................................................................14

*Wilson v. Transworld Sys.,*
    No. 5:00-cv-135-Oc-10GRJ, 2002 U.S. Dist. LEXIS 10891 (M.D. Fla. Mar. 29, 2002)..................25


**TREATISES**

5 Moore's Federal Practice § 23.46[3][a] at 23-27 .....................................................................................25


**RULES**

Fed. R. Civ. P. 23(a)(3)..............................................................................................................13, 14

Fed. R. Civ. P. 23...........................................................................................................4, 5, 8, 12, 13, 18

Fed. R. Civ. P. 23(a)..................................................................................................................... 4

Fed. R. Civ. P. 23(a)(1).......................................................................................................... 4, 12, 13

Fed. R. Civ. P. 23(a)(4)................................................................................................................ 14

Fed. R. Civ. P. 23(b)(3)...............................................................................................................4, 18


**STATUTES**

735 ILCS 5/13-205.......................................................................................................................6

735 ILCS 5/13-206.......................................................................................................................6

15 U.S.C. § 1692k(a)(2)(A)..........................................................................................................18

15 U.S.C. § 1692k(a)(2)(B)(ii)..................................................................................................18

15 U.S.C. § 1692k(a)(3) ...........................................................................................................25

15 U.S.C. §§ 1692 *et seq.* .......................................................................................................... 1

225 ILCS 425/1 *et seq*) ...........................................................................................1, 2, 3, 11, 16, 22

## INTRODUCTION

This case is merely another iteration of a previous case pursued unsuccessfully by Plaintiffs' counsel against three of the same defendants. In that case, *Sadler v. Midland Credit Mgmt.*, the plaintiff also claimed that Midland Credit Management, Inc. ("MCM"), MRC Receivables Corp. ("MRC"), and Encore Capital Group, Inc. ("Encore") violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), by attempting to collect on an allegedly time-barred debt. After several rounds of briefing and elaborate class discovery, Judge Pallmeyer ultimately found that the class was simply unascertainable without an exhaustive inquiry into the individual circumstances of each putative class member, and denied certification. No. 06 C 5045, 2008 U.S. Dist. LEXIS 51198, at *3 (N.D. Ill. July 3, 2008) (Ex. 1).

Like *Sadler*, Plaintiffs Nicole Herkert ("Herkert") and Winona Jackson ("Jackson") (collectively, "Plaintiffs"), allege that (1) MCM, MRC, Midland Funding NCC-2 Corp. ("Midland Funding"), and Encore (collectively, "Defendants") violated the FDCPA by bringing suit in Illinois to collect on an allegedly time-barred debt. Plaintiffs also allege that MCM violated the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.* ("ICAA") by filing time-barred suit. *See* First Amended Consolidated Complaint ("FAC") ¶¶ 82-99. No class may be certified in this case for the following reasons:

*First*, this Court should deny certification of all three classes because, like in *Sadler*, the classes here are unascertainable. *Second*, neither Plaintiff can represent Class C (against MCM) because neither Plaintiff has been sued by MCM. *Third*, with regard to all three putative classes, Plaintiffs cannot satisfy the numerosity, typicality, adequacy of representation, or predominance and superiority prerequisites for class certification.[1]

---

[1] Throughout this Opposition, Plaintiffs' Motion for Class Certification [DE 32] will be referred to as "Motion," and Plaintiffs' Memorandum in Support of their Motion will be referred to as "Memorandum."

## RELEVANT FACTS

**A.     Defendants.** Defendant MCM is an affiliate of Encore. Declaration of Brian Frary ¶ 2 ("Frary Decl.") (Ex. 16). Encore is a publicly-traded company that trades on the NASDAQ National Market System. *Id.* Encore is a Delaware corporation with its principal offices in San Diego, California. *Id.* MCM is a Kansas corporation. *Id.* ¶ 3. MCM's principal business activity, undertaken from California, Arizona, and Minnesota, involves the collection of debts that are held by indirect subsidiaries of Encore, such as Midland Funding and MRC. *Id.* The sole business function of Midland Funding and MRC is to hold the portfolios that each entity purchases. *Id.* Neither Midland Funding nor MRC have any employees, and the information regarding the accounts held by both entities is in the possession of MCM. *Id.* ¶ 4. In May 2005, Midland Funding purchased plaintiff Herkert's debt from Associates National Bank ("Associates"), and in November 2004, MRC purchased plaintiff Jackson's debt from Associates.  Declaration of Virginia Arteaga ¶¶ 2-3 ("Arteaga Decl.") (Ex. 2)

**B.     Plaintiff Herkert.** On November 28, 2007, Midland Funding filed suit against Herkert in the Circuit Court of Cook County, Illinois, seeking to collect a credit card debt attributed to Herkert incurred on an Associates credit card. First Amended Complaint ("FAC") ¶ 44; Ex. B to FAC. Attached to Midland Funding's state court complaint was Herkert's cardmember agreement with Associates, which, among other things, stated that the agreement was governed by Delaware law. *Id.* ¶¶ 48-50; Ex. B to FAC. On January 17, 2008, Midland Funding dismissed its suit against Herkert. *Id.* ¶ 55. Plaintiff admits that she incurred the charges on her Associates credit card and that she never paid any portion of her debt to Associates. Deposition of Nicole Herkert at at 34:2-35:17, 51:5-8 ("Herkert Dep.") (Ex. 3).

**C.     Plaintiff Jackson.** On November 28, 2007, MRC filed suit against Jackson in the Circuit Court of Cook County, Illinois, seeking to collect a credit card debt attributed to Jackson incurred on an Associates credit card. FAC ¶ 32; Ex. A to FAC. Attached to MRC's state court complaint was Jackson's cardmember agreement with Associates, which, among other things, stated

that the agreement was governed by Delaware law. *Id.* ¶¶ 36-38; Ex. A to FAC. After being served with the state court complaint, Jackson contacted MRC's attorneys and submitted a fraud affidavit asserting that she had not incurred the debt to Associates because the charges were incurred when her Associates credit card had been stolen. Ex. 3 & 9 to Deposition of Winona Jackson ("Jackson Dep.") (Ex. 4). The day after MRC's attorneys received Jackson's fraud affidavit, on January 17, 2008, MRC dismissed its suit against Jackson. Ex. 4 to Jackson Dep.

**D.     Plaintiffs' Claims and Putative Class Definitions.** Plaintiffs bring three claims in their FAC. Count I is brought by Herkert against Midland Funding seeking relief under the FDCPA as a result of Midland Funding's filing of a suit that was allegedly barred by the statute of limitations. FAC ¶¶ 82-87. Count II is nearly identical to Count I, except that it is brought by Jackson against MRC. *Id.* ¶¶ 88-93. Count III is brought by both Plaintiffs against MCM, seeking relief under the ICAA for allegedly filing suit or threatening to file suit against Plaintiffs. *Id.* ¶¶ 94-99.

Plaintiffs' Motion seeks to certify three classes:

**Class A, which pertains only to Count I, consists of** (a) all natural persons (b) sued in the name of [Midland Funding] (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**Class B, which pertains only to Count II, consists of** (a) all natural persons (b) sued in the name of MRC (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

**Class C, which pertains only to Count III,** consists of (a) all natural persons (b) sued in the name of MCM (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

3

Plaintiffs' Motion at 1-2.

