**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE HERKERT, and | ) | |
| WINONA JACKSON | ) | |
| on behalf of plaintiffs and a class, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 760 |
| | ) | Judge Castillo |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| MRC RECEIVABLES CORPORATION; | ) | |
| MIDLAND FUNDING NCC-2 CORPORATION; | ) | |
| MIDLAND CREDIT MANAGEMENT, INC.; | ) | |
| and ENCORE CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION**

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    "CLASS C" CAN SIMPLY BE REDEFINED TO MORE CLEARLY INCORPORATE PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    DEFENDANT'S FAILED COMPUTER SYSTEM IS IRRELEVANT . . . . . . . 4

    III.    THE PROPOSED CLASSES ARE OBJECTIVELY IDENTIFIABLE . . . . . . . 8

    IV.    PLAINTIFF HAS SATISFIED ALL THE REQUIREMENTS OF RULE 23 . . 12

        A.    The Sampling Submitted By Plaintiffs Clearly Establish Numerosity . . 12

        B.    Plaintiffs' Claims Are Typical of the Class . . . . . . . . . . . . . . . . . . . . . 12

            1.    Agreements Which Are Subject to Change By Notice Are Not Written Contracts Within the Meaning of 735 ILCS 5/13-206 . 13

            2.    Defendants' Other Unsupportive Defenses Do Not Defeat Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.    Plaintiffs Are Adequate Class Representatives . . . . . . . . . . . . . . . . . . . 16

        D.    Because There Are Common Questions of Law and Fact, and Because Individual Questions Do Not Predominate, The Court Should Certify Plaintiff's Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        E.    A Class Action Is A Superior Method For Adjudication . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

*Armstrong v. Guigler,* 174 Ill.2d 281, 294, 673 N.E.2d 290 (Ill.1996) . . . . . . . . . . . . . . 1, 13, 14

*Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill.App.3d 59, 387 N.E.2d 831, 838 (1st Dist. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Barnes v. Peoples Gas Light and Cook Co.*, 103 Ill. App. 2d. 425, 243 N.E.2d 855, 857 (1st Dist 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 10

*Brown v. Goodman*, 147 Ill. App.3d 935, 498 N.E.2d 854 (1st Dist. 1986) . . . . . . 1, 6, 13, 14, 22

*Citibank (South Dakota), N.A. v. Martin*, 11 Misc.3d 219, 807 N.Y.S.2d 284  (Civ.Ct., Dec. 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clark v. Western Union Telegraph Co.*, 141 Ill.App.3d 174, 490 N.E.2d 36 (1st Dist. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Classified Ventures, Inc. v. Wrenchead, Inc.*, 06 C 2373, 2006 U.S. Dist. LEXIS 77359 (N.D.Ill., Oct. 11, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Davis v. World Credit Fund I, LLC*, 543 F. Supp. 2d 953 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . 2

*Doerr v. Schmitt*, 375 Ill. 470, 472, 31 N.E.2d 971 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*FDIC v. Wabick*, 335 F.3d 620 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foreman v. PRA III, LLC* 2007 U.S. Dist. LEXIS 15640 . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Gomez v. Illinois State Bd. Of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987) . . . . . . . . . . . . . . . . . . . 11

*Hickman v. Taylor*, 329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hurt v. Midrex Division of Midland Ross Corp.*, 556 P.2d 1337 (1976) . . . . . . . . . . . . . . . 21, 22

*In re PE Corp. Securities Litigation*, 228 F.R.D. 102 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . 16

*Jones v. CBE Group, Inc.* 215 F.R.D. 558 (D. Minn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Karnette v. Wolpoff & Abramson*, 444 F. Supp. 2d 640 (E.D. Va. 2006) . . . . . . . . . . . . . . . . 15

*Keele v. Wexler*, 149 F.3d 589 (7th Circuit 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kelly v. Montgomery Lynch & Associates, Inc.*, 2007 U.S. Dist. LEXIS 93651 (N.D. Ohio Dec. 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987) . . . . . . . . . . . . . . . . . . . . . 2, 17

*Kozlowski v. Sears, Roebuck and Company*, 73 F.R.D. 73 (D.Mass. 1976) . . . . . . . . . . . . . . . . 7

*Lau v. Arrow Financial Services, LLC*, 06 C 3141, 2007 U.S. Dist. LEXIS 73136 (N.D. Ill., Sept. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 2004 U.S. Dist. LEXIS 10274 (N. D. Cal. 2004) 17

*Munsterman v. Illinois Agricultural Auditing Association*, 106 Ill.App.3d 237, 435 N.E.2d 923 (3d Dist. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

*Murray v. E\*Trade Fin. Corp.*, 24- F.R.D. 392 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Murray v. GMAC Mortgage Corp.*, 434 F. 3d 948 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 24

*Murray v. New Cingular Wireless Services*, 232 F.R.D. 295 (N.D. Ill. 2005) . . . . . . . . . . . . . 18

*Nicolai v. Mason*, 118 Ill. App. 3d 300; 454 N.E.2d 1049 (5th Dist. 1983) . . . . . . . . . . . . . . 1, 10

*O.K. Electric Co. v. Fernandes* 111 Ill. App. 3d 466 N.E.2d 264 (2nd Dist. 1982). . . . . . . . . . . . . . . . . . . . 1, 10

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Parkis v. Arrow Financial Services, LLC*, 2008 U.S. Dist. LEXIS 1212 . . . . . . . . . . . . . . . . 2, 11

*Ramirez v. Palisades Collection LLC*, 2008 U.S. Dist. LEXIS 24921 (N.D. Ill., 2008) . 1, 2, 7, 9-12, 21, 22

*Ramirez v. Palisades Collection, LLC*, 2007 U.S. Dist. LEXIS 95972 . . . . . . . . . . . . . . . . . . 9, 15

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) . . . . . . . . . . . . . . 16

*Sadler v. Midland Credit Management, Inc.*, 2008 U.S. Dist. LEXIS 51198 . . . . . . . . . 1, 4-7, 21

*Scandoval v. City of Chicago,* 2007 U.S. Dist. LEXIS 77829 (N.D. Ill. 2007) . . . . . . . . . . . . . 21

*Schwab v. Philip Morris USA, Inc.*, 2006 U.S. Dist. LEXIS 73197 (E.D.N.Y. 2006) . . . . . . . . 20

*Sparano v. Southland Corp.*, 1996 U.S. Dist. LEXIS 17485 (N.D. Ill. 1996) . . . . . . . . . . . . . 23

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 21

*Toth v. Mansell*, 207 Ill. App. 3d 665, 669, 566 N.E.2d 730 (1st Dist. 1990) . . . . . . . . . . . . 1, 14

*Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291 (N.D. Ill., 2007) . . . . . . . . . . 19, 23

*Weaver v. Watson*, 130 Ill. App. 3d 563, 567, 474 N.E.2d 759 (5th Dist. 1984) . . . . . . . . . . . 13

*Weniger v. Arrow Financial Services*, 2004 U.S. Dist. LEXIS 23172 (N.D.Ill., 2004) . . . . . 1, 10

iv

## STATUTES AND OTHER AUTHORITIES

735 ILCS 5/13-205...................................................................................................*passim*

735 ILCS 5/13-206...................................................................................................*passim*

## INTRODUCTION

In Illinois, a plaintiff has 10 years to sue for violation of a written contract and 5 years to sue for violation of an unwritten contract.  735 ILCS 5/13-206; 735 ILCS 5/13-205.

