IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE HERKERT and ) <br> WINONA JACKSON, on behalf of ) <br> themselves and all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MRC RECEIVABLES CORP., ) <br> MIDLAND FUNDING NCC-2 CORP., ) <br> MIDLAND CREDIT MANAGEMENT, INC., ) <br> and ENCORE CAPITAL GROUP, INC., ) <br> ) <br> Defendants. ) | No. 08 C 760 <br><br> Judge Castillo |

## MEMORANDUM OPINION AND ORDER

Nicole Herkert ("Herkert") and Winona Jackson ("Jackson") (collectively "Plaintiffs") filed this class action suit against MRC Receivables Corp. ("MRC"), Midland Funding NCC-2 Corp. ("NCC-2"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. ("Encore") (collectively "Defendants"), for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/9(a)(20). Presently before the Court are the parties' cross-motions for summary judgment. (R. 143, Pls.' Mot. for Summ. J. ("Pls.' Mot."); R. 146, Defs.' Mot. for Summ. J. ("Defs.' Mot.").) Plaintiffs move for summary judgment in their favor on the FDCPA claims, and Defendants seek summary judgment in their favor on all of Plaintiffs' claims. (R. 143, Pls.' Mot.; R. 146, Defs.' Mot.) For the following reasons, Plaintiffs' motion is granted, and Defendants' motion is denied.

1

## RELEVANT FACTS[1]

MCM, NNC-2, and MRC are all subsidiaries of Encore, a publicly traded Delaware corporation with its principal place of business in San Diego, California. (R. 181, Defs.' Resp. to Pls.' Facts ¶¶ 14, 26.) Encore describes itself as "a leading distressed consumer debt management company" and a "purchaser and manager of charged-off consumer receivable portfolios." (Id. ¶ 15.) MCM, NCC-2, and MRC are also Delaware corporations with their principal places of business in San Diego. (Id. ¶¶ 5, 7-8, 15.) MRC is in the business of buying charged-off debts and holding charged-off debts purchased by Encore. (Id. ¶ 5.) MRC either uses its own assets or attains funds from Encore through inter-company transfers to purchase debts. (Id. ¶ 4.) NCC-2 is also in the business of buying charged-off debts and holding charged-off debts purchased by Encore. (Id. ¶¶ 7-8.) MCM is responsible for collecting the charged-off debts held in the names of MRC, NCC-2, and other subsidiaries of Encore. (Id. ¶ 11.) MCM, NCC-2, and MRC all hold collection agency licenses with the State of Illinois. (Id. ¶ 12.)

On November 28, 2007, MRC sued Jackson in the Circuit Court of Cook County, seeking to collect a delinquent credit card debt incurred for personal, family, or household purposes. (Id. ¶ 35.) Attached to the complaint was an affidavit from an employee of MCM, the servicer of the account on behalf of MRC, indicating that the date of default on the account was October 4, 2002, more than five years prior to the filing of the action. (Id. ¶ 37.) Also on November 28, 2007, NCC-2 sued Herkert in the Circuit Court of Cook County, seeking to collect a delinquent credit card debt incurred for personal, family, or household purposes. (Id. ¶ 36) Attached to the

---

[1] These facts are derived from the parties' statements of fact filed pursuant to Local Rule 56.1 and are undisputed unless otherwise noted.

2

complaint was an affidavit from an employee of MCM, the servicer of the account on behalf of NCC-2, indicating that the date of default on the account was July 24, 2000, more than five years prior to the filing of the action. (*Id.* ¶¶ 38-39.)

Approximately 6,168 similar suits were filed by Defendants on defaulted credit card accounts with delinquency dates of more than five years prior to the filing of the action. (*Id.* ¶ 42.) When filing these actions, Defendants regularly attached a form credit card agreement that was not signed by the debtor. (*Id.* ¶ 46.) To prove entitlement to the debt at trial, a witness's testimony would be required to establish that the credit card agreement belonged to a particular debtor and that no modifications had been made to the form credit card agreement. (*Id.* ¶ 48.)