## STANDARD

Class certification requires a plaintiff to meet each prerequisite under Rule 23 of the Federal Rules of Civil Procedure. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Rule 23(a) provides that a class may be certified "only if":

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Because Plaintiffs seek class certification under Rule 23(b)(3), certification requires that common questions of law or fact predominate over any individual questions, and that a class action be the superior method of adjudicating these claims. Fed. R. Civ. P. 23(b)(3). Where plaintiffs are unable to demonstrate that claims of the purported class can be proven with generalized, class-wide proof, but rather require examination of each class member's individual, fact-intensive transaction, then the predominance requirement is not satisfied. *See Cedeno v. Fieldstone Mortg. Co.*, No. No. 01 C 5110, 2002 WL 1592759, at *6 (N.D. Ill. July 19, 2002) (Ex. 5).

"Courts have implied two prerequisites to class certification that must be satisfied prior to addressing the requirements of Rule 23(a): (1) the class must be sufficiently defined so that the class is definable; and (2) the named representative must fall within the proposed class." *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005), *aff'd* 472 F.3d 506, 513-19 (7th Cir. 2006). *See also In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749, at *5 (N.D. Cal. Feb. 13, 2008) ("*Wal-Mart*") ("An elementary prerequisite to certification is that the class sought to be represented must be adequately defined and clearly ascertainable.") (citation and quotation marks omitted) (Ex. 6). If a court must conduct individualized inquiries to determine whether the class members actually belong in the class, the proposed class must not be certified. *Pastor v. State Farm Mut. Ins. Co.*, No. 05 C 1459, 2005 WL 2453900, at *2 (N.D. Ill. Sept. 30, 2005) (Ex. 7), *aff'd* 487

F.3d 1042; 7 Wright and Miller, Federal Practice and Procedure, § 1760 at 582 ("[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."); *Oshana*, 225 F.R.D. at 580.

Furthermore, it is axiomatic that "[a]n individual bringing an action on behalf of a class must be a member of the class . . . ." *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994). *See also Illinois ex rel. Bowman v. Home Fed. Sav. & Loan Ass'n*, 521 F.2d 704, 707 (7th Cir. 1975) ("It is, thus, fundamental that, under Rule 23, in order to sue on behalf of a class, the plaintiff-representative must be a member of the class. They cannot represent a class of whom they are not a part.") (citations and quotation marks omitted); *Oshana*, 225 F.R.D. at 580.

> When evaluating Plaintiff's proposed class, the court does not presume that the allegations of Plaintiff's complaint are true but, rather, makes the factual and legal inquiries required by Rule 23. Otherwise, there would be no opportunity to test the factual premises of the Plaintiff's complaint and the court's decision regarding class certification. These inquiries may require the court to look outside the corners of Plaintiff's complaint.

*Sadler*, 2008 U.S. Dist. LEXIS 51198, at *3 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 835 (N.D. Ill. 2008)).

## ARGUMENT

Plaintiffs have not, and, as shown below, *cannot* meet their burden under Rule 23. As in *Sadler*, all three classes are unascertainable without an exhaustive individual inquiry into the facts of *each* potential class member's account. Moreover, neither Plaintiff may represent Class C because neither person is even a *member* of Class C; *i.e.*, neither Plaintiff has been sued by MCM. Finally, Plaintiffs fail to satisfy the numerosity, typicality, adequacy of representation, or predominance and superiority class certification requirements with respect to all three classes.

**I.    NONE OF THE THREE CLASSES ARE CERTIFIABLE BECAUSE NONE OF THE THREE CLASSES ARE ASCERTAINABLE.**

This Court should deny certification with respect to all three classes because an exhaustive individual inquiry would be necessary in order to ascertain whether someone is a member of the class. This suit is nothing more than a veiled rehashing of the *Sadler* case, and the putative classes must fail for the same reasons that the class in *Sadler* failed.

Another judge in this District, Judge Pallmeyer has already denied certification when facing a similar situation involving MCM in *Sadler*.[2]   There, the plaintiff brought a putative class action under the FDCPA alleging that MCM violated the FDCPA by threatening legal action against him and the putative class. The crux of the plaintiff's claim was that, because there was no written contract with regard to his debt, the debt was no longer enforceable under Illinois law because he believed that the five-year statute of limitations for oral contracts applied, *see* 735 ILCS 5/13-205, rather than the ten-year statute of limitations for written contracts. *See* 735 ILCS 5/13-206.

MCM was ordered to produce a sampling of account files in *Sadler* in order to determine whether a class was ascertainable. In order to produce a sample of account files, MCM developed a query to extract the relevant account files by utilizing the only search filters MCM's system is capable of applying. The query was described in detail in the court's decision denying certification. *Sadler*, 2008 U.S. Dist. LEXIS 51198, at *11-12 (citations and footnote omitted).

The individualized evaluation of the fifty accounts revealed that many of the accounts did not fit within the class definition, suggesting that any class definition would be rife with "false positives," requiring an individual inquiry into each putative class member in order to determine whether he or she would be a member of the class. *Id.* at *13-14. The court held that "[t]his raises significant questions about the propriety of a class action lawsuit." *Id.* at *14 (citing *Parkis v. Arrow Fin. Servs.*, No. 07 C 410, 2008 U.S. Dist. LEXIS 1212, 2008 WL 94798, at *4 (N.D. Ill. Jan. 8, 2008) (Ex. 8) (denying

---

[2] Plaintiff in *Sadler* subsequently moved to amend the complaint and file a new class certification motion with a much more narrowly defined class. This motion remains pending before Judge Pallmeyer.

certification due to lack of commonality in FDCPA action involving allegations of collection on time-barred debts: "this court would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. Because the payment timing and history will be different for each putative class member, [t]his would involve an individualized inquiry for each potential member.")).

The court further noted that "certain information necessary to determine whether an individual is part of the class is not in MCM's files at all. For some accounts . . . account statements and applications are available only upon request to the original creditor. Apparently, then, MCM might obtain a written contract related to an individual account at issue, were it to contact the original creditor to request the documentation." *Id.* at \*15-16 (citations omitted). As a result, the putative class was unascertainable:

> [R]equiring Defendants to produce these contracts is a substantial burden: where a proposed class definition requires an exhaustive, individualized inquiry into whether [a debt collector] can presently find, in its own files or those of another entity, a written contract to exclude a debtor from the class, the class definition is inadequate. . . . [T]his would demand that the debt collector undertake more than a purely ministerial investigation. For example, original creditors-not parties to the lawsuit-would be required to participate in that investigation.

*Id.* at \*16-17 (citations and quotation marks omitted) (second alteration in original). The court, at \*18-19, then analogized the *Sadler* case to *Wal-Mart*, finding that case to be "instructive":

> That court held that where nothing in the company's databases "shows or could show" whether individuals should be included in the proposed class, the class definition fails. [*Wal-Mart*, 2008 WL 413749, at \*8]. In *Wal-Mart*, the relevant proposed subclass was of former Wal-Mart employees, who were ultimately paid all wages they earned but, upon either being discharged or quitting, received their final pay late, in violation of California law. [*Id.* at \*1-2.] To trigger the relevant state law, however, an employee who quit his or her job must provide notification of termination and either come to the store to receive final pay or give his or her former employer specific mailing instructions. [*Id.* at \*8.] Unless the employee did so, there could be no violation of state law. *Id.* For employees who quit their jobs, Wal-Mart's databases did not provide records of either termination dates or the dates employees made themselves available for final pay. [*Id.* at \*9.] Wal-Mart was not statutorily obligated to keep electronic databases containing this information. *Id.* Because Wal-Mart did not do so, the proposed subclass was not ascertainable and the court refused to certify it. *Id.* Similarly, here, there is no way for Defendants to discern from their databases whether the fifth

criterion of Plaintiff's proposed class definition is met: whether a written contract exists for the account in question. And there is no obligation for Defendants to keep this information in its electronic databases. Consequently, the class is not "identifiable."