In order to qualify for the 10 year limitations period, there must be a written instrument that identifies and is signed by the parties to the agreement and contains all of its essential terms.  *Brown v. Goodman*, 147 Ill. App.3d 935, 939, 498 N.E.2d 854 (1st Dist. 1986); *Toth v. Mansell*, 207 Ill. App. 3d 665, 669, 566 N.E.2d 730 (1st Dist. 1990)*; Munsterman v. Illinois Agricultural Auditing Association*, 106 Ill.App.3d 237, 238-39, 435 N.E.2d 923, 925 (3d Dist. 1982).  Even where there is a written instrument, the five year limitation period is applicable if parol evidence is necessary to establish that the plaintiff has the right to bring suit.  *Toth*, 207 Ill. App.3d at 699.  If the existence of the contract or an essential term must be proven by parol evidence, the contract is deemed to be an oral contract and the five-year statute of limitations applies. *See Armstrong v. Guigler*, 174 Ill.2d 281, 294, 673 N.E.2d 290 (Ill.1996); *Ramirez v. Palisades Collection LLC*, 2008 U.S. Dist. LEXIS 24921 (N.D. Ill., 2008)("*Ramirez II*").

Plaintiff contends that Defendants violated the FDCPA every time they filed suit on a debt which had been in default for more than 5 years without attaching a signed written contract.  A plaintiff suing for a violation of a written contract must attach that contract to its complaint; if it does not, the contract is considered unwritten.  735 ILCS 5/2-606; *Ramirez* II, 2008 U.S. Dist. LEXIS at *1-*4;  *Barnes v. Peoples Gas Light and Cook Co.*, 103 Ill. App. 2d. 425, 428, 243 N.E.2d 855, 857 (1st Dist 1968);  *O.K. Electric Co. v. Fernandes*, 111 Ill. App. 3d 466, 444 N.E.2d 264, 266-67 (2nd Dist. 1982);  *Nicolai v. Mason*, 118 Ill. App. 3d 300; 454 N.E.2d 1049 (5th Dist. 1983); *Weniger v. Arrow Financial Services*, 2004 U.S. Dist. LEXIS 23172 (N.D.Ill., 2004).  An attempt to collect a debt outside the applicable statute of limitations violates 15 U.S.C. § 1692e and f.  *See Sadler v. Midland Credit Management, Inc.*, 2008 U.S.

1

Dist. LEXIS 51198, *7; *Davis v. World Credit Fund I, LLC*, 543 F. Supp. 2d 953, 957 (N.D. Ill. 2008); *Ramirez II*, 2008 U.S. Dist. LEXIS at *1-*2; *Parkis v. Arrow Financial Services, LLC*, 2008 U.S. Dist. LEXIS 1212, *21-*22; *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987).

        As demonstrated by the 35 identical complaints attached to Plaintiffs' motion for class certification, Defendants uniformly attach to their complaints a "Form 409" affidavit. (*See* <u>Exhibit F</u> to Plaintiff's Consolidated Motion for Class Certification ("Pl.Mtn")). Paragraph 4 of each affidavit specifies that "the ***final*** statement of account reveals that the defendant owed a balance of [amount owed] on [date of delinquency]." (*Id.*)(emphasis added). In each case, the date of delinquency is more than five years prior to the filing of the action and in each case the complaint did not have attached to it any contract signed by the putative debtor. (*Id.*). Any "cardmember agreement" which Defendants had was unsigned or provided for unilateral change by the creditor by notice, with the cardholder's use of the card or non-objection constituting "acceptance" of the changes. [1]

        All of this information is available from the state court complaints filed by Defendants and made a matter of public record. Thus, Defendants' purported claim of the inability of their computer system to retrieve any information is irrelevant.

        Plaintiffs have attached to their motion 35 identical complaints filed by Defendants in Cook County shortly before and shortly after the complaints were filed against Plaintiffs. All 35 complaints pulled by Plaintiffs contain the same violation as that being asserted by Plaintiffs here. Defendants have filed thousands of lawsuits in Illinois and Plaintiffs have attached only some of those complaints. Numerosity is not at issue nor is the identification

---

[1] The right to unilaterally change the terms of the agreement by notice requires parol evidence to show whether any changes were made and, if so, what the new terms are. This renders the contract unwritten for statute of limitations purposes.

of those class members.

## ARGUMENT

I.    **"CLASS C" CAN SIMPLY BE REDEFINED TO MORE CLEARLY INCORPORATE PLAINTIFFS' CLAIMS**

As a preliminary matter, Defendants argue that Class C[2] should not be certified because neither Plaintiff has been sued in the name of Defendant MCM.  (Def.Mem., p. 11).  However, Plaintiffs claim that Defendants have filed lawsuits against thousands of Illinois residents in state court on time-barred debts.  The lawsuits are filed in the name of Defendants MRC Receivables Corporation ("MRC"), Midland Funding NCC-2 Corporation ("NCC2"), and Midland Credit Management, Inc. ("MCM").  MCM is the collection agency for the various subsidiaries of Defendant Encore Capital Group, Inc. ("Encore") and directs the filing of lawsuits, whether in its own name or the name of another Encore subsidiary.  (Plaintiffs First Amended Consolidated Complaint ("Amended Cmplt."), ¶¶19, 57-59, 63-70).

Each of the "Form 409" affidavits state that MCM is the "servicer of this account" and is signed by an MCM employee.  (*See* <u>Exhibits A, B and F</u> to Pl.Mtn.).  Plaintiffs allege in their Amended Complaint that "MCM directs or causes the filing of all such lawsuits, regardless of the fact that the plaintiff is MRC or NCC2 or another Encore subsidiary."  (Pl. Cmplt. ¶ 63. To avoid any further contention regarding Class C, Plaintiffs agree to re-define Class C as follows:

> (a) all natural persons (b) sued at the direction of MCM or for which MCM caused the lawsuit to be filed (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed

---

[2]    Pursuant to Plaintiffs' motion for class certification, Class C was previously defined as: (a) all natural persons (b) sued in the name of MCM directed or caused to be filed a lawsuit (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after February 4, 2007 (one year prior to this action), and not later than February 24, 2008 (20 days after the filing of this action).

contract, or attached a purported contract that is subject to change by notice (f) where the date of delinquency or last payment in defendants' records are both more than five years prior to the filing of suit, and (g) the suit was filed on or after February 4, 2007 (one year prior to this action), and not later than February 24, 2008 (20 days after the filing of this action).