Data Search NY, Inc. d/b/a TrakAmerica ("TrakAmerica") is hired by Defendants as a legal management company which places accounts with law firms to file collection suits against debtors. (*Id.* ¶ 54.) MCM provides charts to TrakAmerica setting forth the statute of limitations on various debts for Illinois. (*Id.* ¶ 55.) MCM has an in-house law department with approximately five attorneys. (*Id.* ¶ 62.) TrakAmerica uses the information provided by MCM to determine if an account should be forwarded for litigation. (*Id.* ¶ 56.) One of the collection firms regularly used by TrakAmerica is the law firm of Arthur B. Adler & Associates ("Adler"). (*Id.* ¶ 57.) Adler is the firm that filed the state court suits against the named Plaintiffs in this case. (R. 162, Pls.' Resp. to Defs.' Facts ¶ 35.) When TrakAmerica forwards an account to Adler, it sends certain information, including the debtor's personal information, last known address, phone number, social security number, amount due, date of last payment, charge-off date, and the date Defendants have determined to be the statute of limitations cut-off. (R. 181, Defs.' Resp. to Pls.' Facts ¶ 58.) The statute of limitations cut-off submitted by Defendants is

used by the collection law firms as a reference point. (*Id.* ¶ 59.) The calculation of the statute of limitations is frequently not reviewed by an attorney after it is sent to TrakAmerica. (*Id.* ¶ 60.)

Until 2008, Defendants and Adler believed that the applicable statute of limitations for collecting delinquent credit card debts was ten years in Illinois. (R. 162, Pls.' Resp. to Defs.' Facts ¶ 44.)

## PROCEDURAL HISTORY

Plaintiffs brought this action in February 2008. (R. 1, Compl.) In April 2008, Plaintiffs filed their First Amended Complaint, alleging that Defendants have a policy and practice of filing or causing the filing of time-barred suits to collect on defaulted credit card debts. (R. 31, Pls.' First Am. Compl.) In Count I, Plaintiffs allege that NCC-2 engaged in deceptive and unfair practices in violation of Section 1692e and 1692f of the FDCPA by filing or causing the filing of time-barred lawsuits against Illinois residents.[2] (*Id.* ¶¶ 82-87.) In Count II, Plaintiffs allege similar violations of the FDCPA by MRC. (*Id.* ¶¶ 88- 93.) In Count III, Plaintiffs allege that MCM violated the ICAA[3] by filing or causing the filing of time-barred lawsuits against Illinois residents. (*Id.* ¶¶ 94-99.)

---

[2] Section 1692e of the FDCPA provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692f of the FDCPA states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

[3] The ICAA prohibits a collection agency from "[a]ttempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist." 225 ILCS 425/9(a)(20).

4

In December 2008, this Court granted Plaintiffs' motion for class certification, permitting Plaintiffs to represent the following classes:

> Class A: (a) all natural persons (b) sued in the name of NCC-2 (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of the final statement of account as given in the complaint, or the date of last payment if determinable, is more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.
>
> Class B: (a) all natural persons (b) sued in the name of MRC (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of the final statement of account as given in the complaint, or the date of last payment if determinable, is more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.
>
> Class C: (a) all natural persons (b) sued at the direction of MCM or for which MCM caused the lawsuit to be filed (c) in an Illinois court (d) on an alleged credit card debt (e) where the complaint did not attach a signed contract, or attached a purported contract that is subject to change by notice, (f) where the date of the final statement of account as given in the complaint, or the date of last payment if determinable, is more than five years prior to the filing of suit, and (g) the suit was filed on or after a date one year prior to this action, and not more than 20 days after the filing of this action.

*Herkert v. MRC Receiv. Corp.*, 254 F.R.D. 344, 353-54 (N.D. Ill. 2008).

Both sides now move for summary judgment. (R. 143, Pls.' Mot.; R. 146, Defs.' Mot.) Plaintiffs argue that they are entitled to summary judgment on the issue of Defendants' liability under the FDCPA, because there is no dispute that Defendants had a practice of filing suit on debts that were time-barred. (R. 152, Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem.") at 5-12.) Defendants, in turn, argue that the suits were not time-barred, or alternatively, that they

5

have a bona fide error defense barring Plaintiffs claims because they reasonably believed the suits were not time-barred. (R. 148, Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") at 11-18.) Defendants also argue that Plaintiffs' ICAA claim fails as a matter of law because Plaintiffs have not established that they suffered any actual damages. (*Id.* at 19-20.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In deciding a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). When deciding cross-motions for summary judgment, the Court must "constru[e] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008).