Because MCM would be forced to evaluate the individual facts of each account in order to determine whether someone fell within the class, Judge Pallmeyer held that "the difficulty of determining whether any account falls into the proposed class renders class treatment of this case unmanageable," and denied certification without analyzing any of the Rule 23 requirements. *Id.* at *20.

The putative classes in this case suffer from the same fatal problems as the putative class in *Sadler*. In order to determine whether a party sued by Midland Funding, MRC, or MCM was subject to the five- or ten-year statute of limitations (and, therefore, whether the party fits within one of the putative classes), an individual inquiry into the facts of each putative class member would be required.

MCM holds the computer records and account information for Midland Funding, MRC, and MCM's accounts. Declaration of David Little ¶ 2 ("Little Decl.") (Ex. 9). MCM's computer systems cannot successfully locate members of the three classes. *Id.* ¶¶ 3-5. In order to obtain the complete history and supporting documentation for each of the potential class members, each individual account number would have to be typed in to two *separate*, non inter-facing databases. *Id.* ¶ 6.

Some information is not available on the MCM account database for certain accounts, but remains available at this time upon request to the original creditor. Arteaga Decl. ¶ 4. MCM could and often does obtain underlying account information prior to filing suit to collect on the debt, but that information is not searchable. *Id.*; Little Decl. ¶ 5. Some account files may indicate that the debtor had moved from the State of Illinois subsequent to the charge-off date. Arteaga Decl. ¶ 5. There would be no way to determine whether those individuals incurred their debt in Illinois or other states. Little Decl. ¶ 5. MCM's system does not track whether suit was filed against a consumer, and whether that suit was filed within five years of the debt being charged off. *Id.* ¶¶ 3-5.

As in *Sadler*, the *Wal-Mart* court's analysis of this issue is directly on point. Like the defendant in *Wal-Mart*, Defendants here have no statutory obligation to keep electronic information regarding

when the debt was charged off, whether a suit was filed against a consumer, or whether the suit was filed within five years of the debt being charged off in a format that is searchable on a systems-wide basis. And, as the evidence demonstrates, MCM's systems in fact do not keep this type of electronic information in a systems-wide searchable format. Accordingly, *each and every account* (which would be tens of thousands of accounts if Plaintiffs' estimates are to be believed, *see* Motion ¶ 12) would have to be reviewed in order to accurately ascertain the class here.

Based on MCM's inability to conduct a systems-wide computer search, Judge Coar's decision in *Parkis* is fatal to Plaintiffs' motion for class certification here. In *Parkis*, the plaintiff's counsel sought class certification under two class definitions, both of which focused on whether the defendants' credit card account records "truthfully" showed that "payment was made within 5 years prior to the filing of the action." 2008 U.S. Dist. LEXIS 1212, at *7. *Parkis* dealt with a similar argument concerning the application of the 5 and 10 year statute of limitations to the collection of credit card debt. *Id.* at *15-31. In denying plaintiff's class certification motion, the court held as follows:

> In order to resolve [whether debtor's underlying credit card debt was beyond the relevant statute of limitations], this court would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. *Because the payment timing and history will be different for each putative class member, his [sic] would involve an individualized inquiry for each potential member. Thus, the commonality requirement is not met, and class certification is denied.*

*Id.* at *14 (emphasis added).[3]

In this case, like *Parkis*, Plaintiffs' claims center, in part, around the "payment timing and history" for each putative class member (*i.e.*, "the date of delinquency or last payment"). This is an individualized inquiry necessary to determine the applicable statute of limitations period. *See, e.g., St. Francis Med. Ctr. v. Vernon,* 217 Ill. App. 3d 287, 289 (5th Dist. 1991) ("It is clear that part payment of a debt tolls the statute of limitations such that it commences to run from the date of last payment.").

---

[3] The court in *Parkis* also granted the plaintiff's motion for summary judgment as to the "five year statute of limitations [but] denied [summary judgment] as to the FDCPA violation" at issue. *Id.* at *15-31.

As demonstrated, MCM cannot produce this information on a class-wide basis. Rather, an individualized inquiry is necessary to determine the applicable statute of limitations period and other factors for each account. Thus, like in *Parkis*, not only is the class unascertainable, but the commonality requirement cannot be met.

Plaintiffs may try to analogize this case to *Ramirez v. Palisades Collection, LLC*, 250 F.R.D. (N.D. Ill. 2008) ("*Ramirez II*"). This Court should reject any notion that *Ramirez II* and this case are similar. There, Judge Conlon originally denied certification without prejudice because the plaintiff's class definition was inadequate. *Ramirez v. Palisades Collection, LLC*, No. 07 C 3840, 2007 WL 4335293, at *2-3 (N.D. Ill. Dec. 5, 2007) ("*Ramirez I*") (Ex. 10). The original class definition was

(a) all individuals with Illinois addresses, (b) against whom [Palisades] filed suit on a credit card debt originated by Household Bank (c) where both the date of charge-off and the date of last payment, as shown by [Palisades'] records, were more than five years prior to the date of filing, (d) where the lawsuit was filed or served on or after a date 12 months prior to the filing of this action and prior to a date 20 days after filing of this action, and (e) [where Palisades] cannot produce [the] written contract [it sued upon] signed by both the original creditor and the putative debtor.

*Id.* at *1 (alterations in original). The court held that an individual inquiry would be required to determine whether the defendant could find a written contract in its files. *Id.* at *3. The court also held that "[d]etermination of the charge-off and last-payment dates for each plaintiff should, in contrast, be relatively simple because Palisades' computer files list these data for its debtors." *Id.*

The plaintiff then amended subpart (e) of her class definition to read "[where Palisades] did not attach to the complaint a written contract signed by both the original creditor and the putative debtor." *Ramirez II*, 250 F.R.D. at 368 (alteration in original). The court certified the amended class, holding that only a "ministerial review" of the defendant's records would be necessary to determine membership in the class. *Id.* at 370.

Unlike the facts in *Ramirez I*, MCM cannot determine from its records whether someone fits within any of the three classes. Moreover, the determination of the charge-off and last-payment dates is not "relatively simple" because MCM's computer systems are not amenable to systems-wide searches

for those items of data. Little Decl. ¶¶ 3-6. Also, unlike in *Ramirez II*, Plaintiffs' three class definitions

rely explicitly on Defendants' records. Significant portions of Plaintiffs' class definitions, such as the

date of delinquency, last-payment date, or whether someone was sued in Illinois are simply

unascertainable without an exhaustive individual inquiry (if at all). Therefore, *Ramirez II* offers

Plaintiffs no support.[4]

In sum, all three of Plaintiffs' putative classes cannot be determined, and certification should be

denied for that reason alone.

## II.    CLASS C CANNOT BE CERTIFIED BECAUSE NEITHER PLAINTIFF IS A MEMBER OF CLASS C.

The Court should likewise refuse to certify Class C on the separate ground that neither Plaintiff

is a member of that class. Plaintiffs' definition of Class C is as follows:

> Class C, which pertains only to Count III, consists of (a) all natural persons (b) *sued in the name of MCM* (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

Motion at 2 (emphasis added).