As MCM directed or caused the filing of both state court actions against Plaintiffs, both Plaintiff Herkert and Plaintiff Jackson fall within this class definition.

## II.    DEFENDANT'S FAILED COMPUTER SYSTEM IS IRRELEVANT

Defendants go to great lengths to explain how in *Sadler v. Midland Credit Management Inc.*, its deficient filing system was unable to determine if a "Pre-Legal" letter was sent to a debtor five years after the charge-off date. *Sadler*, No. 06 C 5045, 2008 U.S. Dist. LEXIS 51198 (N.D. Ill.). Defendants' arguments with respect to their computer system's inability to search for a collection letter are irrelevant to Plaintiffs' claim regarding collection lawsuits filed in court.

In *Sadler,* the plaintiff brought suit against Defendants MCM, MRC, and Encore based upon a collection letter he received from the defendants which threatened to file suit on a debt which was no longer enforceable as a result of the expiration of the statute of limitations. 735 ILCS 5/13-206. Unlike the present case, plaintiff Sadler had never been sued by any of the Defendants, and thus there was no lawsuit upon which he could base his claim.

In *Sadler*, at the Court's direction, Defendants conducted a search of their records to determine how many individuals received a "Pre-Legal" collection letter at least five years after the charge-off date. *Sadler*, at *11. Approximately 11 of the 55 accounts pulled through the random sampling fell outside of the proposed class either because the letter had been sent prior to the expiration of five years or no letter had been sent at all. *Id.*, at *13. The court found that the "false positives" identified by the search would require an individual evaluation of the accounts "to confirm the results of the query." *Id.* at *14.

4

The *Sadler* search has no bearing on Plaintiffs' claims, which are premised on collection complaints. Collection complaints are filed in court, not in Defendants' computer system. Thus, determining whether a signed written contract was attached to the complaint, and whether the attached affidavit gave a delinquency date of more than five years, would have nothing to do with Defendants' computer system.  Nonetheless, Defendants devote much of their brief describing its failed attempts to identify individuals who were sent the same threatening collection letter that Defendants sent to plaintiff Sadler.  For example,  Defendants argue that "like in *Sadler*, even a sampling would likely yield numerous individual issues of law and fact that would predominate here."  (Def.Mem., p.19).  In support, Defendants explain that their *Sadler* search "showed no evidence in the system or elsewhere that *a letter* similar to the one Plaintiff received was ever sent," and that "there is no way to determine whether [the class member] actually received *the letter*," and further that of "the 50 account files analyzed in *Sadler*, there is evidence that a partial payment was made on at least ten accounts." (Def.Mem., p.19-20).

Here, Plaintiffs challenge Defendants practice of actually ***filing lawsuits*** to collect on debts that were charged off more than five years ago. Defendants ignore this critical distinction.  Plaintiffs' claims are not based on a collection letter generated by Defendants' computer system.  Plaintiffs' claims turn on whether the collection complaints and attached affidavits, gave a date of delinquency of more than five years without attaching  signed written contracts. Thus, Defendants make their violations a matter of public record and there is no need for  further inquiry into Defendants faulty computer system.

Through a simple search of the Circuit Court of Cook County, Plaintiffs have already identified at least 35 individuals which fall within one of the three class definitions. Clearly, identifying individuals who meet the above requirements is not an impossible task.  A search of Illinois court records, during the relevant class period, will produce all the complaints

for individuals, sued in the name of NCC2 and MRC. This will also identify all persons sued at the direction of MCM because all the complaints filed by NCC2 and MRC were done so at MCM's direction. The complaints will reveal (1) whether the suit was filed on an alleged credit card, (2) whether a signed written contract was attached, and (3) the date of delinquency or last payment.

Furthermore, unlike *Sadler*, Plaintiffs are not seeking to certify a class which depends on the Defendants' ability to produce documents. Rather, Plaintiffs' class definition turns on whether or not Defendants actually ***did attach*** a signed written contract.

The plaintiff in *Sadler* sought to certify a class defined as:

> (1) all natural persons with Illinois addresses; (2) who were sued or received correspondence referring to "legal action" (3) on or between a date one year prior to the filing of this action and twenty days after the filing of this action; (4) with respect to a debt that was charged off five years or more prior to the filing of the lawsuit or the date of the correspondence; (5) ***as to which Defendants cannot produce a writing that identifies the parties, states the date of the agreement contains the parties' signatures, and sets forth the terms of the parties' signatures, and sets forth the terms of the parties' agreement***.

The court denied without prejudice Plaintiff's motion on the grounds that "MCM might obtain a written contract related to an individual account at issue, were it to contact the original creditor to request the documentation" and that "requiring Defendants to produce these contracts is a substantial burden." *Sadler,* at *16.

Here, Plaintiffs' theory is that Defendants' collection suits are time-barred precisely because the collection complaints do not have attached to them executed written contracts. The failure to attach a contract wholly in writing to collection complaints makes the underlying contracts unwritten and subjects it to a five-year statute of limitations. *Barnes*,103 Ill. App. 2d. 425, 428; *Brown*, 147 Ill. App. 3d at 939-940; 735 ILCS 5/13-205. Plaintiffs' classes are therefore conditioned on whether Defendants ***attached*** executed written agreements to its collection complaints, not on whether Defendants can produce a written contract.

6

*Sadler* recognized this distinction, in discussing *Ramirez II*, in which the Plaintiff was able to cure a defect in the class definition by asserting a nearly identical definition as that proposed here:

> As amended, the class included accounts where the debt collector did not attach a signed written contract to its complaint. The court presumed that, when the debt collector failed to attach a written contract to the complaint, the underlying contract was unwritten. The court found that determining whether a signed, written contract was attached to the underlying collection complaint might be administratively burdensome but would 'not require arduous individual inquiry.' In other words, ***by focusing on whether a written contract was attached to the complaint, the plaintiff's amended class definition eliminated the need to determine whether a written contract existed***.

*Sadler*, 2008 U.S. Dist. LEXIS 51198, at *17-18, n. 3 (emphasis added) (internal cites omitted).