## ANALYSIS

### I. FDCPA

#### A. Nature Of Claims

As a preliminary matter, Defendants argue that Plaintiffs' FDCPA claims fail as a matter of law because Plaintiffs "cannot establish an FDCPA violation based solely on a supposed

procedural defect in the state court pleadings." (R. 148, Defs.' Mem. at 10.) In Defendants' view, Plaintiffs' FDCPA claims are premised on Defendants' alleged failure to attach certain documents to the complaints filed in state court. (*Id.*) While Defendants may be correct that a state pleading defect does not amount to an FDCPA violation, Defendants have misconstrued Plaintiffs' claims. Plaintiffs' FDCPA claims are challenging Defendants' practice of filing suit on time-barred debts, not any procedural defect in the state complaints. (*See* R. 31, Pls.' First Am. Compl. ¶¶ 3, 56-58.) The First Amended Complaint does contain allegations that Defendants did not attach written contracts signed by the debtor to the complaints filed in state court (*see id.* ¶¶ 35-36), but it is clear that these allegations were made simply to support Plaintiffs' argument that the five-year statute of limitations applicable to oral agreements applied to these suits. *See Progressive Ins. Co. v. Williams*, 884 N.E.2d 735, 737 (Ill. App. Ct. 2008) (when a claim is founded on a written contract, a copy of the contract must be attached to the pleading); *see also Held v. Held*, 137 F.3d 998, 1001 (7th Cir. 1998) (under Illinois law, even where a written contract exists between the parties, if parole evidence is needed to make the contract complete, the five-year statute of limitations applicable to oral contracts applies); *Toth v. Mansell*, 566 N.E.2d 730, 733 (Ill. App. Ct. 1990) (contract must meet stringent writing requirements for ten-year statute of limitations to apply).

Defendants' failure to attach a signed contract to the complaints filed in state court is not the conduct being challenged in this suit; it is Defendants' alleged practice of suing to collect on time-barred debts. (*See* R. 31, Pls.' First Am. Compl. ¶¶ 3, 56-58.) Numerous courts, both inside and outside this District, have held that filing or threatening to file suit to collect a time-barred debt violates the FDCPA. *See Ramirez v. Palisades Collection LLC*, No. 07-3840, 2008

7

WL 2512679 (N.D. Ill. Jun. 23, 2008); *Parkis v. Arrow Fin. Servs.*, No. 07-410, 2008 WL 94798 (N.D. Ill. Jan. 8, 2008); *see also Goins v. JBC & Assocs.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987). As our esteemed colleague Judge Suzanne B. Conlon reasoned, bringing or threatening to bring a lawsuit "which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate." *Ramirez*, 2008 WL 2512679, at *5. The Court finds the analysis of these courts persuasive, and therefore rejects Defendants' argument that Plaintiffs' FDCPA claims fail as a matter of law.

## B.  Applicable Statute of Limitations

The next issue to be resolved is whether the actions filed against class members were in fact time-barred. Defendants argue in their initial motion that the applicable statute of limitations for collecting a delinquent credit card debt is ten years, whereas Plaintiffs argue that the applicable deadline is five years. (R. 148, Defs.' Mem. at 7-10; R. 152, Pls.' Mem. at 4-10.) The issue was put to rest in *Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876 (Ill. App. Ct. 2009), decided while the summary judgment motions were being briefed, in which the Illinois Appellate Court held that actions to collect a defaulted credit card debt are subject to the five-year statute of limitations applicable to oral contracts under Illinois law. *Id.* Accordingly, there can no longer be any dispute that the actions filed against class members were in fact time-barred. The question remains, however, whether Defendants are liable under the FDCPA: Defendants assert that they are entitled to a bona fide error defense based on their mistaken belief about the applicable limitations period. (R. 148, Defs.' Mem. at 14-18; R. 183, Defs.' Reply 1-

10.)

## C. Bona Fide Error Defense

Defendants argue that they are excused from violating the FDCPA because of an "unintentional bona fide error of law," namely, their mistaken belief that the applicable statute of limitations was ten years. (R. 148, Defs.' Mem. at 14.) Under the FDCPA, a debt collector may not be held liable "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). A defendant is entitled to invoke the bona fide error defense only if it can show that the violation: (1) was unintentional; (2) resulted from a bona fide error; and (3) occurred despite the defendant's maintenance of procedures reasonably adapted to avoid such error. *Ruth v. Triumph Partnerships*,---F.3d---, 2009 WL 2487092, at *11 (7th Cir. 2009); *Kort v. Diversified Coll. Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