Neither Plaintiff has been sued in the name of MCM. Rather, Herkert was sued in the name of

Midland Funding, *see* Ex. B to FAC, while Jackson was sued in the name of MRC. *See* Ex. A to FAC.[5]

Because neither Plaintiff has been sued in the name of MCM, neither Plaintiff is a member of Class C

and, therefore, neither Plaintiff may represent Class C. *Chambers*, 17 F.3d at 1006 ("An individual

---

[4] Recently Judge Conlon denied cross-motions for summary judgment, holding that factual issues remained as to the defendant's "bona fide error" defense under the FDCPA. *Ramirez v. Palisades Collection, LLC*, No. 07 C 3840, 2008 WL 2512679, at *5-6 (N.D. Ill. June 23, 2008) (Ex. 11).

[5] To the extent that Plaintiffs argue that their ICAA claim or Class C is based on any alleged threats by MCM to file suit -- which is not contemplated in the class definition -- Plaintiffs cannot succeed. Herkert admitted that MCM never threatened to sue her. Herkert Dep. at 62:9-11. Similarly, Jackson has no evidence that MCM ever threatened to sue her. She claims that MCM might have sent her a letter at some point before MRC filed suit against her, but she is not in possession of that letter, and she did not know whether MCM had ever threatened to sue her. Jackson Dep. at 51:23-52:13; 90:23-91:13.

bringing an action on behalf of a class must be a member of the class . . . ."); *Bowman*, 521 F.2d at 707 ("It is . . . fundamental that, under Rule 23, in order to sue on behalf of a class, the plaintiff-representative must be a member of the class. They cannot represent a class of whom they are not a part."); *Oshana*, 225 F.R.D. at 580 ("[T]he named representative must fall within the proposed class."). Therefore, the Court should deny certification of Class C on this basis alone.

## III.    PLAINTIFFS CANNOT SATISFY RULE 23'S REQUIREMENTS.

In addition to the fact that the classes are unascertainable and that Plaintiffs are not members of Class C, the Court should deny certification as to all three classes because Plaintiffs cannot satisfy the numerosity, typicality, adequacy of representation, or predominance and superiority requirements.

### A.    Plaintiffs Have Failed to Establish Numerosity.

Pursuant to Rule 23(a)(1), a plaintiff must proffer some evidence or a reasonable estimate of the number of class members. According to the Seventh Circuit, a plaintiff cannot rely on "conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).

In this case, Plaintiffs claim that the numerosity element is satisfied because they attach lists of cases filed by Midland Funding, MRC, and MCM in Cook County, Illinois, Exs. C-E to Motion, and several state court complaints filed by the defendants. Ex. F to Motion. Notably, of the thirty-five cases attached in Exhibit F, twenty-five were filed by MRC, ten were filed by Midland Funding, and *zero* were filed by MCM.

Plaintiffs make no effort to provide further information to meet their burden, other than a baffling claim in their Motion that "Plaintiffs will obtain the exact number of class members for each class through discovery . . . ." Motion ¶ 13. Plaintiffs do not allege or provide evidence that any of the cases listed in Exhibits C, D, and E to their Motion violate the FDCPA. Likewise, Plaintiffs present no evidence that the cases attached in Exhibit F to their Motion were time-barred and, as discussed above in Part I, nor can such evidence be discovered without an exhaustive individual inquiry.

12

Plaintiffs themselves admit that joinder is generally considered impracticable only when the class has at least forty members. Memorandum at 7. However, the evidence submitted by Plaintiffs fails even that standard. Simply attaching lists of cases filed by Midland Funding, MRC, and MCM does not satisfy Rule 23(a)(1)'s numerosity requirement. Similar attempts by plaintiffs to meet the numerosity requirements have been summarily denied and should be in this case as well. *See, e.g., Gray-Mapp v. Sherman*, 100 F. Supp. 2d 810, 814-15 (N.D. Ill. 1999) ("conclusory allegations of numerosity" were insufficient to certify a FDCPA class action), *Foreman v. PRA III, LLC*, No. 05 C 3372, 2007 U.S. Dist. LEXIS 15640, at *17-18 (N.D. Ill. Mar. 5, 2007) (Ex. 12) (explaining that the plaintiff failed to provide "adequate information" to meet the numerosity requirement for the "time-barred debt sub-class."). [6]

Simply put, Plaintiffs have no evidence that they have satisfied numerosity for each class. The Court should reject Plaintiffs' attempt to infer that every suit filed by Midland Funding, MRC, or MCM somehow violates the FDCPA. Such a conclusion is unsupported, and Plaintiffs have not submitted any evidence to show that each putative class satisfies the numerosity requirement.

**B.      Plaintiffs Fail to Satisfy Fed. R. Civ. P. 23(a)(3) or (4).**

Plaintiffs cannot meet the typicality and adequacy of representation burdens under Rule 23 with respect to any of their three putative classes. Under Rule 23(a)(3) and (4), respectively, plaintiffs must establish that the claims or defenses of the representative parties are typical of those of the class and that the representative parties will fairly and adequately protect the interests of the class.[7]

---

[6] *See also Kondratick v. Beneficial Consumer Disc. Co.*, No. Civ.A. 04-4895, 2006 WL 305399, at *7-10 (E.D. Pa. Feb. 8, 2006) (Ex. 13) (denying class certification of FDCPA claim because plaintiff could not establish numerosity: "[i]t is important to note that the only way to determine if any of these approximately 260 persons are truly [members of the proposed class] would be to analyze the merits of each class member's case, which . . . is inappropriate."); *Iosello v. Lawrence*, No. 03 C 987, 2005 WL 2007147, at *4 (N.D. Ill, Aug. 18, 2005) (Ex. 14) (rejecting plaintiff's allegations that numerosity was satisfied because claims involved standard business procedures relating to 80,000 customers: "[p]laintiff's speculative calculations . . . are insufficient to satisfy his burden of establishing numerosity."); *Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 744 (N.D. Ill. 2002) (rejecting as "too speculative" the argument that defendant's use of standard business practices meets numerosity requirement).

[7] Defendants do not dispute that Plaintiffs satisfy the adequacy of counsel requirement.

When evaluating the typicality of Plaintiffs' claims, this Court should "focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1171 (N.D. Ill. 1995); *see also Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 112 (N.D. Ill. 1993) ("The presence of even an arguable defense peculiar to the named plaintiff or small subset of the plaintiff class may destroy" typicality).

The test for adequacy of representation has three parts: "(1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class [;] (2) the named representative must have sufficient interest to ensure vigorous advocacy [;] and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *In re CBC Cos., Inc. Collection Letter Litig.*, 181 F.R.D. 380, 382 (N.D. Ill. 1998) (citation and quotation marks omitted). Adequacy of representation is not a trivial consideration. Rather, "[a]dequate representation is the foundation of all representative actions," *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1121 (7th Cir. 1979), and embodies the due process requirement that each litigant is entitled to his day in court. *Helfand v. Cenco*, 80 F.R.D. 1, 6 (N.D. Ill. 1977). While the burden of establishing adequacy of representation is not difficult, *Wahl v. Midland Credit Mgmt.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (Castillo, J.), Plaintiffs here nonetheless fail to meet this relatively easy standard.

### 1.    Plaintiffs' claims are subject to unique defenses.

The existence of unique defenses bears not only on Plaintiff's adequacy as a class representative under Rule 23(a)(4), but also on the question of typicality under Rule 23(a)(3), either of which can preclude certification. *See Williams*, 150 F.R.D. at 112; *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an *arguable* defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation") (emphasis added).