Defendants' argument is that the class should not be certified because Defendants do not know who they filed suit against. That is simply no excuse at all. Defendants file thousands of lawsuits in Illinois on charged-off credit card debts every year. The persons Defendants sue can be identified from court records, most of which are on-line. Defendants frequently have to defend other similar FDCPA class action lawsuits. Defendants are fully aware that this type of information is relevant and necessary to these suits. Any deficiencies in the search and retrieval mechanisms of Defendants' computer system in that regard, can only be considered self-imposed to defeat further class action lawsuits. The court addressed a similar issue in *Kozlowski v. Sears, Roebuck and Company*, 73 F.R.D. 73, 76 (D.Mass. 1976):

> The defendant seeks to absolve itself of the responsibility by alleging the herculean effort which would be necessary to locate the documents. The defendant may not excuse itself from compliance with Rule 34, Fed.R.Civ.P., by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify them, thus rendering the production of the documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purpose of the discovery rules.

*See Hickman v. Taylor*, 329 U.S. 495 (1947) (remaining citations omitted). *Kozlowski*, at 76. *See also*, *Kelly v. Montgomery Lynch & Associates, Inc.*, 2007 U.S. Dist. LEXIS 93651, at 6 (N.D.

Ohio Dec. 13, 2007) (court grants plaintiff's motion to compel information regarding numerosity in FDCA case where defendants claimed that the discovery request was unduly burdensome because the defendant's filing system was not maintained in a searchable way and the information sought would require "manually searching through hundreds of thousands of records.")

Defendants file form affidavits in their collection lawsuits attesting to their account records for debt being sued upon.   It is inconceivable that Defendants would not track the production of affidavits filed in support of their own collection cases.

Although hard to believe, even if Defendants do not keep records of their sworn affidavits filed in collection suits, Defendants, in their 26(a)(1) disclosures, have identified only two outside law firms that file collection cases on their behalf in Illinois during the relevant period: Arthur Adler & Associates and Blatt, Hasenmiller, & Liebsker & Moore.  These are high volume law firms.  They not only have records of the accounts for which Defendants directed them to file suit, but they are most likely all in a searchable electronic form.  Plaintiffs served subpoenas on both firms and depositions are noticed for the end of September.

Thus, it appears that the most cost effective method for determining who Defendants sued would be through an electronic computer search of either Defendants' records or their outside counsel's records.  However, the alternative is that Plaintiffs simply pull the files themselves, an alternative which is likely to dramatically increase the attorney's fees in this case, but not prevent retrieval of the documents.  In any event, there is a class and it is only a matter of determining which method will be used to identify its members.

## III.    THE PROPOSED CLASSES ARE OBJECTIVELY IDENTIFIABLE

Each element of Plaintiffs' class definitions depends on objective facts: (a) all natural persons, (b) sued in the name of NCC2 or MRC, or sued at the direction of MCM or for

which MCM caused the lawsuit to be filed [3], (c) in an Illinois court, (d) on an alleged credit card debt, (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of delinquency or last payment in defendants' records (which are reflected in the Form 409 affidavits) are both more than five years prior to the filing of suit, and (g) the suit was filed on or after February 4, 2007 (one year prior to this action), and not later than February 24, 2008 (20 days after the filing of this action). There is no subjective inquiry required to determine class membership, which may be determined by the documents Defendants attach to their state court complaints. *(See* above Section II).

> A nearly identical class was recently certified in *Ramirez II, supra.*:

> (a) all individuals with Illinois addresses, (b) against whom [Palisades] filed suit on a credit card debt originated by Household Bank (c) where both the date of charge-off and the date of last payment, as shown by [Palisades'] records, were more than five years prior to the date of filing, (d) where the lawsuit was filed or served on or after July 9, 2006 (on year before the filing of this action) and prior to July 29, 2007 (20 days after the filing of this action), and (e) [where Palisades] ***did not attach to the complaint a written contract signed by both the original creditor and the putative debtor***.

> The court had previously denied plaintiff's motion which defined subpart (e) as

"[where Palisades] cannot produce [the] written contract [it sued upon] signed by both the original creditor and the putative debtor," without prejudice because, as previously defined, "the class definition required an exhaustive individualized inquiry into whether Palisades can presently find, in its own files or those of another entity, a written contract to exclude a debtor from the class." *Ramirez v. Palisades Collection, LLC*, 2007 U.S. Dist. LEXIS 95972, at *3. The class here, definitely tracks the class finally certified in *Ramirez*.

> Whether the contract is attached to the complaint is significant because Illinois

---

[3] Class A consists of those individual sued in the name of NCC2; Class B consists of those individuals sued in the name of MRC; and Class C consists of those individuals who were sued at the direction of MCM or for which MCM caused the lawsuit to be filed.

law holds that if a completely signed written contract is not attached to the complaint then the contract is oral and subject to the 5 year statute of limitations. *Barnes v. Peoples Gas Light & Cooke, supra.* ("The complaint does not purport to be based on a written instrument such as a tariff. If it were, then, of course, the relevant portions of that instrument would have to be recited in, or attached to, the pleading, and, as indicated, they were not."); *O.K. Electric Co. v. Fernandes, supra.* ("Unless the complaint purported to be based upon a written instrument, it is assumed to be an oral contract."); *Nicolai v. Mason, supra.* (retail "charge account" was held governed by the five year statute where no document containing all the terms of the account was proven); *Weniger v. Arrow Financial Services, supra.* This is not an inordinate burden to place on a business which extends credit or (as here) purchases charged-off debts, as many states require suits to be brought on any kind of contract within a period shorter than the five years Illinois allows for suits on contracts which are not entirely in writing.

 *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-4 (7th Cir. 2006), cited by Defendants in support of their contention that the class is not objectively identifiable, is inapposite. *Oshana* involved allegations that defendant violated the Illinois Consumer Fraud Act by failing to disclose that fountain and bottled Coca-Cola were not the same product. *Oshana* held that in order to prove damages caused by defendant's deception it would be necessary to prove that a class member did not know that the two products were different. Thus, *Oshana* involved a determination of the subjective beliefs of each purported class member. *Oshana*, 472 F.3d at 513-514.

 Here, the question of whether a person is in the class depends solely on whether a written contract signed by both the original creditor and the putative debtor was ***attached*** to the collection complaint, not whether a contract ***exists***.

 Defendants' argument that this Court should not rely on *Ramirez II* because "unlike *Ramirez II*, Plaintiffs' three class definitions rely explicitly on Defendants' records" is

nonsensical.  (Def.Mem., p. 11).  The ultimate reliance is on public records –Defendants'

complaint and affidavit on file with a court.  This is precisely why the Court certified the

amended class definition in *Ramirez II,* "under Ramirez's amended class definition, the inquiry

will only involve whether a written contract – signed by both the original creditor and the

putative debtor– was attached to the underlying collection complaint."  *Ramirez II*, 2008 U.S.