It is an "open question" whether the bona fide error provision applies to legal errors, or just to procedural and clerical errors. *Ruth*, 2009 WL 2487092, at *11. The Courts of Appeals are divided on this question, and the Supreme Court recently granted certiorari to resolve the Circuit split. *Id.* (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008), *cert. granted*, 129 S. Ct. 2863 (2009).) The Seventh Circuit has not "taken a side in this intercircuit split," but recently held that if the bona fide error defense is available at all for legal errors, it is only available to debt collectors "who can establish that they reasonably relied on either: (1) the legal opinion of an attorney who has conducted the appropriate legal research, or (2) the opinion of another person or organization with expertise in the relevant area

9

of law---for example, the appropriate government agency." *Ruth*, 2009 WL 2487092, at *11. In this case, there is nothing to indicate that Defendants relied on the opinion of a governmental agency or similar entity in determining that the statute of limitations was ten years. The question, then, is whether Defendants have established that they reasonably relied on the legal opinion of an attorney who conducted the appropriate legal research. *Id.* The Court concludes that they have not.

To understand Defendants' bona fide error defense, some background is necessary on Illinois contract law. As a general matter, Illinois law provides that actions on "unwritten contracts, expressed or implied," are subject to a five-year statute of limitations. 735 ILCS 5/13-205. Actions on "written contracts" or "other evidences of indebtedness in writing" are subject to a ten-year statute of limitations. 735 ILCS 5/13-206. For a document to be considered a "written contract" or "other evidence of indebtedness" covered by the ten-year statute of limitations, it must identify the parties, contain the signatures of the parties, and set forth all terms of the parties' agreement. *Portfolio Acquisitions,* 909 N.E.2d at 881; *Brown v. Goodman,* 498 N.E.2d 854, 856-57 (Ill. App. Ct. 1986). Thus, even if there is a written agreement between the parties, if testimonial or other parol evidence is required to establish any of the above elements, the agreement is treated as an oral contract for statute of limitations purposes. *Held,* 137 F.3d at 1002; *Portfolio Acquisitions,* 909 N.E.2d at 881; *Toth,* 566 N.E.2d at 733. As one Illinois Appellate Court explained:

> Illinois courts give a strict interpretation to the meaning of a written contract within the statute of limitations. For statute of limitations purposes, a contract is considered to be written if all the essential terms of the contract are in writing and are ascertainable from the instrument itself. . . . If parol evidence is needed to make the contract complete, then the

10

contract is treated as being oral under the statute of limitations. *Brown*, 498 N.E.2d at 856-57. This is a well-established principle that has been followed by Illinois courts for many years. *See, e.g., Toth*, 566 N.E.2d at 733; *Brown*, 498 N.E.2d at 856-57; *Weaver v. Watson*, 474 N.E.2d 759, 762 (Ill. App. Ct. 1984).

Against this backdrop, Defendants assert that they reasonably believed the statute of limitations for collecting a delinquent credit card debt was always ten years, based on their reading of *Harris Trust & Savs. Bank v. McCray*, 316 N.E.2d 209 (Ill. App. Ct. 1974). (R. 167, Defs.' Opp'n to Pls.' Mot. at 11.) In *Harris Trust*, the Illinois Appellate Court was called to decide whether an action to recover a delinquent credit card debt was an action on a written contract to pay money or a contract for the sale of goods governed by the Uniform Commercial Code ("UCC"). *Harris Trust*, 316 N.E.2d at 209-10. The Appellate Court concluded that, given the complex nature of a credit card arrangement, which involves a "tripartite relationship between the issuer bank, the cardholder, and merchants participating in the system," the agreement must be treated as essentially a loan agreement rather than simply a contract for the sale of goods governed by the UCC. *Id.* Accordingly, the Appellate Court concluded that the ten-year statute of limitations governing written contracts applied, rather than the four-year limitations period contained in the UCC. *Id.*

Although the *Harris Trust* court applied a ten-year statute of limitations to an action to recover a delinquent credit card debt, the Appellate Court was not faced with the specific issue of whether the statute of limitations for oral agreements or written agreements applies when the contract at issue does not meet all the necessary writing requirements. *See id.* The significance of this distinction was noted by our distinguished colleague Judge David H. Coar, who held that

11

under Illinois law, actions to collect a delinquent credit card debt are subject to the five-year statute of limitations applicable to oral contracts when there is no written agreement signed by the debtor attached to the complaint. *Parkis*, 2008 WL 94798, at *5. Shortly after the *Parkis* decision, Judge Conlon was faced with the same issue, and also determined that the ten-year limitations period did not apply to an action to collect a delinquent credit card debt because parol evidence would be needed to determine the debt collector's right to recover. *Ramirez*, 2008 WL 2512679, at *3-4. In both *Ramirez* and *Parkis*, the Courts noted defendants's reliance on *Harris Trust*, but found that case inapplicable because it did not address the precise issue of whether a contract constituted an oral or written agreement for statute of limitations purposes.[4] *Id.* at *4; *Parkis*, 2008 WL 94798, at *6.