14

Plaintiffs' claims cannot be typical of the claims of the putative class and Plaintiffs cannot be adequate representatives because of the following potentially unique defenses:

- Both Plaintiffs admit that they completed written applications for their credit cards. Herkert Dep. at 37:2-3; Jackson Dep. at 53:7-8. If those applications incorporated the unsigned cardmember agreements, then Plaintiffs' claims would have no merit -- and, more importantly for class certification purposes, Defendants would have a unique defense to Plaintiffs' claims -- because an unsigned credit card agreement which was incorporated into the application or to which the debtor accepted by using the credit card would satisfy the need for an instrument from which the essential terms of the agreement can be ascertained. *Garber v. Harris Trust & Sav. Bank*, 104 Ill. App. 3d 675, 432 N.E.2d 1309, 1311-12 (1st Dist. 1982).

- Plaintiffs' cardholder agreements (attached as part of Ex. A and B to the FAC) state that the agreements are governed by Delaware law. Other members of the putative class may be subject to the laws of other states.

- Plaintiffs' cardholder agreements contain arbitration clauses. Other putative class members' agreements may or may not have arbitration agreements.

- Some of the cardholder agreements of the putative class members, like Plaintiffs' agreements, contain class action waivers.

- Plaintiffs' claims cannot be typical of the claims of the putative class members in Class C and Plaintiffs cannot be adequate representatives of Class C because, as discussed above in part II, Plaintiffs are not members of Class C.

- Jackson never incurred the underlying debt because the debt was incurred as a result of fraudulent charges. Jackson Dep. at 56:21-57:8, 58:20-60:22, 64:2-9; Ex. 9 to Jackson Dep. The state court suit filed by MRC was dismissed the day after Jackson submitted a fraud affidavit to MRC's attorneys. *Id.* at 73:12-17. Most other putative class members, such as Herkert, may not have such a defense to the underlying debt.

### 2. Plaintiffs' admissions in their depositions show that they are not adequate class representatives.

Plaintiffs' admissions further demonstrate that they are not adequate representatives. In *Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D. Minn. 2003), the class representative in an FDCPA case was inadequate for the following reasons (among others): (1) he rejected an offer of judgment because of his unsupported legal belief that he stood to gain more from class litigation than litigating individually; (2) his responses to questions in his deposition "were contradictory and often nonsensical"; and (3) he was "repeatedly confused by, and unable to respond to, straightforward questions about critical elements of the action, such as the collection letters, the parties to the action and the basis for the

lawsuit." *Id.* at 568-69. Plaintiffs here suffer from similar downfalls as the plaintiff in *Jones*, as well as these additional problems:

- When asked what she hoped to gain from her lawsuit, Herkert responded that she hopes to stop "them" from harassing people and suing people wrongfully. Herkert Dep. at 31:18-32:1. However, neither Plaintiff has brought a claim for injunctive relief. Later in her deposition, she did not know what she hoped to gain. *Id.* at 67:2-8. Likewise, when asked what she hopes to accomplish, Jackson stated that she hopes to stop "these companies" from buying debts. Jackson Dep. at 104:4-12.

- Neither Plaintiff is familiar with the ICAA. Herkert Dep. at 13:12-14; Jackson Dep. at 17:13-15.

- When asked whether she would accept $1,000 -- the *maximum* statutory damages that she may recover under the FDCPA -- to dismiss her suit, Jackson stated that she would not do so. Jackson Dep. at 107:2-5. When asked why, she stated that the purpose of filing her lawsuit was "not just -- it's not just payment for the lawsuit, it's the fact that they filed suit against me, that -- you know . . . it's that they need to stop doing what they're doing in this case." *Id.* at 107:6-13.

- Herkert did not know if she was seeking any damages other than her alleged actual damages. Herkert Dep. at 68:8-10.

- Jackson was unsure how her attorneys will be compensated if she wins or loses. Jackson Dep. at 105:17-106:9.

- The first time Herkert met her lawyer was on the day of her deposition, more than five months after her original complaint was filed. Herkert Dep. at 32:23-33:5.

### 3. Plaintiffs' suit is driven by their lawyers.

Plaintiffs are not adequate representatives because their suit is obviously driven by the lawyers and not by Plaintiffs themselves. Both Plaintiffs claim to have reviewed their FAC before it was filed. Herkert Dep. at 33:6-11; Jackson Dep. at 81:7-9. However, neither Plaintiff knew anything about many of the allegations in the FAC:

- Neither Plaintiff was sued by MCM and neither Plaintiff is familiar with the ICAA. Herkert Dep. at 13:12-14; Jackson Dep. at 17:13-15. Nonetheless, they bring a claim under the ICAA against MCM. Clearly Count III of the FAC had nothing to do with Plaintiffs, but rather was inserted by their lawyers without regard to the fact that Plaintiffs themselves cannot recover under the ICAA.

- Herkert did not know which Defendants maintain computerized records of payments on purchased accounts, as alleged in ¶ 52 of the FAC. Herkert Dep. at 52:4-18. When further asked for her basis for including that allegation in the FAC, Herkert stated, "I don't -- I don't know what your clients did." *Id.* at 54:12-22. She did not know if the

Defendants maintained computerized records, nor did she know if the Defendants have computerized records that did not show a payment on her account within five years of the filing of Midland Funding's state court complaint against her, as alleged in ¶ 53 of the FAC. *Id.* at 52:19-23, 55:5-16.

- Herkert did not examine any files, despite the fact that ¶ 58 of the FAC states that she examined "multiple files" and "in no or virtually no case do defendants attach a signed contract." Herkert Dep. at 55:18-56:24. She admitted that she did not have any understanding of the allegations in ¶ 58 of the FAC and that the allegation was put in the FAC by her attorney. *Id.* at 57:18-58:7.

- Likewise, Jackson admitted that she has not reviewed any files besides her own and that her lawyer was the impetus for the allegations in ¶ 58. Jackson Dep. at 85:24-86:12. She further admitted that she was unaware of the existence of any claims like hers, other than Herkert's claim. Jackson Dep. at 87:5-9.

- Herkert admitted that she did not know the basis for ¶ 86 of her FAC, which alleges that, during 2007, Defendants filed over ten cases per month in Illinois where there was no signed contract and where the debt was incurred more than five years prior. Herkert Dep. at 58:8-60:14. She further admitted that her attorney told her about the allegations in ¶ 86, rather than the other way around. *Id.* at 60:4-14.

- Jackson admitted that she did not know the basis for ¶ 92 of her FAC, which alleges that, during 2007, Defendants filed over ten cases per month in Illinois where there was no signed contract and where the debt was incurred more than five years prior. Jackson Dep. at 87:20-88:8. She also admitted that her attorney told her about the allegations in ¶ 92, rather than the other way around. *Id.* at 88:6-8.

- Herkert admitted that she did not know anything about the *Sadler* case, despite the fact that she cited the case in ¶ 87 of the FAC. Herkert Dep. at 60:15-61:19. Likewise, Jackson admitted that she did not know anything about *Sadler*, despite the fact that she cited the case in ¶ 93 of the FAC. Jackson Dep. at 88:9-19.

- Jackson did not know whether MCM has ever sued her. Jackson Dep. at 89:12-21. She also stated that she has never been sued or threatened to be sued by Encore, but that her lawyers added Encore as a defendant. *Id.* at 91:20-93:3.

- Herkert did not know why she sued MCM or Encore. Herkert Dep. at 63:3-23.

- Jackson admitted that it was her lawyer's idea to file her suit as a class action. Jackson Dep. at 44:8-13.

Plaintiffs have no incentive to fight for the interests of the class members because their potential individual recovery is in no way affected by whether a class is certified. That is, if they are successful, they can recover their actual damages and statutory damages of up to $1,000 regardless of whether a class is certified. *See* 15 U.S.C. §§ 1692k(a)(2)(A), 1692k(a)(2)(B)(ii). Thus, the only people

who are benefitting from the continuation of this litigation are Plaintiffs' attorneys. *See, e.g., Sanders v. Jackson*, 209 F.3d 998, 1003-04 (7th Cir. 2000) (discussing the fact that attorneys and the potential for statutorily mandated attorneys' fees -- rather than the potential recovery for the class -- are the driving forces behind FDCPA class actions). Therefore, Plaintiffs are not adequate representatives for these reasons alone.