Dist. LEXIS at *11.

       *Parkis v. Arrow Fin Servs*., No. 07 C 410, 2008 U.S. Dist. LEXIS 1212, 13-14 is

also inapposite.  There, the defendants filed a collection suit attaching an Affidavit of

Indebtedness.  However, the affiant only stated the balance owed and the different principal and

interest components of the debt.  *Id.* at *5.  The "Defendants did not include the date when the

alleged failure to pay occurred in its debt-collection filing in state court."  *Id.* at *19. The only

way of determining whether a given account had a charge-off date of more than 5 years required

an individual examination of the account statements for each putative class member.   Here, an

MCM employee testifies in the "Form 409" affidavit attached to each complaint that "After first

being sworn upon oath... I have personal knowledge of relevant financial information concerning

[defendant's account]" and "That the ***final*** statement of account reveals that the defendant owed

a balance of [amount owed] on [date of delinquency]". (*See* Exhibit F to Pl.Mtn.)(emphasis

added).  There is no need to examine individual account files.  If this information is "simply

unascertainable," Defendants commit a fraud on the state court every time they file such an

affidavit and now seek to defeat a claim in this Court by asserting that they lied to the state

courts.

       There are no individual issues, and no problems with identifying class members.

Even if some ministerial inquiry into court records is necessary in order to identify class

members, this does not make the class definition insufficient.  "A class exists if its members can

be ascertained by reference to objective criteria."  *Gomez v. Illinois State Bd. Of Educ.*, 117

F.R.D. 394, 397 (N.D. Ill. 1987). *Lau v. Arrow Financial Services, LLC*, 06 C 3141, 2007 U.S. Dist. LEXIS 73136 (N.D. Ill., Sept. 28, 2007), held that although the task of making an inquiry into the record of each potential class member may be administratively burdensome, it is "not so daunting as to make the class definition insufficient." *Id.* at *8. In any class action it is necessary to conduct some minimal inquiry to ascertain membership in the class. In a securities case, for example, it is necessary to identify persons who bought and sold securities during the class period. Yet such cases are routinely certified.

As in *Ramirez II*, identifying the class members will not require arduous individual inquiry as Defendants argue. Rather, the inquiry will only involve whether a signed written contract, within the meaning of 735 ILCS 5/13-206, was attached to the underlying collection complaint. This objective criteria is sufficient to identify class members.

## IV.     PLAINTIFF HAS SATISFIED ALL THE REQUIREMENTS OF RULE 23

### A.     The Sampling Submitted By Plaintiffs Clearly Establish Numerosity

Rule 23(a) requires that the putative class members be so numerous that joinder of their claims is impracticable. Fed. R. Civ. P. 23(a)(1). Plaintiffs have shown that Defendants file over 1,000 cases per month in Cook county. As previously explained, Plaintiffs have submitted 35 identical complaints from the Cook County records. None of the complaints attached a signed contract which is not subject to change by notice and all of the Form 409s state a delinquency date of more than five years prior to the filing date.

### B.     Plaintiffs' Claims Are Typical of the Class

Typicality is satisfied if the plaintiff's claims are based on the same legal theory as the claims of the other class members. *Lau*, at *13. Plaintiffs' claims and those of the proposed class are based on the same legal theory: by failing to attached a signed written contract but attaching an affidavit showing that the debt was more than 5 years in default, Defendants' suits were barred by the five-year statute of limitations.

12

1.    **Agreements Which Are Subject to Change By Notice Are Not Written Contracts Within the Meaning of 735 ILCS 5/13-206**

Defendants first argue that Plaintiffs' admission that they completed a written application for their credit cards presents a unique defense "because an unsigned credit card agreement which was incorporated into the application or to which the debtor accepted by using the credit card would satisfy the need for an instrument from which the essential terms of the agreement can be ascertained." (Def. Mem., p. 15). However, Defendants' argument complete ignores Plaintiff's theory of the case, which is that Illinois has a 10-year statute of limitations for "written contracts," 735 ILCS 5/13-206, and a 5-year statute for contracts not wholly in writing, 735 ILCS 5/13-205.

Although a ***contract*** may exist when Defendants sends terms to the consumer from time to time and the consumer uses the card thereafter, such a contract is not a ***"written contract"*** within the meaning of 735 ILCS 5/13-206. The test for a written contract in §13-206 is stringent – the writing must be "complete," in that it identifies the parties, states the date of the agreement; contains the signatures of the parties; and sets forth all terms of the parties' agreement. *Brown v. Goodman, supra*; *accord, Clark v. Western Union Telegraph Co.*, 141 Ill.App.3d 174, 176, 490 N.E.2d 36 (1st Dist. 1986); *Weaver v. Watson*, 130 Ill. App. 3d 563, 567, 474 N.E.2d 759, 762 (5th Dist. 1984); *Munsterman*, 106 Ill.App.3d at 238-39 (3d Dist. 1982); *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill.App.3d 59, 73, 387 N.E.2d 831, 838 (1st Dist. 1979). The statute requires an integrated writing establishing all material terms of the parties' agreement, including assent. *Brown v. Goodman*, *supra*. If any essential element of the contract is omitted from the writing, "'then the contract *must* be treated as oral for purposes of the statute of limitations.'" *Armstrong v. Guigler*, 174 Ill.2d 281, 288, 673 N.E.2d 290, 295 (1996). "The test for whether a contract is written under the statute of limitations in Illinois is whether all essential terms of the contract, including the identity of the parties, are in

13

writing and can be ascertained from the written instrument itself." *Brown v. Goodman, supra*.


   Signing an application for credit which is extended upon such terms as the creditor may unilaterally change by mere notice to the debtor does not create a "written contract." *Toth v. Mansell*, 207 Ill. App. 3d 665, 669,  566 N.E.2d 730, 733  (1st Dist. 1990); *Armstrong*, 174 Ill.2d 281 (Ill.1996).  This is because parol evidence is necessary to establish what documents were sent and retained without objection or are used as the basis for further transactions.  *Citibank (South Dakota), N.A. v. Martin*, 11 Misc.3d 219, 807 N.Y.S.2d 284 (Civ.Ct., Dec. 16, 2005). "[W]here a party is claiming a breach of written contract, but the existence of that contract or one of its essential terms must be proven by parol evidence, the contract is deemed oral and the five-year statute of limitations applies."  *Armstrong*, *supra*, 174 Ill. 2d at 288.  Judge Darrah recently held that where a contract is changed from time to time, and parol evidence is necessary to show which version applies, the contract is not a "written contract" allowing use of the 10-year statute.  *Classified Ventures, Inc. v. Wrenchead, Inc.*, 06 C 2373, 2006 U.S. Dist. LEXIS 77359 (N.D.Ill., Oct. 11, 2006).