As noted above, the issue was finally put to rest when the Illinois Appellate Court decided *Portfolio Acquisitions* in May 2009. In that case, the Illinois Appellate Court held that actions to collect a delinquent credit card debt are governed by the five-year limitations period applicable to oral agreements whenever parol evidence is required to show the essential terms of the contract or the relationship between the parties. *Portfolio Acquisitions*, 909 N.E.2d at 881-82. The *Portfolio Acquisitions* court specifically discussed *Harris Trust* and did not overrule that case, instead noting that *Harris Trust* never addressed the issue of whether a credit card agreement is considered written or oral for statute of limitations purposes. *Id.* at 883. The Appellate Court expressly rejected the debt collector's "broad reading" of *Harris Trust*, based on

---

[4] After the *Parkis* decision, Defendants stopped referring cases for collection where the delinquency date was more than five years earlier. (R. 181, Defs.' Resp. to Pls.' Facts ¶ 66.) As for cases that were already pending at the time *Parkis* was decided, Adler was not sure what to do with these cases, and Defendants did not direct Adler to dismiss them. (*Id.* ¶¶ 65-66.)

12

the well-settled Illinois case law regarding the writing requirements that must be met for the ten-year limitations period to apply. *Id.* at 884.

This "broad reading" of *Harris Trust* is the same one advanced by Defendants here in support of their bona fide error defense. Defendants assert that for years they assumed based on *Harris Trust* that the statute of limitations for actions on delinquent credit card debts was always ten years. (*See* R. 181, Defs.' Resp. to Pls.' Facts ¶¶ 27, 68-70.) In Defendants's view, prior to *Parkis* "there was no question that the statute of limitations on Illinois credit card debt was ten years." (R. 148, Defs.' Mem. at 18.) This is at best wishful thinking on Defendants' part. As the *Parkis*, *Ramirez*, and *Portfolio Acquisitions* decisions all make clear, nowhere does *Harris Trust* reach this holding, and such a broad reading of *Harris Trust* is contrary to the significant body of Illinois law addressing the stringent writing requirements necessary to trigger the ten-year limitations period. *See, e.g., Brown*, 498 N.E.2d 856-57; *Toth*, 566 N.E.2d at 733. More than ten years ago, the Seventh Circuit also recognized these stringent writing requirements in construing Illinois contract law. *See Held*, 137 F.3d at 1002.

During discovery, Defendants refused to answer questions on grounds of privilege regarding whether their attorneys researched this body of law, or precisely what they considered when determining that a blanket ten-year limitations period applied to collection actions. (R. 182, Defs.' Resp. to Pls.' Add. Facts ¶¶ 6-9.) An attorney from Adler also believed that the limitations period was ten years, but he acknowledged that he had not done any recent research on what constitutes a written contract for statute of limitations purposes (he did not know whether anyone else at the firm had), nor had he reviewed some of the key case law on this

13

issue.[5] (*Id.* ¶ 4.) He refused to answer questions about what advice, if any, he gave to Defendants on this issue. (*Id.* ¶ 8.) It is Defendants' burden to establish that they relied on the "legal opinion of an attorney who has conducted the appropriate legal research," and based on the record, they have not done so.[6] *See Ruth*, 2009 WL 2487092, at *11. "[A]pplying the *bona fide* error defense here would essentially reward a business's ignorance of the law." *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir. 2008).