### C.    Individual Issues of Fact and Law Preclude Certification under Rule 23(b)(3).

Even if Plaintiffs could overcome the hurdles above, certification of all three classes should be denied because the existence of individual issues of fact and law predominate here, and a class action is not the superior method of adjudication.[8]

Predominance under Rule 23(b)(3) requires not only that that the plaintiffs demonstrate that common questions of law and fact exist, but also that they "predominate over any questions affecting only individual members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-24 (1997). This is a "far more demanding analysis" that the commonality requirement. *Foreman*, 2007 U.S. Dist. LEXIS 15640, at *34. Where plaintiffs are unable to demonstrate that claims of the purported class can be proven upon generalized, class-wide proof but rather require examination of each class member's individual, fact-intensive transaction, then the predominance requirement is not satisfied. *See Cedeno*, 2002 WL 1592759, at *6. In short, certification is improper where liability determinations are both individual and fact-intensive.

When assessing superiority, a district court must "consider what other procedures, if any, exist for disposing of the dispute before it. It then must compare whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and assume the risk of prejudice to the rights of those who are not directly before the court." *Hyderi v.*

---

[8] Because commonality is subsumed by Rule 23(b)(3)'s more stringent predominance requirement, *Chatham v. Sears, Roebuck & Co.*, No. MDL-1703, 2007 U.S. Dist. LEXIS 89349, at *18 (N.D. Ill. Dec. 4, 2007) (Ex. 15), the Defendants' discussion of commonality is subsumed in its predominance discussion.

There is nothing to suggest the same type of results would not occur if Defendants were to conduct a similar inquiry here. *See* Little Decl. ¶¶ 3-6 (stating that MCM's computer systems are not searchable and cannot accurately ascertain members of the classes). Thus, without conducting an individualized inquiry into the facts of each and every account pulled, MCM (and, for that matter, Plaintiffs and this Court) cannot accurately determine whether debtors are actually members of the class.

But the analysis does not stop there. Out of the 50 account files analyzed in *Sadler*, there is evidence that a partial payment was made on at least ten accounts within five years of the charge-off date.[9] Frary Decl. ¶ 9. Thus, the statute of limitations is deemed tolled on each of those accounts. *See, e.g., St. Francis Med. Ctr. v. Vernon,* 217 Ill. App. 3d 287, 289 (5th Dist. 1991) ("[i]t is clear that part payment of a debt tolls the statute of limitations such that it commences to run from the date of last payment."); *Boatmen's Bank of Mt. Vernon v. Dowell,* 208 Ill. App. 3d 994, 1003-1004, 567 N.E.2d 739 (5th Dist. 1991) ("It is undisputed that a 'new promise' does not require new consideration in order to effectively bar the statute of limitations defense. It is the new promise, supported by the original consideration, that effectively takes the case out of the statute of limitations.") (citation omitted); *see also Davis v. World Credit Fund I, LLC,* 543 F. Supp. 2d 953, 957 (N.D. Ill. 2008) ("five year statutory period [for unwritten agreements] commences with *either* the charge off date or the last date of payment") (emphasis added) (citation omitted).

The court's decision in *Richburg* is persuasive here. In *Richburg*, the plaintiff brought a putative class action under the FDCPA against a debt collector that allegedly sued her to collect a consumer credit card debt after the statute of limitations had run. The *Richburg* court denied class certification on typicality and adequacy grounds based on the fact that the plaintiff had acknowledged her debt during a phone conversation with the collection agency, and, thus, was subject to unique

---

[9]     As noted in *Richburg v. Palisades Collection LLC,* 247 F.R.D. 457, 463 (E.D. Pa. 2008), acknowledgement of a debt works to toll the statute of limitations.

*Wash. Mut. Bank, FA*, 235 F.R.D. 390, 404 (N.D. Ill. 2006) (quoting Wright & Miller, *Federal Practice and Procedure*, Vol. 7AA, Civil 3d § 1779).

Here, Plaintiffs' claims against Defendants are individual and fact intensive. Plaintiffs cannot satisfy the predominance requirement because: (1) individual questions predominate as to whether Defendants filed time-barred suits; and (2) Plaintiffs do not attack an undisputed, standardized policy applicable to the putative classes. Furthermore, Plaintiffs cannot satisfy the superiority requirement because there is no financial bar to individual suits under the FDCPA.

### 1. Individual questions predominate as to whether individuals are members of the class and can recover under the FDCPA.

Even if Plaintiffs could somehow adequately define and ascertain their classes (and they cannot), certification must be denied for the simple fact that, like in *Sadler*, even a sampling would likely yield numerous individual issues of law and fact that would predominate here. For instance, in *Sadler*, in the random sampling of 50 accounts that *should have* -- but clearly did not -- meet the plaintiff's class definition, 11 accounts pulled had charge-off dates of *less* than five years prior to the filing of a suit by MCM or any collection attempt by MCM, despite the fact that the query was specifically written to *exclude* them. Frary Decl. ¶ 9 At least one account showed no evidence in the system or elsewhere that a letter similar to the one Plaintiff received was ever sent, despite the fact that the parameters of the search *required* this element be satisfied. *Id.* Indeed, upon a manual, individualized review, several account files indicated that the debtors actually moved from the State of Illinois years ago, and there is no way to determine whether they actually received the letter. *Id.* ¶ 10. And, at least one account pulled contained the entire written, *signed* credit card agreement. *Id.* ¶ 9. Thus, based upon the potentially hundreds of thousands of files that may have been either wrongly included in the list or, worse, left *off* of the list in *Sadler*, there could have been (and likely are) many, many more individual issues that preclude certification.

defenses. "Acknowledging the debt would toll the statute of limitations and thus eliminate the underlying wrong which [plaintiff's] FDCPA claim seeks to remedy." 247 F.R.D. at 463 (citation omitted). The *Richburg* court concluded that "one cannot infer the efficacy of the acknowledgement defense on a class-wide basis from its efficacy against [plaintiff]." *Id.* In other words, the court (as here) would have to conduct mini-trials in order to cross examine individual plaintiffs when account notes indicate that they had *either* made partial payments or acknowledged their debt, effectively tolling the statute of limitations.

The same analysis applies here. Thus, the list of factors that must be considered on an individual basis here continues to grow based on the evidence: (1) whether in fact the debt was even charged off more than five years ago; (2) whether an agreement exists; and (3) whether the statute of limitations was tolled due to an acknowledgment or partial payment.[10] Furthermore, even though Plaintiffs in this case cannot remember if they received these terms and conditions, Defendants have the right to inquire of each and every putative class member if he or she received the terms and conditions, and, if so, whether the terms and conditions included an arbitration clause or a class action waiver.[11]

But the inquiry does not end there. MCM can still obtain the underlying applications (or media) that constitute a written agreement for which the ten year statute of limitations applies. Arteaga Decl. ¶ 4. The fact that media is still available is extremely relevant here. MCM would still be entitled to sue on debt for which it can still obtain the proper media. In that vein, MCM would also (arguably) be entitled to take discovery on whether *the consumer* had a copy of the underlying agreement prior to suing on

---

[10] Another individual inquiry relates to those putative class members against whom MRC, Midland Funding, or MCM may have obtained a judgment, as those putative members' claims would likely be barred by the *Rooker-Feldman* doctrine. *See Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, No. 00 C 4511, 2001 U.S. Dist. LEXIS 20012, at *28-31 (N.D. Ill. Nov. 30, 2001) (Ex. 17). An individual inquiry would be necessary to determine whether each of those putative class members was denied the opportunity to assert FDCPA or statute of limitations defenses in his or her state court suit.