   **2. Defendants' Other Unsupportive Defenses Do Not Defeat Certification**

  Defendants claim that the definitions fail for typicality because of the following: (1) other class members may be subject to the laws of other states; (2) other cardholder agreements  may or may not have arbitration agreements; (3) the cardholder agreements may contain class action waivers; (4) other class members may not be able to assert that the debt was incurred as a result of fraudulent charges.[4]  (Def.Mem., p. 15).

---

  [4] Defendants also argue that Plaintiffs' claims cannot be typical of the claims of the putative class members in Class C because Plaintiffs are not members of Class C.  However, as more fully discussed above in section I, Plaintiffs' have redefined Class C to more clearly reflect their claims.

First, Plaintiffs' class definitions are limited to lawsuits filed in Illinois. Illinois is thus the forum state and the Illinois statute of limitations applies. *FDIC v. Wabick*, 335 F.3d 620, 624 (7th Cir. 2003) ("In Illinois the statute of limitations is considered purely procedural and therefore the Illinois statute of limitation would automatically apply.").

Second, Defendants' arguments with respect to possible arbitration agreements and class action waivers fail for the same reason that the debt is subject to the five-year statute of limitations– there is no contract setting forth such terms. Also, Defendants waived arbitration for each and every member by filing lawsuits in state court. If they received a judgment the contracts are merged into the judgment. Under Illinois law, "The general rule is, that by a judgment at law or a decree in chancery, the contract or instrument upon which the proceeding is based becomes entirely merged in the judgment. By the judgment of the court it loses all of its vitality and ceases to bind the parties to its execution. Its force and effect are then expended, and all remaining legal liability is transferred to the judgment or decree. Once becoming merged in the judgment, no further action at law or suit in equity can be maintained on the instrument." *Doerr v. Schmitt*, 375 Ill. 470, 472, 31 N.E.2d 971 (1941). Defendants also waived arbitration in *this* case by not raising it, presumably because they have no contracts. Furthermore, arbitration clauses frequently do not apply to litigation against third party debt collectors such as Defendants, where the creditor is not a co-defendant. *Karnette v. Wolpoff & Abramson*, 444 F. Supp. 2d 640, 644-646 (E.D. Va. 2006) (arbitration clause held inapplicable to debt collectors such as Defendants).

Lastly, whether the debt was actually incurred by cardholder, as opposed to fraudulent use, does not change the fact that Defendants filed suit on a debt which was beyond the statute of limitations. The very purpose of a statute of limitations is to relieve debtors from having to prove such matters as fraud when the evidence is stale. The FDCPA protects consumers from unfair collection methods "regardless of whether a valid debt actually exists."

15

*Ramirez*, U.S. Dist. LEXIS 95972, *8.  "If a debt collector subjects a consumer to impermissible methods, the consumer has standing to sue under the FDCPA, whether the relevant debt was collectible or not." *Id*.

The typicality requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993).  Plaintiffs claim they suffered the same injury incurred by other class members by similar means – the filing of time-barred collection complaints.  Plaintiffs have met their burden.

C.    **Plaintiffs Are Adequate Class Representatives**

Defendants do not dispute that Plaintiffs' counsel is adequate, but instead put forth a series of attacks on the Plaintiffs' ability to act as class representatives claiming Plaintiffs lack knowledge about their claims and the litigation is being "driven" by their attorneys.  In order to depict Plaintiffs as "inadequate," Defendants mischaracterize Plaintiffs' deposition testimony - with a flourish.

The fact that Plaintiffs could not fully explain all of the aspects of their claim does not preclude them from adequately representing the class.  An adequate class representative must maintain only an "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Murray v. E*Trade Fin. Corp.*, 24- F.R.D. 392, 398 (N.D. Ill. 2006).

"[T]he Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-374 (1966), expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance.  Therefore, as one district court has explained: 'It is unrealistic to require a class action representative to have an in-depth grasp of the legal theories of recovery behind his or her claim.  It is more important that the representative actively seeks vindication of his or her rights and engages competent counsel to prosecute the claims." *In re PE Corp.*

16

*Securities Litigation*, 228 F.R.D. 102, 109 (D. Conn. 2005).  This is an opinion shared by the

Seventh Circuit.  "The class representative's role is limited.  It was found not to be enough to

defeat class certification in *Surowitz v. Hilton Hotels Corp.* (citation omitted), that the named

plaintiff did not understand her complaint at all, could not explain the statements in it, had little

knowledge of what the lawsuit was about, did not know the defendants by name, nor even the

nature of the misconduct of the defendants."  *Eggleston v. Chicago Journeymen Plumbers' Local

Union No. 130*, 657 F.2d 890, 896-898 (7th Cir. 1991) ("When it comes, for instance, to

determining whether 'the representative parties will fairly and adequately protect the interests of

the class,' or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox,

although with a pious countenance, to take charge of the chicken house.").

       The FDCPA, and the prohibition on filing suit on time-barred debts, is intended to

protect unsophisticated persons.  *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala.

1987).  To expect or require a class representative to have complete understanding of the factual

and legal issues at issue in a lawsuit would be contrary to the statute's purpose.

> It is not necessary that a representative 'be intimately familiar with every factual
> and legal issue in the case;' rather, it is enough that the representative understand
> the gravamen of the claim.

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 2004 U.S. Dist. LEXIS 10274 at *24-25 (N. D. Cal.

2004).

       Plaintiffs understand their duties as class representatives and have retained

experienced counsel who have brought a number of class actions on this point.

       When Plaintiff Herkert was asked what she believed her responsibilities as a class

representative were, she responded: "To make sure that everybody is treated fairly... To keep

their best interest [in mind]."  (Deposition of Nicole Herkert ("Herkert Dep."), Exhibit 3 to

Def.Mem., 63:24-64:10).  When Plaintiff Jackson was asked the same question she responded:

"To represent other people who have been through similar situations with one or all of these

companies that are listed as a defendant, to make sure that I am not just looking out for myself in

regards to getting this legal matter cleared up but more as a representative of other potential

people who are going through the same thing or have been through the same thing.  (Deposition

of Winona Jackson ("Jackson Dep."), Exhibit 4 to Def.Mem., 93:4-13).  When asked if she

would dismiss the case if the Defendants paid her one thousand dollars, Plaintiff Jackson

responded: "No.... Because that defeats the purpose of filing the lawsuit....it's not just me that

it's happening to...".  (Jackson Dep., at 107:2-13).