Although Defendants point out that they had procedures in place to ensure that suits were filed within the limitations period, it is clear that these procedures were only designed to prevent procedural or clerical errors, not legal ones. Under these procedures, files were turned over to Adler with a statute of limitations deadline already calculated. (R. 181, Defs.' Resp. to Pls.' Facts ¶ 59.) Once the files were turned over, they were reviewed by a "new files person" at

---

[5] An attorney from another law firm regularly used by Defendants to collect credit card debts, Blatt, Hasemiller, Leibsker & Moore, LLC ("Blatt"), also declined to answer questions regarding what advice, if any, he gave Defendants about the applicable limitations period. (*See* R. 182, Defs.' Resp. to Pls.' Add. Facts ¶ 7.) In the case of both named Plaintiffs, Defendants first referred their accounts to Blatt for litigation, but Blatt turned the accounts down. (*Id.* ¶ 18.) The attorney from Blatt refused to answer questions about the reasons the accounts were turned down. (*Id.* ¶ 20.)

[6] As Defendants' point out, the Seventh Circuit stated in a footnote in *Ruth* that it was not holding that a debt collector "necessarily must consult with an attorney or government agency to get individualized approval of every communication it wishes to send out," and that in some cases "reliance on general advice from a qualified attorney . . . might well be sufficient to support a claim of bona fide error." *Ruth*, 2009 WL 2487092, at *13 n.10. The Court disagrees with Defendants that this language is of any assistance to them in this case. (*See* R. 192, Defs.' Resp. to Pls.' Notice of Additional Authority.) Plaintiffs are not challenging an individual communication that was sent out, but rather, Defendants' practice of filing thousands of time-barred suits against Illinois residents. (R. 31, Pls.' First Am. Compl.) Moreover, for the reasons articulated above, Defendants have not established that they relied on "general advice from a qualified attorney" who reasonably concluded that a blanket ten-year statute of limitations applied to actions to collect a delinquent credit card debt under Illinois law.

Adler who rechecked certain information, including filing deadlines. (R. 150, Pls.' Facts, Ex. J, Fratantoni Dep. at 11-12.) This person was not an attorney and did no legal analysis of the deadline for filing under the applicable law; instead, her function was to recheck whether the statute of limitations period had expired, using the calculation given to her by the firm's attorneys. (*Id.*) Although this system might have prevented clerical errors, it was not designed to prevent the type of legal error that occurred here. *See Johnson v. Riddle*, 443 F.3d 723, 730-31 (10th Cir. 2006) ("Procedures which may be reasonably adapted to avoiding a clerical error. . . cannot shield a [defendant] from liability for legal errors.").

For all these reasons, the Court rejects Defendants' bona fide error defense. As in *Ruth*, there is no need to stay this case pending the Supreme Court's ruling on the viability of a legal error defense under the FDCPA because "a thorough review of the record convinces us that the steps the defendants took were not sufficient to qualify for the defense" in any event. *See Ruth*, 2009 WL 2487092, at *11.

### D. Encore's Liability

Defendants also argue that Encore cannot be held liable under the FDCPA because it is not a "debt collector" and is instead simply a holding company that purchases charged-off debts. (R. 167, Defs.' Opp. to Pls.' Mot. for Summ. J. ("Defs.' Opp.") at 14-15.) The FDCPA defines a debt collector as "any person . . . who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 875 (N.D. Ill. 2006). The Seventh Circuit has specifically held that the purchaser of a

15

defaulted debt is considered a "debt collector" for purposes of the FDCPA, thus foreclosing Defendants' argument. *See Ruth*, 2009 WL 2487092, at *4; *McKinney v. Cadleway Props.*, 548 F.3d 633, 639 (7th Cir. 2008).

To the extent Defendants are arguing that Encore cannot be considered a debt collector here because it was not directly involved in the collection activities at issue, this argument is also unavailing. (*See* R. 167, Defs.' Opp'n at 14.) "The inquiry as to whether a person is a debt collector is not case specific, but rather depends on whether that person 'regularly' collects debts." *Schutz*, 465 F. Supp. 2d at 875. Courts in this District have specifically concluded that Encore is regularly involved in debt collection activities. *See Miller v. Midland Credit Mgmt., Inc.*, 621 F. Supp. 2d 621, 634-35 (N.D. Ill. 2009) (finding Encore to be a debt collector under the FDCPA); *Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2007 WL 2874059, at *14-16 (N.D. Ill. Sept. 25, 2007) (same). As these courts observed, Encore's own filings with the Securities and Exchange Commission indicate that it is in the business of collecting debts. (*See* R. 181, Defs.' Resp. to Pls.' Facts ¶¶ 15-17.) For instance, Encore states that it "has been in the collection business for over 55 years and started purchasing portfolios for [its] own account approximately 18 years ago." (R. 150, Pls.' Facts, Ex. G at 1.) Encore describes itself as a "leading consumer debt management company" and a "purchaser and manager of charged-off consumer receivables portfolios," and goes on to describe what it calls "our collection strategies," which include the use of "our own collection workforce." (*Id.*) Based on the record, this Court is satisfied that Encore regularly engages in debt collection activities, and therefore

rejects Defendants' argument.[7]

For all these reasons, the Court concludes that Plaintiffs are entitled to summary judgment in their favor on the issue of Defendants' liability under the FDCPA. The appropriate measure of damages remains to be determined at a later stage.