[11] By way of illustration of the individual circumstances that would need to be explored, an unsigned credit card agreement which was incorporated into the application or to which the debtor accepted by using the credit card would satisfy the need for an instrument from which the essential terms of the agreement can be ascertained. *Garber*, 432 N.E.2d at 1311-12.

the debt. Indeed, the list of individualized factors is infinite, and the class continues to be a moving target that, without individualized inquiry, is unascertainable.[12]

Even Plaintiffs' recitation as to what they believe are the common questions of law and fact demonstrate that Plaintiffs cannot show predominance. In their Motion, Plaintiffs claim that the following issues of law and fact predominate over individual issues: (1) "[w]hether defendants have a practice of filing lawsuits against Illinois residents on credit card debts that are more than 5 years old and as to which no written contract exists"; (2) "[w]hether such practice violates the FDCPA"; and (3) "[w]hether such practice violates the ICAA." Motion ¶ 14. In order to determine whether Midland Funding, MRC, or MCM have a practice of filing lawsuits in Illinois on credit card debts that are more than five years old and as to which no written contract exits, an individual inquiry into each putative class member's account would be necessary because, if a written contract exists, a ten-year statute of limitations exists and filing a suit more than five years after the debt was incurred would not run afoul of any law. Furthermore, while Plaintiffs argue that the identification of the putative class members would be "ministerial," Memorandum at 9, as discussed above in Part I, such an individual inquiry would be nearly impossible and anything but "ministerial." As such, Plaintiffs have failed to meet their burden under Fed. R. C. P. 23(b)(3).[13]

### 2.    Plaintiffs cannot satisfy predominance because they have not challenged an undisputed, standardized policy.

In addition, Plaintiffs cannot satisfy the predominance requirement because none of the three putative classes invokes an undisputed, standardized policy. In *Wahl*, this Court denied certification as

---

[12] MCM's system does not allow for a search of whether individuals had actually been sued on their debt. *See* Little Decl. ¶¶ 3, 5. Thus, this is yet another individualized inquiry.

[13] This Court should reject Plaintiffs' argument regarding separate proceedings in order to determine individual issues. *See* Memorandum at 9-10. When the common issues are narrow and the individual issues are numerous, predominance cannot be satisfied. *Hyderi*, 235 F.R.D. at 403 ("A putative class representative cannot satisfy the predominance requirement by defining the common issue narrowly and leaving all of the individual issues for follow-on proceedings, especially when the non-common issues are necessarily intertwined with the common issues and resolution of the common issues would not materially advance the litigation.").

to one of the plaintiff's putative classes because it did not satisfy the predominance requirement. 243 F.R.D. at 300-01. There, an individual inquiry would have been necessary to determine whether the defendants violated the FDCPA by continuing collection practices after receiving notification that the putative class member had disputed his or her debt. *Id.* at 300. The Court held that, simply because the defendants may have violated the plaintiff's rights under the FDCPA, the assumption could not be made that the defendants violated the rights of other putative class members. *Id.*

Furthermore, the putative class in *Wahl* did not "take issue with an undisputed and standardized practice or policy, or . . . contest defendant's debt collection practices as illustrated by standardized letters." *Id.* (citations omitted). Therefore, even though "the validity of this alleged practice would be a question of law common to each class member, determining the existence of this practice in each individual case, as well as whether each plaintiff legitimately disputed their debt, would predominate over the common question of whether Defendants violated the FDCPA." *Id.* at 301. *See also Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945, 959 (S.D. Ohio 2007) (denying class certification, rejecting plaintiff's contention that a "form affidavit, standing alone and without regard to what particular information [defendant] had," violated the FDCPA, and explaining that "[t]he need to review specific circumstances in each debtor's case to determine if a "reasonable basis" existed predominat[ed] over any common issues.")

The reasoning in *Wahl* and *Lee* applies here, where Plaintiffs do not take issue with an undisputed and standardized practice or policy. Rather, as the evidence demonstrates, not every suit filed by Midland Funding, MRC, or MCM in Illinois relates to a debt incurred more than five years before the filing of the lawsuit without a signed, written agreement attached to the state court complaint.

Plaintiffs are asking this Court to certify all three classes on the "hypothesis" that since Midland Funding and MRC sued Plaintiffs Herkert and Jackson, respectively, more than five years after their debt was incurred, it must be true that Midland Funding, MRC, and MCM have each done so to more

than 40 other individuals. However, such a "hypothesis" would have to be tested through individual factual inquiries. *See Thompson v. Spinelli*, No. 04-8224, 2005 WL 2483376 (N.D. Ill. Oct. 5, 2005) (Ex. 18) (denying class certification due to lack of predominance where plaintiff merely hypothesized that each class member's written agreement with a third-party vendor violated the FDCPA).

*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995), in which the plaintiff sought to certify a putative class of "all residents and businesses who have received unsolicited facsimile advertisements," is also instructive on this point. The predominant question in *Forman* was "whether the defendants sent unsolicited facsimile advertisements in violation of the [TCPA]." *Kondratick v. Beneficial Consumer Disc. Co.*, No. 04-4895, 2006 WL 305399, at *8 (E.D. Pa. Feb. 8, 2006) (citing *Forman*, 164 F.R.D. at 402) (Ex. 19). The *Forman* court denied certification because in order "[t]o determine what residents or businesses fell within this class, the court would have had to address the central issue of the case of whether unsolicited facsimile advertisements were sent to them." *Id.* The court concluded that such an inquiry would require mini-hearings to determine the factual scenario of class members' cases, and held that the class definition was "untenable." *Id.* at *7. The same analysis applies here.

In short, there is no "standardized conduct" that can be assessed without intensive factual inquiries into each purported class member's claim. Accordingly, Plaintiffs have failed to meet their burden under 23(b)(3) with respect to *all three classes*.

**3.  Because actual damages, statutory damages, and attorneys' fees are awarded to successful FDCPA litigants, there is no financial bar to individual actions and a class action is not the superior method of adjudication.**

Plaintiffs claim that there is "no better method available for the adjudication of [their] claims which might be brought by each individual debtor." Memorandum at 11. Plaintiffs' hypothesis is premised upon the supposition that "persons from whom defendants are attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on

24

an individual basis." *Id.* at 11-12. This type of argument was flatly rejected in the *Hyderi* case, in which Judge Filip denied class certification on superiority grounds:

> Precedent teaches that the availability of statutory damages plus the ability to recover attorneys fees and costs provides substantial incentives to bring meritorious individual suits. [Citations omitted]. Substantial case law outside of the RESPA context underscores this point. *See e.g.*, *Castano*, 84 F.3d at 748 (expense of litigation does not warrant class certification when the prevailing party may recover attorneys' fees); *Andrews*, 95 F.3d at 1025 (similar).

235 F.R.D. at 404; *see also Wilson v. Transworld Sys.*, No. 5:00-cv-135-Oc-10GRJ, 2002 U.S. Dist. LEXIS 10891, at *6 (M.D. Fla. Mar. 29, 2002) (Ex. 20) ("[A]ttorney's fees are recoverable under the statute in actions brought by individual Plaintiffs, as well as in class actions of any kind, so that Plaintiffs having only modest (something more than minuscule) claims should have greater facility in litigating those individual claims, if necessary, than would otherwise be the case."); 5 Moore's Federal Practice § 23.46[3][a] at 23-27 ("if a claim is based on law that permits the prevailing party to recover the cost of litigation . . . a class action is less likely to be the superior method of proceeding").