Plaintiffs understand the basic nature of their claims - that the Defendants filed

suit on a time-barred debt.  In fact, Plaintiff Herkert, when asked why she decided to file the

lawsuit, she testified that Defendants were:

> A.    Suing people wrongfully.
> Q.    What do you mean by wrongfully?
> A.    Suing people when they don't have a right to.
> Q.    ...why don't you think they had the right to sue you on the debt...
> A.    Because it was a time barred debt.

(Herkert Dep., at 31:14-32:5).

Plaintiff Jackson's testimony also showed that her main complaint regarding the

lawsuit filed by Defendants was "that they had sued me beyond the statute of limitations...".

(Jackson Dep., at 44:15-24).

As found the Court held in *Murray v. New Cingular Wireless Services*, 232

F.R.D. 295 (N.D. Ill. 2005), proficient knowledge of the law is not required of any litigant; the

legal, and strategic, moves made in the course of litigation may be selected by counsel.

> Apparently Cingular expects Murray to have the same knowledge of the case as
> his attorneys have.  Cingular argues that during his deposition Murray was unable
> to show that he understood the basis for settling a class, nor could he recall the
> terms of a settlement for a case he was previously involved in, or that he was
> aware that his attorneys had filed certain motions in the current case.
> Understanding the minutia of a case is not a prerequisite to being a class
> representative.

*Murray*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

18

The fact that the Plaintiffs were unclear on the application of the Illinois Collection Agency Act ("ICAA") to their claims or why the ICAA claim "was inserted by their lawyers" has little bearing on Plaintiffs' ability to adequately represent the classes. A class representative "need not understand the larger legal theories upon which her case is based." *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291, 299 (N.D. Ill., 2007), citing *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("Experience teaches that it is counsel...not the named parties, who direct and manage these actions...")(internal citations omitted).

Defense counsel's attempts to harass Plaintiffs' through a series of questioning requiring Plaintiffs' to establish for each paragraph of the complaint, the legal "basis for this allegation," when clearly those allegation were drafted by their attorneys, is also not evidence of any inability to act as a class representative:

> Q.   So you don't have any understanding of their computerized records or even if they have computerized records, is that right?
> A.   I don't know how they work their business.
> Q.   Can you just answer the question?
> A.   I don't understand your question.
> ***
> Q.   ... Paragraph 58 says: On information and belief based on an examination of multiple files, in no or virtually no case do defendants attach–attached a signed contract. Which Defendants are you referring to in this paragraph?
> ***
> A.   All of them, yes.
> ***
> Q.   What's the basis of this allegation then? ...
>
> A.   I don't know.
> ***
> Q.   Let's move on to Paragraph 87... Tell me what you know about the Sadler case.

(Herkert Dep., at 55-61).

The same line of inappropriate questions were conducted in Jackson's deposition:

> Q.   Okay. So what is the basis for this allegation after based on examination of multiple files?

> A.    It's a legal matter, so I entrusted my lawyer to do whatever research was necessary to file the lawsuit.

(Jackson Dep., Exhibit 4 to Def.Mem., 86:7 -12).  Apparently, according to defense counsel, the plaintiff and not counsel is supposed to review the court records.

Plaintiffs properly  deferred to counsel's opinion on interpreting the law and in making decisions in the litigation.  This does not mean that Plaintiffs did not know anything about the complaint allegations, but that they are allowing their attorneys to do what they are trained to do, and what they are experienced in doing—pursuing the rights of clients who do not have a good understanding of the law and of how to pursue legal claims on their own. "Particularly where members of the class are laypersons without any necessary business or legal experience and the claims are small, detailed knowledge of the claim is inappropriate, approaching irrelevance."  *Schwab v. Philip Morris USA, Inc.*, 2006 U.S. Dist. LEXIS 73197 at *148 (E.D.N.Y. 2006).

Plaintiffs are certainly  more capable than the plaintiffs in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966), and *Jones v. CBE Group, Inc.* 215 F.R.D. 558 (D. Minn. 2003), upon which Defendants rely.  It surely cannot be said that Plaintiffs are  "wholly ignorant" (*Surowitz*, 383 U.S. at 367, (plaintiff found to be adequate class representative)) of the essentials of the case.  As stated earlier, they each testified at their depositions that they were seeking to represent a group of people who received the same treatment from Defendants, namely being sued on a time-barred debt.  Plaintiffs, working in conjunction with their attorneys, have served the interests of the class well by pursuing the case and participating in discovery.

**D.    Because There Are Common Questions of Law and Fact, and Because Individual Questions Do Not Predominate, The Court Should Certify Plaintiff's Class**

Defendants argue that there are no common questions of law or fact and individual issues predominate because factual determinations will allegedly be required to

20

determine whether Defendants threatened or filed lawsuits on time-barred debts.

In support of their arguments, Defendants present another rehashing of the same "*Sadler*" argument  to refute commonality and predominance which simply ignores the blatant distinction between these two cases.  It does not matter that Defendants were unable to determine through their computer system who received a "Pre-Legal" collection letter in *Sadler*.  The proposed class definitions here, turn on whether Defendants attach a signed written contract to their collection complaints to trigger the ten-year statute of limitations. The classes can be easily ascertained and determined from the state court filings themselves as Plaintiffs have shown through their submission of 35 complaints belonging to putative class members.

Contrary to Defendants characterization, the class claims share an overarching common factual basis.  The claims are premised on Defendants' standardized practice of filing collection complaints without attaching a signed written contract and which exhibit a delinquency date of more than five years.  *Ramirez II,* 2008 U.S. Dist. LEXIS 24921, *15; *Keele v. Wexler*, 149 F.3d 589, 549 (7th Circuit 1998) (common set of operative facts usually present when defendants engaged in "standardized conduct").   Common legal questions are also present, namely whether the debt-collection complaints are subject to a five-year limitations period, and whether filing time-barred debt collection actions violates the FDCPA.  *Ramirez II,* 2008 U.S. Dist. LEXIS 24921, *15.

Certification should not be thwarted simply because Defendants speculate that they may raise various unsupported defenses against different class members.  *Id.*; *Scandoval v. City of Chicago,* 2007 U.S. Dist. LEXIS 77829, at *7 (N.D. Ill. 2007) (defendant cannot thwart class certification by merely raising unsupported defenses); *Hurt v. Midrex Division of Midland Ross Corp.*, 556 P.2d 1337, 1339 (1976)(court rejected argument that a Defendant "can automatically prevent [a class] action from proceeding by dreaming up a theoretical defense requiring individual inquiries, for which there is little basis in fact....").