## II.     ICAA

Defendants also argue that they are entitled to summary judgment on Plaintiffs' ICAA claim because Plaintiffs have failed to establish that they suffered any actual damages. (R. 148, Defs.' Mem. at 19-20.) As Defendants point out, the ICAA requires a showing of actual damages, and attorneys fees are not considered actual damages under the ICAA. *See Thomas v. Arrow Fin. Servs., LLC*, No. 05 C 5699, 2006 WL 2438346, at *5 (N.D. Ill. Aug. 17, 2006); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 752 (N.D. Ill. 2003). However, there is evidence in the record that class members incurred another expense besides attorneys fees as a result of Defendants' conduct. In order to defend against a collection action, debtors are required to pay an appearance fee. (*See* R. 182, Defs.' Resp. to Pls.' Add. Facts ¶ 21.) Both named Plaintiffs appeared in the state court cases and paid the fee, and any other class member who appeared would have been required to pay this same fee, unless they obtained a waiver from the court. (*See id.* ¶¶ 1, 5; *see also* R. 185, Pls.' Mot. to Suppl., Exs. A-B.) Construing the facts and inferences in the light most favorable to Plaintiffs, there is enough in the record to preclude

---

[7] The Court also rejects Defendants' argument that the issue of Encore's liability is "academic" in light of the parties' "Net Worth Stipulation." (R. 167, Defs.' Opp'n at 14.) The issue of net worth pertains to damages, not liability. *See* 15 U.S.C. § 1692k(a)(2)(B) (in class action under FDCPA, statutory damages cannot exceed the lesser of $500,000 or 1 percent of debt collector's net worth); 15 U.S.C. § 1692k(b)(2) (financial resources of debt collector are a factor to be considered in determining appropriate measure of damages).

17

summary judgment in Defendants' favor on the ICAA claim.

Defendants also argue that they did not violate the ICAA for the same reasons they did not violate the FDCPA, namely, they reasonably believed the suits they were filing were not time-barred. (R. 148, Defs.' Mem. at 19.) For the same reasons articulated above as to the FDCPA claims, the Court rejects this argument. Accordingly, Defendants' motion for summary judgment on the ICAA claim is denied.

## CONCLUSION

For these reasons, Plaintiffs' motion for summary judgment (R. 143) is granted, and Defendants' motion for summary judgment (R. 146) is denied. Judgment is entered in Plaintiff's favor on the issue of Defendants' liability under the FDCPA. The parties are directed to reevaluate their settlement positions in light of this opinion and exhaust all efforts to settle the issues that remain in this case. A status hearing will be held in open court on **October 6, 2009** at **9:45 a.m.**

As a final matter, a number of the documents supporting the parties' summary judgment motions were filed under seal, with heavily redacted versions filed in the public record. Out of an abundance of caution, this opinion will remain under seal for a period of seven days, after which time it shall be made part of the public record unless the Court receives a motion from one of the parties explaining the specific need to maintain information contained in the opinion under seal. The parties shall bear in mind the Seventh Circuit's admonition that a mere preference for

secrecy does not trump the public nature of court proceedings.[8] *See United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009) (Easterbrook, C.J., in chambers) ("Secrecy is fine at the discovery stage, before the material enters the judicial record... But documents ... that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality."); *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) (only trade secrets or information covered by a recognized privilege may be maintained in the record under seal, notwithstanding parties' private agreement to keep documents under seal).

ENTERED: /s/ Ruben Castillo
Judge Ruben Castillo
United States District Court

Dated: September 17, 2009

---

[8] At least one court has held that assertion of a bona fide error defense under the FDCPA acts as a waiver of the attorney-client privilege, since the privilege was not meant to be used "both as a sword and a shield." *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 256 F.R.D. 661, 670 (D.N.M. 2009).