Here, there is ample incentive for a litigant to bring his or her own claim because the FDCPA allows for the recovery of actual and statutory damages, as well as mandatory recovery of costs and reasonable attorneys' fees by a successful litigant. 15 U.S.C. § 1692k(a)(3). Therefore, there is no financial bar for other individuals in the putative class to bring meritorious suits on their own behalf. Here, the denial of certification will not harm Plaintiffs' ability to recover costs and reasonable attorneys' fees if they are ultimately successful in this action. Therefore, Plaintiffs cannot satisfy the superiority requirement, and this Court should deny certification.

## CONCLUSION

For all of the reasons stated above, Plaintiffs' Motion for Class Certification should be denied.

Dated: August 29, 2008                                Respectfully submitted,

**MIDLAND CREDIT MANAGEMENT, INC.;
MRC RECEIVABLES CORPORATION,
MIDLAND FUNDING NCC-2, AND ENCORE
CAPITAL GROUP, INC.**

By:  s/ Theodore W. Seitz
     Richard E. Gottlieb (rgottlieb@dykema.com)
     James W. McConkey (jmcconkey@dykema.com)
     Theodore W. Seitz (tseitz@dykema.com)
     Renee Zipprich (rzipprich@dykema.com)
     Dykema Gossett, PLLC
     10 South Wacker Drive, Suite 2300
     Chicago, Illinois 60606
     Phone: 312-876-1700
     Fax:    312-627-2302

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2008, we caused Defendants' Opposition To Plaintiffs'

Motion For Class Certification to be filed with the Clerk of the Court using the ECF system, which

sent electronic notification of the filing on the same day to:

> Daniel A. Edelman (courtecl@edcombs.com)
> Cathleen M. Combs (ccombs@edcombs.com)
> James O. Latturner (jlatturner@edcombs.com)
> Cassandra P. Miller (cmiller@edcombs.com)

In addition, on August 29, 2008, we served Defendants' Opposition To Plaintiffs' Motion For

Class Certification via messenger upon the following:

> Daniel A. Edelman
> Cathleen M. Combs
> James O. Latturner
> Cassandra P. Miller
> EDELMAN COMBS, LATTURNER & GOODWIN, LLC
> 120 S. LaSalle, 18th Floor
> Chicago, Illinois 60603

> s/ Irina V. Frye

CHICAGO\2498830.12
ID\ADL

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WINONA JACKSON and<br>NICOLE HERKERT<br>on behalf of plaintiffs and a class,<br><br>Plaintiff,<br><br>v.<br><br>MRC RECEIVABLES CORPORATION,<br>MIDLAND FUNDING NCC-2<br>CORPORATION; MIDLAND CREDIT<br>MANAGEMENT, INC.; and ENCORE<br>CAPITAL GROUP, INC.,<br><br>Defendants. | )<br>)<br>) Case No. 08 C 760<br>)<br>) Hon. Ruben Castillo<br>)<br>) Magistrate Judge Schenkier<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF VIRGINIA ARTEAGA

I, Virginia Arteaga, hereby declare as follows:

1.    I am a Project Manager for the Business Operations at Midland Credit Management, Inc. ("MCM"). Because of my position with MCM and my knowledge of the plaintiffs' accounts with Associates National Bank ("Associates") and the documents related to those accounts, I have personal knowledge of the facts stated in this declaration. In the course of MCM's regularly conducted business activity, it is the practice of MCM to make and keep contemporaneous records regarding its customers' credit-card accounts and activity on such accounts. As a Project Manager of Business Operations at MCM, I am familiar with the operations of MCM and the maintenance of business records in relation to its credit accounts. Specifically, I have reviewed records relating to Nicole Herkert's ("Herkert") credit-card account with Associates and Winona Jackson's ("Jackson") credit card account with Associates.

2.      In May 2005, Midland Funding purchased Herkert's from Associates debt from Citibank (South Dakota), N.A., which owned Herkert's Associates debt.

3.      In November 2004, MRC purchased Jackson's from Associates debt from Citibank (South Dakota), N.A., which owned Jackson's Associates debt.

4.      Some information is not available on the MCM account database for certain accounts. MCM may obtain, upon request from original creditors, the underlying applications, agreements, and cardholder documents (or media) for individual accounts on which MCM has attempted to collect.  MCM could and often does obtain underlying account information prior to filing suit to collect on the debt.

5.      Some account files indicate that a debtor may have moved from the state in which he or she incurred a debt subsequent to the charge-off date.

6.      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 29th day of August, 2008 in San Diego, California.

Virginia Arteaga

CHICAGO\2504716.1
ID\ADL

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WINONA JACKSON and<br>NICOLE HERKERT<br>on behalf of plaintiffs and a class,<br><br>       Plaintiff,<br><br>v.<br><br>MRC RECEIVABLES CORPORATION,<br>MIDLAND FUNDING NCC-2<br>CORPORATION; MIDLAND CREDIT<br>MANAGEMENT, INC.; and ENCORE<br>CAPITAL GROUP, INC.,<br><br>       Defendants. | )<br>)<br>) Case No. 08 C 760<br>)<br>) Hon. Ruben Castillo<br>)<br>) Magistrate Judge Schenkier<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DAVID LITTLE

I, David Little, hereby declare as follows:

1.      I am the Director of Software Engineering for Midland Credit Management, Inc. ("MCM"). My current responsibilities include supervising teams of MCM's software engineers. I have been in my current capacity since 1999. In that capacity, I am familiar with the matters set forth herein.

2.      As part of its operations, MCM operates and maintains several computer systems and various computer databases. MCM's parent corporation, Encore Capital Group, Inc. ("Encore"), does not operate and/or maintain a computer system. Likewise, MRC Receivables Corporation ("MRC") and Midland Funding NCC-2 Corp. ("Midland Funding") do not operate and/or maintain a computer system. MCM holds the computer records and account information for Midland Funding and MRC accounts.

3.      MCM's computer systems do not contain applications that allow for the extraction, conversion, and tabulation of individual MCM account information into multiple account summaries. For example, if MCM wanted to determine every MCM, MRC, or Midland Funding account that had been sued upon during a certain time period, that information would not be readily available.

4.      It is my understanding that the account system information sought by the Plaintiff in this case from MCM's computer systems is as follows:

> The complete file, including but not limited to computer information, for (a) all natural persons (b) sued in the name of MCM, MRC, and/or Midland Funding (c) in an Illinois court (d) between April 1, 2007 and April 21, 2008 (e) on a credit card debt (f) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (g) and where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit.

5.      With respect to the information in ¶4, the information cannot be retrieved from MCM's computer system, because MCM's computer system does not contain specific information regarding who may have been sued by outside counsel in the name of MCM, MRC, and/or Midland Funding. In addition, MCM's system does not allow for a search of (1) the underlying account information from the original creditor also known as "media", (2) whether or not suit was filed in the name of MCM, MRC, and/or Midland Funding, (3) when suit was filed, (4) the state in which individuals incurred their debt, and (5) the date of an individual's last payment, since that information is not always provided by the seller.

6.      In order to obtain the complete history and supporting documentation for each individual identified above in ¶ 4, each individual account number would have to be typed in to two separate, non inter-facing databases.

7.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of August, 2008 in San Diego, California.

_____
David Little

CHICAGO\2505561.1
ID\ADL