The Court's obligation to "'probe beyond the pleadings before coming to rest on the certification question'," *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001), applies to defendants as well as plaintiffs. The rule contemplates that "the court, in ruling whether it is proper to proceed with any class action, has the obligation to decide if a defendant is pressing an issue or a defense which possesses sufficient basis and substance to justify its litigation in 'numerous' instances or merely an issue or defense which is being presented for the sole purpose of avoiding a class action. * * *" *Hurt*, 556 P.2d at 1339.

Critically absent from Defendants' response is any evidence that any class member's complaint actually attached a "written contract" as that term is used in 735 ILCS 5/13-206. Defendants' speculative ability to produce a signed agreement that is not subject to change by notice does not warrant a debt collector asserting the 10-year statute of limitations. Defendants' failure to attach written contracts to its collection complaints mandates that the underlying contracts be deemed unwritten, and subject to the five-year limitations period. This common factual and legal issue can be determined through generalized evidence rather than individualized inquiries. *Ramirez II*, at *21.

*Foreman v. PRA III, LLC* 2007 U.S. Dist. LEXIS 15640, is on point. In *Foreman*, the plaintiff challenged, the defendants' practice of bringing state court collection actions on debts older than five years without having "written contracts" as defined by 735 ILCS 5/13-206. The court held that individual issues did not predominate as to whether a written contract existed, because generalized evidence that no written contracts existed would be sufficient to determine whether defendants brought time-barred debt claims against class members. *Id.* at *17. The court specifically rejected arguments like those made by Defendants here:

> In the court's view, *Brown* does not support Defendants' position. The [*Brown*] court's reasoning leaves no doubt that the essential terms of a contract must be ascertainable "from the written instrument *itself";* otherwise, the instrument is not considered a complete written contract for statute of limitations purposes. *Id. at 940-41* (emphasis added). In this case, because a complete written contract is

22

> required to qualify for the ten-year statute of limitations, other documents or
> testimonial evidence from which the court could ascertain the terms of the
> debtor's agreement are not sufficient to qualify a contract as "written" for statute
> of limitations purposes. Accordingly, in order to determine liability to any "time-
> barred debt sub-class," the court would not need to undertake the individual
> inquiries that Defendants urge would be necessary, and generalized evidence
> would suffice to determine whether Defendants had violated the FDCPA in
> bringing claims against members of this sub-class.

*Foreman*, 2007 U.S. Dist. LEXIS 15640, *53-56.  The Court ultimately declined to certify the

class on numerosity grounds, but recognized that predominance was satisfied.

　　　　　Here, the overriding common question with respect to time-barred debts is

whether Defendants failed to attach to its collection complaints a signed written contract.  Based

on this, the Court would not need to undertake individual inquiries as Defendants speculate.  It

follows that Defendants' claimed "individual issues" are wholly theoretical, indeed chimerical,

and should be disregarded.  *Foreman*, 2007 U.S. Dist. LEXIS 15640, *53-56.

　　　　　This case is distinguishable from cases like *Sparano v. Southland Corp*., 1996

U.S. Dist. LEXIS 17485 (N.D. Ill. 1996) in which 7-11 franchise owners claimed that Southland

Corporation had breached its contracts with them by failing to spend sufficiently on the upkeep

of the stores and on advertising.  In holding that the plaintiffs had failed to establish

commonality, the court held that:

> [I]it will be necessary to determine the circumstances and conditions at
> each franchise to determine what expenditures Southland was obligated to
> make under the contract since Southland is only obligated to advertise
> when 'in its sole opinion desires' and make repairs 'when it deems
> necessary'. Because resolution of plaintiffs' common legal issue is
> dependent upon factual determinations that will be different for each
> purported class plaintiff, I find the commonality requirement is not met.

*Sparano*, 1996 U.S. Dist. LEXIS 17485, at *7-8.  No such complex inquiry is necessary in this

case. The only inquiry here is whether Defendants file suit against Illinois residents on a credit

card debt that was older than five years. *Foreman*, 2007 U.S. Dist. LEXIS 15640, *53-56.

　　　　　Finally, Defendants, in a last-ditch effort to refute commonality and

23

predominance, attempt to relate this case to the Court's decision in *Wahl v. Midland Credit Management, Inc.* 243 F.R.D.291 (N.D. Ill. 2007), which involved a claim based on Defendants "continuing collection efforts through a third-party collector despite the existence of a valid dispute." This Court held that "Class B does not take issue with an undisputed and standardized practice or policy, or like Class A, contest defendant's debt collection practices as illustrated by standardized letters." Here, Plaintiffs *are* complaining about Defendants' standardized debt collection practices, more specifically, their standardized practice of filing suit on time-barred debts. Thus, Defendants argument that "Plaintiffs are asking this Court to certify all three classes on the 'hypothesis' that since Midland Funding and MRC sued Plaintiffs Herkert and Jackson...more than five year after their debt was incurred, it must be true that [Defendants] have each done so to more than 40 other individuals"(Def.Mem., p. 24), completely ignores the 35 *identical* complaints which have already been produced and which make Plaintiffs' "hypothesis" a fact.

### E.    A Class Action Is A Superior Method For Adjudication

Defendants further claim that individuals should file their own lawsuits, because there is "no financial bar." (Def.Mem., p. 25). The inherent problem with Defendants' position here is that if class certification were to be denied in this case, then the only way for those who have been affected by Defendant's violation of the FDCPA would be to file individual suits. Defendants file thousands of lawsuits in Illinois every year. Plaintiff contends that Defendants filed suit against thousands of individuals in which the debt was older than 5 years. The time and expense that would be involved in filing even a fraction of these cases – all of which have the same fact pattern, and concern the same legal principles – would be wasteful. Contrary to Defendants' assertion, Rule 23(b)(3) was designed to solve this problem; taking care of the identical claims of thousands of people at once through a class action is superior to having thousands of identical individual claims being tried piecemeal. *Murray v. GMAC Mortgage*

24

*Corp.*, 434 F. 3d 948 (7th Cir. 2006).

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening papers, the proposed classes meet the requirements of Rules 23(a) and (b)(3) and Plaintiffs respectfully request that this Court certify this action as a class action and designate Edelman, Combs, Latturner & Goodwin, LLC counsel for the classes.

Respectfully submitted,

 s/ Cassandra P. Miller

Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

25

### CERTIFICATE OF SERVICE

        I, Cassandra P. Miller, hereby certify that on September 12, 2008, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following:

Richard E. Gottlieb (rgottlieb@dykema.com)
James W. McConkey (jmcconkey@dykema.com)
Renee L. Zipprich (rzipprich@dykema.com)
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
FAX (312) 627-2302

Theodore W. Seitz (tseitz@dykema.com)
Dykema Gossett PLLC
200 Townsend Street, Suite 900
Lansing, MI 48933
FAX (517) 374-9191

                           s/ Cassandra P. Miller
                           Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)